# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | | |
|---|---|---|
| ESCORT INC., | § | |
| an Illinois Corporation, | § | |
|     *Plaintiff*, | § | |
| | § | |
| v. | § | CIVIL ACTION NO: 3:18-cv-00161-N |
| | § | |
| UNIDEN AMERICA CORPORATION, | § | |
| a Delaware Corporation, | § | |
|     *Defendant*. | § | |

## PLAINTIFF ESCORT INC.'S OPENING CLAIM CONSTRUCTION BRIEF

Dated: November 16, 2018

Megan M. O'Laughlin (TX24013263)
E-Mail: molaughlin@hitchcockevert.com
John T. Tower (TX24045362)
E-Mail: jtower@hitchcockevert.com
Kristen M. Zahnow (TX24102678)
E-Mail: kzahnow@hitchcockevert.com
HITCHCOCK EVERT LLP
750 North St. Paul Street, Suite 1110
Dallas, TX 75201
Telephone: (214) 953-1111
Facsimile: (214) 953-1121

COUNSEL FOR PLAINTIFF

**TABLE OF CONTENTS**

I.    INTRODUCTION ............................................................................................. 1

II.   OVERVIEW OF THE ASSERTED PATENTS ................................................. 2

    A.    U.S. Patent No. RE39,038 – Radar Detector with Location-Aware Alerts .................... 2

    B.    U.S. Patent No. RE40,653 – User Controls for Location-Aware Alerts ......................... 3

    C.    U.S. Patent No. 7,576,679 – Improved Detector with Location-Aware Alerts ............... 3

III.   ARGUMENT ................................................................................................... 4

    A.    Standard of Review ........................................................................................ 4

    B.    Person of Ordinary Skill in the Art ................................................................... 5

    C.    Terms in Dispute ........................................................................................... 5

        1.    Group 1 terms ........................................................................................ 5

        2.    Group 2 terms ........................................................................................ 9

        3.    Group 3 terms ...................................................................................... 13

        4.    Group 4 terms ...................................................................................... 16

        5.    Group 5 terms ...................................................................................... 17

        6.    Group 6 terms ...................................................................................... 20

        7.    Group 7 terms ...................................................................................... 22

        8.    Group 8 terms ...................................................................................... 24

        9.    Group 9 terms ...................................................................................... 26

        10.   Group 10 terms .................................................................................... 27

IV.   CONCLUSION .............................................................................................. 28

# TABLE OF AUTHORITIES

## Cases

*Advanced Comm. Design, Inc. v. Premier Retail Net., Inc*., 46 Fed. Appx. 964 (Fed. Cir. 2002) . 6

*Advanced Media Networks, LLC v. AT&T Mobility LLC,* Civ. Action No. 3:15-cv-03496-N [Doc. No. 125] (N.D. Tex. March 1, 2017) (Godbey, J.) ..................................................................... 4

*Biosonix, LLC v. Hydrowave, LLC*, 230 F. Supp. 3d 598 (E.D. Tex. 2017) ................................. 6

*CCS Fitness, Inc. v. Brunswick Corp*., 288 F.3d 1359 (Fed. Cir. 2002)...................................... 14

*Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc., et al*., 467 U.S. 837 (1984) .... 5

*DisplayLink Corp. v. Magic Control Tech. Corp*., 615 F. Supp. 2d 105 (N.D. Cal. 2009).......... 23

*Fleming v. Escort*, Civ. Action No. 1:09-cv-00105-BLW (D. Idaho June 29, 2010)........... 2, 3, 12

*Hyperion Solutions Corp. v. Outlooksoft Corp*., 422 F. Supp. 2d 760 (E.D. Tex. 2006) ............. 12

*Joao v. Sleepy Hollow Bank*, 418 F. Supp. 2d 578 (S.D.N.Y. 2006).............................................. 6

*Liebel-Flarsheim Co. v. Medrad, Inc*., 358 F.3d 898 (Fed. Cir. 2004)........................................... 7

*Maxma v. ConocoPhillips Inc*., Civ. Action No. 2:03-CV-421, 2005 BL 65803 (E.D. Tex. July 19, 2005) ................................................................................................................................... 24

*Nautilus, Inc. v. Biosig Instruments, Inc*., 134 S. Ct. 2120, 189 L. Ed. 2d 37 (2014) ........... 11, 22

*NobelBiz, Inc. v. Glob. Connect, LLC*, 876 F.3d 1326 (Fed. Cir. 2017)........................................ 5

*Novartis AG v. Mylan Pharms., Inc.,* Civ. Action No.: 09-cv-3604 (PGS), 2011 BL 213348 (D.N.J. Aug. 17, 2011)........................................................................................................... 24

*Nuance Commc'ns, Inc. v. Abbyy Software House, Inc.*, Civ. Action No. C 08-02912 JSW, 2012 BL 420527 (N.D. Cal. Apr. 09, 2012) .................................................................................... 12

*O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351 (Fed. Cir. 2008)................. 12

*Pagemelding, Inc. v. Feeva Tech., Inc*., 2009 BL 362219 (N.D. Cal. Aug. 19, 2009)................. 13

*Phillips v. AWH Corp*., 415 F.3d 1303 (Fed. Cir. 2005) ............................................................. 24

*PPG Indus., Inc. v. Guardian Indus. Corp*., 75 F.3d 1558, 37 U.S.P.Q.2d 1618 (Fed. Cir. 1996) ........................................................................................................................................... 11

*Rambus Inc. v. Hynix Semiconductor Inc*., 569 F. Supp. 2d 946 (N.D. Cal. 2008)....................... 6

*Rambus Inc. v. Infineon Techs. AG*, 318 F.3d 1081 (Fed. Cir. 2003) ............................................ 6

*Research in Motion Ltd. v. DataQuill BVI, Ltd*., Civ. Action No. 3:06-CV-0973-N, 2008 BL 361233 (N.D. Tex. Aug. 14, 2008) (Godbey, J.) ............................................................ 7, 14, 21

*Rexnord Corp. v. The Laitram Corp*., 274 F.3d 1336 (Fed. Cir. 2001) ......................................... 8

*Roche Diagnostics Corp. v. Apex Biotechnology Corp.,* 455 F. Supp. 2d 840 (S.D. Ind. 2005).... 7

*Sauder Mfg. Co. v. J Squared, Inc.,* Civ. Action No. 3:14-CV-962, 2015 BL 467165 (N.D. Ohio June 09, 2015) ...................................................................................................................... 7

*SecurityProfiling, LLC v. Trend Micro Am., Inc.*, Civ. Action No. 3:17-CV-1484-N, 2018 BL 347127 (N.D. Tex. Sept. 25, 2018) (Godbey, J.)........................................................ 14, 18, 27

*Takeda Pharm. Co. v. Zydus Pharms. USA, Inc.,* 743 F.3d 1359 (Fed. Cir. 2014) ............... 11, 22

*Teleflex, Inc. v. Ficosa N. Am. Corp*., 299 F.3d 1313 (Fed. Cir. 2002) ......................................... 7

*Watts v. XL Sys., Inc.*, 232 F.3d 877 (Fed. Cir. 2000) ................................................................ 14

**Statutes**

35 U.S.C. § 112(2) ............................................................................................................... 11, 22

35 U.S.C. § 112(6) ............................................................................................................... passim

**TABLE OF EXHIBITS**

| **Document** | **Appendix Page No.** |
|---|---|
| U.S. Patent No. RE39,038 | APP. 001 |
| U.S. Patent No. RE40,653 | APP. 010 |
| U.S. Patent No. 7,576,679 | APP. 018 |
| *Fleming v. Escort*, Civ. Action No. 1:09-cv-00105-BLW (D. Idaho June 29, 2010), Document 56 | APP. 050 |
| U.S. Patent No. RE40,653 File History | APP. 057 |
| Uniden's Local Patent Rule 4-1(a) disclosures | APP. 064 |
| Ex Parte Reexamination Certification No. US RE39,038 C1 | APP. 069 |
| Ex Parte Reexamination Certification No. US RE40,653 C1 | APP. 071 |

Plaintiff Escort Inc. ("Escort") files its Opening Claim Construction Brief. A total of 18 terms are subject to dispute, and the parties have agreed to brief those terms in ten groups.[1] Escort will show that only three terms require construction, and clarification of two other terms may benefit the jury. Nonetheless, Escort will brief all terms and respectfully show the Court as follows:

## I.      INTRODUCTION

U.S. Patent No. RE39,038, U.S. Patent No. RE40,653 and U.S. Patent No. 7,576,679 (collectively, the "Asserted Patents")[2] claim groundbreaking improvements to radar/laser detectors, but are nonetheless straightforward and require little construction. Indeed, the vast majority of the claim terms at issue are common, non-technical words whose plain and ordinary meaning will be readily understood by the jury. After all, radar/laser detectors are not esoteric technology accessible only to the most experienced of technicians.

On the contrary, they are widely-recognized consumer devices whose primary purpose is well known and easy to understand: they detect incoming radar and laser signals and warn drivers when they may be at risk of receiving a speeding ticket. Even those who have not used a radar/laser detector will quickly grasp that improvements claimed in the Asserted Patents, such as intelligent suppression of irrelevant alerts and automatic adjustment of detection sensitivity, are desirable. Likewise, any jury member with even a passing familiarity with consumer electronic devices will appreciate that a radar/laser detector that can store the user's data and preferences is more useful and easier to use than one that cannot.

---

[1] Although the parties' Joint Claim Construction and Prehearing Statement [Doc. No. 36] identified 11 groups of terms for construction, the parties have subsequently agreed that the term "the button / a button" needs no construction and is not addressed herein.
[2] Appendix to Escort's Opening Claim Construction Brief ("APP.") at 001 (U.S. Patent No. RE39,038), 010 (U.S. Patent No. RE40,653) and 018 (U.S. Patent No. 7,576,679).

The Asserted Patents largely use plain language to disclose innovations to familiar technology, so few terms of the Asserted Patents require construction. And for those that do, Escort has proposed straightforward constructions consistent with the Asserted Patents' specifications.

## II.   OVERVIEW OF THE ASSERTED PATENTS

The Asserted Patents claim inventions that improve upon prior art so that the radar detector will minimize unwanted and irrelevant alerts—commonly called "false alerts"[3] in the industry— in a variety of ways, including the following patented features: (1) GPS anti-falsing; (2) known frequency anti-falsing; (3) mute button controls; and (4) capability for users to control alerts based on speed and location.

### A.   U.S. Patent No. RE39,038 – Radar Detector with Location-Aware Alerts

The asserted claims of U.S. Patent No. RE39,038 (the "'038 Patent) teach GPS-enabled radar detectors and methods performed by those detectors that eliminate irrelevant radar alerts based on a "GPS *plus*" comparison. APP. 001. That is, the detector determines whether or not to generate an alert based on a combination of the detector's GPS location with one or more of the following: (1) the detected radar signal's strength or frequency, (2) the detector's speed or bearing, and/or (3) the location of a known false alert or hazard. The claims include generating an alert when the detector *is not* within range of a known false alert and when the detector *is* within range of a known threat or user-selected location.

The '038 Patent was previously construed in *Fleming v. Escort*, Civ. Action No. 1:09-cv-00105-BLW (D. Idaho June 29, 2010), Document 56. APP. 050. The '038 Patent was also the

---

[3] As explained in Escort's Response to Defendant's Motion to Dismiss, in Part [Doc. No. 19], it is common to refer to signals that users do not want (e.g., automatic doors) as "false alerts," even though they are, in fact, generated when radar activity is detected. So when this Brief discusses accuracy of radar signals, it is not distinguishing between alerts generated when radar activity is detected and alerts generated erroneously in the absence of radar activity. Rather, it is distinguishing between alerts that drivers are likely to find helpful and relevant (e.g., those generated when radar signals likely emanate from police activity) and alerts that they are not.

subject of pre-AIA *ex parte* Reexamination No. 90/012,220 filed March 30, 2012. The U.S. Patent Office issued Ex Parte Reexamination Certification No. US RE39,038 C1 on December 18, 2017. APP. 069.

### B.     U.S. Patent No. RE40,653 – User Controls for Location-Aware Alerts

The asserted claims of U.S. Patent No. RE40,653 (the "'653 Patent") teach GPS-enabled radar detectors that conduct onboard analysis of signal- and location-related data—i.e., speed and heading information derived from the comparison of the unit's GPS locations over time—and incorporate buttons and/or visual displays, as well as methods performed by those detectors for (i) onboard processing and storage of data based on the driver's use of the buttons, (ii) generating or muting an alert based on variance from a preset speed, or (iii) providing visual indicators to the driver via the display based on the unit's speed, heading and/or location. APP. 010.

The '653 Patent was previously construed in *Fleming v. Escort*, Civ. Action No. 1:09-cv-00105-BLW (D. Idaho June 29, 2010), Document 56. APP. 050. The '653 Patent was also the subject of pre-AIA *ex parte* Reexamination No. 90/012,234 filed April 3, 2012. The U.S. Patent Office issued Ex Parte Reexamination Certification No. US RE40,653 C1 on February 22, 2013. APP. 071.

### C.     U.S. Patent No. 7,576,679 – Improved Detector with Location-Aware Alerts

The asserted claims of U.S. Patent No. 7,576,679 (the "'679 Patent") teach radar/laser detectors capable of receiving GPS data—whether from an onboard circuit or from a connection to another source of GPS data through a variety of connection standards—that have the additional benefits of (1) maintaining the desired suppression of false alerts when the vehicle remains in range of the signal because it is stopped or moving slowly (e.g., at a stoplight or in heavy traffic), (2) displaying the exact speed of the detector during the generation of an alert (i.e., allowing the driver

to see both the alert <u>and</u> whether she is in danger of receiving a ticket on a single display), and (3)

configuring these and other features through a mini-B USB port onboard the unit. APP. 018.

## III.   ARGUMENT

### A.   Standard of Review

The Court is well-familiar with the law governing claim construction:

Claim construction is a question of law for the Court, although it may involve subsidiary factual questions. In construing the claims of a patent, the words comprising the claims are generally given their ordinary and customary meaning as understood by a person of ordinary skill in the art in question at the time of the invention. Accordingly, courts must determine the meaning of claim terms in light of the resources that a person with such skill would review to understand the patented technology. First, the person of ordinary skill in the art is deemed to read the claim term . . . in the context of the entire patent, including the specification. If the specification reveal[s] a special definition given to a claim term by the patentee that differs from the meaning it would otherwise possess . . . , the inventor's lexicography governs. Likewise, if the specification . . . reveal[s] an intentional disclaimer, or disavowal, of claim scope by the inventor . . .[,] the inventor's intention, as expressed in the specification, is regarded as dispositive. While the claims themselves provide significant guidance as to the meaning of a claim term, the specification is generally dispositive as it is the single best guide to the meaning of a disputed term.

In addition to the specification, courts must examine the patent's prosecution history – that is, the complete record of the proceedings before the PTO and includ[ing] the prior art cited during the examination of the patent. Like the specification, the prosecution history provides evidence of how the PTO and the inventor understood the patent.

*Advanced Media Networks, LLC v. AT&T Mobility LLC,* Civ. Action No. 3:15-cv-03496-N [Doc.

No. 125], at 2-3 (N.D. Tex. March 1, 2017) (Godbey, J.) (quotations and citations omitted).

Although the Court may consider extrinsic evidence, it cannot rely on it to "reach a claim

construction that is clearly at odds with a construction mandated by the intrinsic evidence." *Id.* at

4. Indeed, it is improper to rely on extrinsic evidence if "the intrinsic evidence, that is the patent

specification and prosecution history, unambiguously describes the scope of a patented invention."

*Id.* The Court need not construe all terms the parties dispute but, rather, should "distinguish *bona*

*fide* infringement arguments from those masquerading as claim construction disputes." *NobelBiz, Inc. v. Glob. Connect, LLC*, 876 F.3d 1326, 1328 (Fed. Cir. 2017) (O'Malley, J., dissenting).

### B.     Person of Ordinary Skill in the Art

The level of skill in the art relevant to the Accused Patents was explicitly defined by the Patent Examiner during prosecution of the '653 Patent:

> One of ordinary skill-in-the-art would be a person with a person [*sic*] with a degree in Electrical Engineering with several years of practical experience in the design and/or testing of radar detector systems.

APP. 062. The Examiner's determination of the relevant level of skill in the art is an agency decision that is entitled to deference. *See, e.g., Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc., et al.*, 467 U.S. 837 (1984).

### C.     Terms in Dispute

#### 1. *Group 1 terms*

The following terms from the '038 Patent are in dispute:

| Claim(s) | Term | Escort's Proposed Construction | Uniden's Proposed Construction |
|---|---|---|---|
| 19, 21, 31, 33, 34, 41, 42 | "program storage device that is coupled to the microprocessor" | "memory device containing machine-readable instructions that is capable of interacting with the microprocessor" | "a conventional memory device such as a PROM, EPROM, EEPROM, ROM, SRAM, or battery backed up DRAM that is connected to, but accessible only by, the microprocessor." |
| 35, 36, 38 | "memory device that is coupled to the microprocessor" | "memory device that is capable of interacting with the microprocessor" | "a conventional memory device such as a PROM, EPROM, EEPROM, ROM, SRAM, or battery backed up DRAM that is connected to, but accessible only by, the microprocessor." |

Uniden's proposed construction raises two distinct issues that must be addressed. First, whether "memory device" requires any additional limiting language. Second, whether these claim terms require an exclusive connection. The answer to both is no.

### a) "Memory Device" needs no elaboration.

The first issue is whether "memory device" requires the added detail suggested by Uniden—namely, "a <u>conventional</u> memory device <u>such as a PROM, EPROM, EEPROM, ROM, SRAM, or battery backed up DRAM</u>." It does not.

"Memory device" is well-understood, and courts have found no reason to construe it. *Cf Biosonix, LLC v. Hydrowave, LLC*, 230 F. Supp. 3d 598, 605 (E.D. Tex. 2017). In fact, the term "memory device" is itself often used in constructions of other claim language. *See, e.g., Rambus Inc. v. Infineon Techs. AG*, 318 F.3d 1081, 1093 (Fed. Cir. 2003); *Joao v. Sleepy Hollow Bank*, 418 F. Supp. 2d 578, 585 (S.D.N.Y. 2006).

Even courts that decide to construe "memory device" reject narrow readings. For example, in *Rambus Inc. v. Hynix Semiconductor Inc.*, 569 F. Supp. 2d 946, 973 (N.D. Cal. 2008), much like here, a party relied on references in the specification to DRAMs, SRAMs, and ROM devices as "memory devices" to attempt to limit the breadth of the term. The court rejected the proposal because "the specification does not clearly limit the scope of the invention" and "decline[d] to read the phrase 'memory device' so narrowly." *Id.* at 974. The court instead construed "memory device" as "a device in which information can be stored and retrieved electronically." *Id.*

Escort respectfully submits that there is no need to construe "memory device." *See Advanced Comm. Design, Inc. v. Premier Retail Net., Inc.*, 46 Fed. Appx. 964, 981 (Fed. Cir. 2002) ("[I]f a claim term . . . is sufficiently clear such that no other definition is needed, the district court simply has no duty to wave into existence a different definition, one that uses different words than the words actually used in the claim language itself."). But at minimum, the Court should reject

Uniden's attempt to narrow its meaning. *See Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 906 (Fed. Cir. 2004) ("[T]he claims of the patent will not be read restrictively unless the patentee has demonstrated a clear intention to limit the claim scope using 'words or expressions of manifest exclusion or restriction.'") (quoting *Teleflex, Inc. v. Ficosa N. Am. Corp.*, 299 F.3d 1313, 1327 (Fed. Cir. 2002)).

### b)  "Coupled to" has no exclusivity requirement.

The second issue is the meaning of "coupled to the microprocessor." Here again, Uniden asks the Court to introduce limitations that are neither helpful to the jury nor supported by the intrinsic evidence.

Use of "coupled" has been construed many times by many courts. For example, in *Research in Motion Ltd. v. DataQuill BVI, Ltd.*, this Court construed "coupled" to mean "connected or linked," and "coupleable" to mean "capable of being connected or linked." Civ. Action No. 3:06-CV-0973-N, 2008 BL 361233, at *6 (N.D. Tex. Aug. 14, 2008) (Godbey, J.) (rejecting proposed limitation that "coupled" was limited to specific type of connection or specific purpose); *see also Sauder Mfg. Co. v. J Squared, Inc.,* Civ. Action No. 3:14-CV-962, 2015 BL 467165, at *2 (N.D. Ohio June 09, 2015) (construing "coupled" to mean "joined"); *Roche Diagnostics Corp. v. Apex Biotechnology Corp.,* 455 F. Supp. 2d 840, 867 (S.D. Ind. 2005) ("[T]he plain meaning of the term 'coupled to' is: joined or connected to during performance of the algorithm.").

It does not appear that any court construing "coupled to" has grafted onto it the requirement of monogamy that Uniden proposes with its language: "connected to, but accessible only by, the microprocessor." And the '038 Patent certainly does not teach restricting or limiting the ordinary meaning of the term "coupled to" based on accessibility.

To the contrary, "coupled" is used throughout the '038 Patent to refer to a component being "coupled" to at least two other components. For example, in describing one embodiment, the patent states: "In addition to being coupled to the detector circuit and the analog-to-digital converter, the microprocessor is also coupled to an alert circuit." '038 Patent Col. 2, ll. 53-55. The '038 Patent also teaches "a circuit coupled to the microprocessor for detecting the incoming police radar signal; and a global positioning system receiver coupled to the microprocessor." '038 Patent Col. 1, ll. 60-63. If a first thing being "coupled" to a second thing requires exclusive access, as Uniden posits, then it would be impossible for the microprocessor to be coupled to an alert circuit *and* the detector circuit *and* the analog-to-digital converter *and* a global positioning system receiver, as the patent describes.

To assign to "coupled" not merely a different meaning, but an incompatible meaning, for a subset of claims violates a cardinal rule of claim interpretation. "Coupled" must mean the same thing throughout the patent. *Cf. Rexnord Corp. v. The Laitram Corp.*, 274 F.3d 1336, 1342 (Fed. Cir. 2001) ("[A] claim term should be construed consistently with its appearance in other places in the same claim or in other claims of the same patent.").

In contrast to Uniden's position, the use of "coupled" in the claims supports Escort's proposed construction that "coupled to" means the components are capable of interacting. The '038 Patent illustrates this relationship between the microprocessor and various components in addition to the program storage device: (1) the program storage device includes instructions for commanding the microprocessor to operate; (2) the detector circuit may be controlled by the microprocessor and may generate an output signal; and (3) the global positioning system receiver provides the microprocessor with data.

Accordingly, Escort respectfully requests the Court adopt its proposed constructions as follows:

1. "program storage device that is coupled to the microprocessor" means "memory device containing machine-readable instructions that is capable of interacting with the microprocessor"; and

2. "memory device that is coupled to the microprocessor" means "memory device that is capable of interacting with the microprocessor."

### c) The parties agree that a "program storage device" is a memory device.

The parties agree that, as used in the phrase "program storage device that is coupled to the microprocessor," "program storage device" is a memory device. Escort proposes including the additional language "containing machine-readable instructions" to illustrate the difference between the terms "program storage device" and "memory device." The parties likewise do not dispute the meaning of the word "microprocessor."

### 2. Group 2 terms

The following terms from the '038 Patent are in dispute:

| Claim(s) | Term | Escort's Proposed Construction | Uniden's Proposed Construction |
|---|---|---|---|
| 19 | "determining the position of a radar detector" | No construction necessary | Indefinite or, in the alternative, the following construction should apply:<br><br>"establishing conclusively the position of a radar detector" |
| 21 | "determining the velocity of the device" | No construction necessary | Indefinite or, in the alternative, the following construction should apply:<br><br>"establishing conclusively the speed of a radar detector" |

| Claim(s) | Term | Escort's Proposed Construction | Uniden's Proposed Construction |
|---|---|---|---|
| | | | The step of "determining the velocity of the device [utilized to detect the incoming radar signal]" occurs after the incoming radar signal is detected and before "generating an alert…" |
| 33 | "determining the distance between the position of the radar detector and another position" | No construction necessary | Indefinite or, in the alternative, the following construction should apply:<br><br>"establishing conclusively the distance between the position of the radar detector and another position" |
| 34 | "determining the bearing between the position of the radar detector and another position" | No construction necessary | Indefinite or, in the alternative, the following construction should apply:<br><br>"establishing conclusively the heading between the position of the radar detector and another position" |

Additionally, the following similar terms from the '653 Patent are in dispute:

| Claim(s) | Term | Escort's Proposed Construction | Uniden's Proposed Construction |
|---|---|---|---|
| 22, 38 | "[determining]/ [determines] a first position of the radar detector" | No construction necessary | Indefinite or, in the alternative, the following construction should apply:<br><br>"establishing conclusively the position of a radar detector" |
| 22, 38 | "[determining]/ [determines] a second position of the radar detector" | No construction necessary | Indefinite or, in the alternative, the following construction should apply:<br><br>"establishing conclusively the position of a radar detector" |

The parties first dispute whether the claims in Group 2—or, more precisely, the term "determine" and its conjugates used in those claims—are indefinite under 35 U.S.C. § 112(2). They are not, which leads to the second dispute: is construction necessary? It is not.

### a) The Group 2 claims are not indefinite.

The Supreme Court, in *Nautilus, Inc. v. Biosig Instruments, Inc*., explained "a patent is invalid for indefiniteness if its claims, read in light of the specification delineating the patent, and the prosecution history, fail to inform, with reasonable certainty, those skilled in the art about the scope of the invention." *Nautilus, Inc. v. Biosig Instruments, Inc*., 134 S. Ct. 2120, 2124, 189 L. Ed. 2d 37, 43 (2014). Uniden bears the burden of showing the Group 2 claims are indefinite by clear and convincing evidence. *Takeda Pharm. Co. v. Zydus Pharms. USA, Inc.,* 743 F.3d 1359, 1368 (Fed. Cir. 2014). Uniden cannot meet this burden.

The fact that the patent does not specify a single method to determine velocity or positions is not sufficient to render the claims invalid. *Takeda Pharm.,* 743 F.3d at 1367 ("[T]hat there is more than one way of determining the average particle diameter of a particular sample does not render that clear claim language indefinite."); *PPG Indus., Inc. v. Guardian Indus. Corp*., 75 F.3d 1558, 1563, 37 U.S.P.Q.2d 1618, 1622 (Fed. Cir. 1996) ("[T]he patent is not rendered invalid on the ground that the inventors failed to specify the method to be used in measuring the ultraviolet transmittance set forth in the claims.").

The "determining" terms are not indefinite under the Supreme Court's standard because those skilled in the art, in light of the specification, would understand with reasonable certainty the claimed scope. People understand that determining any location or measurement is relative to the applicable context. For example, a person is not likely to determine the location of his car keys in the same way that he determines the location of the new restaurant he plans to drive to when he finds them. People understand with reasonable certainty what "determining the location" means in

the given context. The same is true for determining speed, distance and bearing—the context informs the person what "determining" entails.

Moreover, the '038 Patent teaches the use of a radar detector that incorporates a component to identify the radar detector's position—such as a Global Positioning System (GPS) receiver—to reduce false alerts. In this context, a person skilled in the art would understand the claims' scope with reasonable certainty for determining (1) a position, (2) a speed, (3) a distance to another position, and (4) a bearing to another position. One skilled in the art would readily understand the scope of the invention, and it is thus not indefinite.

### b) The Group 2 claims need no construction.

"Determining" indisputably has a plain and ordinary, non-technical meaning that would be understood by the average jury. Indeed, the *Fleming* court rejected the argument that "determining the position" required construction: "'determining the position' is a plain English phrase unlikely to confuse and/or mislead a jury." APP. 055; accord *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1360-61 (Fed. Cir. 2008) (district court not required to construe terms with ordinary meaning).

There is no sound justification to invent the limitation—"establishing <u>conclusively</u>"—that Uniden suggests. *Nuance Commc'ns, Inc. v. Abbyy Software House, Inc.*, Civ. Action No. C 08-02912 JSW, 2012 BL 420527 (N.D. Cal. Apr. 09, 2012) ("As there is no express limitation in the claim language, the Court sees no compelling reason to import one.") (citing *Hyperion Solutions Corp. v. Outlooksoft Corp.*, 422 F. Supp. 2d 760, 773 (E.D. Tex. 2006) (holding that "[i]mporting a negative limitation into a claim, particularly where the claim language does not contain such a limitation, is generally not favored")). To the contrary, "establishing conclusively" introduces potential for confusion, as "conclusively" itself has multiple definitions and gives no clearer guidance than "determining." "Conclusively" could even mislead the jury that the claims require

not just a degree of accuracy, but a guaranteed outcome. Nothing in the '038 Patent supports this. Nor do the claims require a level of precision beyond the vehicle application context.

There is simply no need to replace a familiar word—determining—with one of several dictionary definitions that Uniden likes best. There is simply "very little risk that the ultimate factfinder will be unable to understand this term." *Pagemelding, Inc. v. Feeva Tech., Inc.*, 2009 BL 362219, at *10 (N.D. Cal. Aug. 19, 2009) ("'for' is non-technical, is in plain English, and derives no special meaning from the Patent. The ordinary meaning of the term speaks for itself, and the Court will avoid paraphrasing the language.").

In addition, in the case of Claim 21 of the '038 patent, Uniden seeks a second limitation of its own invention: that determining the velocity "occurs after the incoming radar signal is detected and before 'generating an alert…'" However, the patent explicitly rejects the application of a particular order of acts to limit the scope of the invention:

> The above Description of the Preferred Embodiments includes words, such as "first," "then," and "next." These words indicate a sequence of acts. Many of the sequences can be modified within the scope of the invention. Thus, unless the result of a first act is required for a second act, then the language indicating a sequence should not be considered to be limitations to the invention.

'038 Patent Col. 6, ll. 36-42. As nothing in Claim 21 requires that the determination of velocity occur "after the incoming radar signal is detected," the Court should reject this additional limitation as contrary to the patent.

Accordingly, Escort respectfully requests that the Court allow the jury to apply plain meaning to Group 2 terms.

### 3.  *Group 3 terms*

The following terms from the '038 Patent are in dispute:

| Claim(s) | Term | Escort's Proposed Construction | Uniden's Proposed Construction |
|---|---|---|---|
| 29 | "the global positioning system receiver is operable to provide the microprocessor with data that indicates the velocity of the radar detector" | A "global positioning system receiver" is a sufficiently definite structure, rendering § 112(6) inapplicable.<br><br>No construction necessary | Means-plus-function element to be construed in accordance with pre-AIA 35 U.S.C. § 112, ¶6.<br><br>Function: "the global positioning system receiver is operable to provide the microprocessor with the speed of the radar detector."<br><br>Structure: The specification fails to set forth any algorithm or corresponding structure for the claimed function. Claim is indefinite. |

The parties dispute whether the terms in Group 3 should be construed pursuant to pre-AIA 35 U.S.C. § 112(6). They should not, and no construction is necessary.

When, as here, the claim does not include the word "means," there is a rebuttable presumption that § 112(6) does not apply. *SecurityProfiling, LLC v. Trend Micro Am., Inc.*, Civ. Action No. 3:17-CV-1484-N, 2018 BL 347127, at *2 (N.D. Tex. Sept. 25, 2018) (Godbey, J.). "This presumption can be rebutted only by showing that 'the claim term fails to "recite sufficiently definite structure" or else recites "function without reciting sufficient structure for performing that function."'" *Research in Motion Ltd.*, 2008 BL 361233, at *3 (quoting *CCS Fitness, Inc. v. Brunswick Corp.*, 288 F.3d 1359, 1369 (Fed. Cir. 2002) (quoting *Watts v. XL Sys., Inc.*, 232 F.3d 877, 880 (Fed. Cir. 2000))). Or stated more simply, it is up to Uniden "to demonstrate that the words of the claim are *not* understood by persons of ordinary skill in the art to have a sufficiently definite meaning as the name for structure." *SecurityProfiling, LLC*, 2018 BL 347127, at *3 (emphasis in original).

Uniden cannot meet its burden. One skilled in the art would understand that "global positioning system receiver" is the name of the structure, and that it has a well-understood meaning. Indeed, the plain language of the claim term renders a clear and unambiguous meaning even to one not skilled in the art—the phrase "the global positioning system receiver" is a noun and is said to be "operable to" perform a specific task. Uniden's assertion that the *function* begins with "the global positioning system receiver" is logically, grammatically, and technically nonsensical.

Uniden's argument is also in conflict with the '038 Patent, which teaches the "global positioning system receiver" is a specific structure that is "coupled to the microprocessor." *See* '038 Patent Col. 2, ll. 62-63 and Col. 3, ll. 14-16. The '038 Patent also explains that "a GPS receiver receives signals from satellites and uses these signals to calculate the position of the GPS receiver." '038 Patent Col. 3, ll. 16-18.

There is no doubt that, particularly in light of the specification, "global positioning system receiver" is a sufficiently definite structure, and § 112(6) does not and cannot apply. Uniden's assertion that the claim is indefinite hinges on a determination that the term is subject to § 112(6), so its indefiniteness conclusion also fails.

Uniden has not asked for construction of the Group 3 terms in the alternative. That is undoubtedly because the phrase "the global positioning system receiver is operable to provide the microprocessor with data that indicates the velocity of the radar detector" has a plain and ordinary meaning that would be understood, and these terms are used consistently with their plain and ordinary meaning. Specifically, the '038 Patent teaches that GPS position information, determined at two different times, can be used to determine the velocity (speed) of the GPS receiver, and as discussed above, describes the relationship between the GPS receiver and the microprocessor

("coupled to"), the operation of the GPS receiver ("receives signals from satellites and uses these signals to calculate the position of the GPS receiver"), and the GPS information indicating velocity. *See* '038 Patent Col. 3, ll. 14-26.

Again, the invention is, *inter alia*, to limit false alerts by using the detector's GPS location data—whether relating to current location alone or to speed and heading based on comparisons over time—with signal data, known locations, and/or user input to determine whether to generate an alert. In this context, and in light of the specification, Group 3 terms will be readily understood without construction.

Accordingly, Escort respectfully requests the Court find the Group 3 claims are not indefinite and allow the jury to apply plain language to Group 3 terms.

### 4.  Group 4 terms

The following terms from the '038 Patent are in dispute:

| Claim(s) | Term | Escort's Proposed Construction | Uniden's Proposed Construction |
|---|---|---|---|
| 30 | "the global positioning system receiver is operable to provide the microprocessor with data that indicates the heading of the radar detector" | A "global positioning system receiver" is a sufficiently definite structure, rendering § 112(6) inapplicable.<br><br>No construction necessary | Means-plus-function element to be construed in accordance with pre-AIA 35 U.S.C. § 112, ¶6.<br><br>Function: "the global positioning system receiver is operable to provide the microprocessor with the heading of the radar detector."<br><br>Structure: The specification fails to set forth any algorithm or corresponding structure for the claimed function. Claim is indefinite. |

The parties dispute whether the terms in Group 4 should be construed pursuant to pre-AIA 35 U.S.C. § 112(6). They should not, nor do they require construction.

The analysis of these terms is parallel to the analysis of Group 3 terms. As with Group 3, the word "means" is not used, and Uniden must rebut the presumption that § 112(6) does not apply. "Global positioning system receiver" is the name of a structure with a well-understood meaning, and even the plain English of the claim term belies Uniden's assertion. Once again, Uniden cannot meet its burden. *See* Group 3 terms, *supra*.

Also as with Group 3, Uniden has not asked for construction of the Group 4 terms in the alternative. Once again this is undoubtedly because the phrase "the global positioning system receiver is operable to provide the microprocessor with data that indicates the heading of the radar detector" has a plain and ordinary meaning that would be understood, and these terms are used consistently with their plain and ordinary meaning. Specifically, the '038 Patent teaches that GPS position information determined at two different times can be used to determine the heading of the GPS receiver and also describes the relationship between the GPS receiver and the microprocessor, the operation of the GPS receiver, and the GPS information indicating heading. *See* '038 Patent Col. 3, ll. 14-26.

To repeat, the invention is, *inter alia*, to limit false alerts by using the detector's GPS location data—whether relating to current location alone or to speed and heading based on comparisons of GPS locations over time—with signal data, known locations, and/or user input to determine whether to generate an alert. In this context, and in light of the specification, Group 4 terms will be readily understood without construction

Accordingly, Escort respectfully requests the Court find the Group 4 claims not indefinite and allow the jury to apply plain language to Group 4 terms.

### 5. *Group 5 terms*

The following terms from the '038 Patent are in dispute:

| Claim(s) | Term | Escort's Proposed Construction | Uniden's Proposed Construction |
|---|---|---|---|
| 49 | "the microprocessor is operable to disable the alert based at least in part upon the signal strength of the incoming radar signal." | A "microprocessor" is a sufficiently definite structure, rendering § 112(6) inapplicable.<br><br>"the microprocessor is capable of not generating an alert based at least in part upon on the incoming radar signal's strength" | Means-plus-function element to be construed in accordance with pre-AIA 35 U.S.C. § 112, ¶6.<br><br>Function: "the microprocessor is operable to disable the alert based at least in part upon the signal strength of the incoming radar signal."<br><br>Structure: The specification fails to set forth any algorithm or corresponding structure for the claimed function. Claim is indefinite. |

The parties dispute whether the terms in Group 5 should be construed pursuant to pre-AIA 35 U.S.C. § 112(6). They should not, and no construction is necessary. However, Escort does suggest that a minor clarification may assist the jury.

As with Groups 3 and 4, the word "means" is not used, and Uniden must rebut the presumption that § 112(6) does not apply. Uniden cannot do so. One skilled in the art—and, indeed, even one not skilled in the art who carefully reads the plain language of Claim 49—would understand that "microprocessor" is the name of the structure with a well-understood meaning. *SecurityProfiling, LLC*, 2018 BL 347127, at *3. Uniden implicitly acknowledges that the microprocessor is a structure and not subject to § 112(6) by choosing not to assert that § 112(6) applies to the numerous other references to "microprocessor" throughout the claims.

Most tellingly, Uniden chose to assert that this term is subject to § 112(6), but it somehow determined that "a microprocessor" in independent Claim 45 is <u>not</u> subject to § 112(6). This is incongruous, as "a microprocessor" in Claim 45 provides the antecedent basis for "the microprocessor" in Claim 49:

| Independent Claim 45 | Dependent Claim 49 |
|---|---|
| "a microprocessor operable to disable an alert to the incoming radar signal based at least in part upon the position of the radar detector." | "the microprocessor is operable to disable the alert based at least in part upon the signal strength of the incoming radar signal." |

Self-evidently, "microprocessor" cannot be a sufficient structure that is not subject to § 112(6) in Claim 45 but lose its structure when the same "microprocessor" is further limited by a different function that it performs in Claim 49.

The fact that a "microprocessor" is the name of the structure with a well-understood meaning is made clear by the '038 Patent, which teaches that the "microprocessor" is a specific structure which is "coupled to" other components. For example, "the program storage device of FIG. 1 or another memory device [may be] coupled to or integrated within the microprocessor." *See* '038 Patent Col. 3, ll. 62-67. A memory device cannot be "integrated within" something that is not a structure. The '038 Patent also illustrates specific hardware consistent with the understood structure of the microprocessor—e.g., a "single or multiple chip microprocessor or digital signal processor." '038 Patent Col. 2, ll. 64-65. "Microprocessor" is a sufficiently definite structure, and § 112(6) does not apply.

As with the Group 3 and 4 terms, Uniden argues that the claims are indefinite solely based on an application of § 112(6). Because § 112(6) does not apply, Uniden's conclusion must also fail.

Once again, Uniden has not asked for construction of the Group 5 terms in the alternative. That is of no consequence, as no construction is necessary. The '038 Patent teaches using a comparison of a predetermined signal strength with the signal strength of the incoming radar signal to manage alerts. *See* Col. 4, ll. 50-61. This likewise reduces false alerts by using a combination

of the detector's GPS location and data relating to the police radar signal—such as frequency or signal strength—to determine whether to generate an alert. The '038 Patent sufficiently describes the relationship between the program storage device and the microprocessor, along with the operation to determine whether to activate the alert circuit based on the signal strength of detected radar signals. *See* Col. 3, ll. 4-10.

Although no construction is necessary, Escort understands that the jury may not readily understand the term "the microprocessor is operable to disable the alert based at least in part upon the signal strength of the incoming radar signal." Escort thus has proposed a straightforward construction: "the microprocessor is capable of not generating an alert based at least in part upon on the incoming radar signal's strength." This construction captures the plain-language meaning of the term without improperly limiting or broadening the scope of the claim.

Accordingly, Escort respectfully requests the Court find the Group 5 claims not indefinite and adopt Escort's proposed construction.

### 6.  *Group 6 terms*

The following terms from the '038 Patent are in dispute:

| Claim(s) | Term | Escort's Proposed Construction | Uniden's Proposed Construction |
|----------|------|-------------------------------|-------------------------------|
| 50 | "the microprocessor is operable to enable the alert based at least in part upon the signal strength of the incoming radar signal." | A "microprocessor" is a sufficiently definite structure, rendering § 112(6) inapplicable.<br><br>"the microprocessor is capable of generating an alert based at least in part upon the incoming radar signal's strength" | Means-plus-function element to be construed in accordance with pre-AIA 35 U.S.C. § 112, ¶6.<br><br>Function: "the microprocessor is operable to enable the alert based at least in part upon the signal strength of the incoming radar signal."<br><br>Structure: The specification fails to set forth any algorithm or corresponding structure for the |

| Claim(s) | Term | Escort's Proposed Construction | Uniden's Proposed Construction |
|---|---|---|---|
| | | | claimed function. Claim is indefinite. |

Here again, the parties dispute whether the terms in Group 6 should be construed pursuant to pre-AIA 35 U.S.C. § 112(6). The terms should not be construed pursuant to § 112(6), and only minimal construction is necessary.

As with the terms in Groups 3-5, the word "means" is not used, and Uniden fails to rebut the presumption that § 112(6) does not apply. One skilled in the art would understand that "microprocessor" is the name of the structure with a well-understood meaning used by those skilled in the art—and frankly by many lay persons. *Research in Motion Ltd.,* 2008 BL 361233, at *3 ("[T]o avoid means-plus-function status the term need not denote specific structure; it is enough that the term is used by persons of skill in the pertinent art, even if the term covers a broad class of structures and even if the term identifies the structures by their function.") (quotation omitted). And Uniden tacitly concedes this by not asserting that the antecedent "microprocessor" in independent Claim 45 is an insufficient structure. *See* Group 5 Terms, *supra*.

Uniden has not asked for construction of the Group 6 terms in the alternative, and no construction is necessary. Group 6 terms are the inverse of Group 5 terms: Group 5 speaks of disabling alerts, and Group 6 speaks of enabling alerts. The '038 Patent teaches using a comparison of a predetermined signal strength with the signal strength of the incoming radar signal to manage alerts—enabling them when there is a good chance of law enforcement activity or disabling them to avoid false alerts. '038 Patent Col. 4, ll. 50-61. It also describes the relationship between the program storage device and the microprocessor, along with the operation to determine whether to

activate the alert circuit based on the signal strength of detected radar signals. '038 Patent. Col. 3, ll. 4-10.

Although no construction is necessary, Escort understands that the jury may not readily understand the term "the microprocessor is operable to enable the alert based at least in part upon the signal strength of the incoming radar signal." Escort thus has proposed a straightforward construction: "the microprocessor is capable of generating an alert based at least in part upon on the incoming radar signal's strength." As with Escort's Group 5 proposal, this construction captures the plain language meaning of the term without either limiting or broadening the scope of the claim.

Accordingly, Escort respectfully requests the Court find the Group 6 claims not indefinite and adopt Escort's proposed construction.

### 7. *Group 7 terms*

The following terms from the '653 Patent are in dispute:

| Claim(s) | Term | Escort's Proposed Construction | Uniden's Proposed Construction |
|---|---|---|---|
| 34, 47 | "performing an act that is unrelated to muting an alert" | No construction necessary | Indefinite |

The parties dispute whether the claims in Group 7 are indefinite under 35 U.S.C. § 112(2).

Uniden bears the burden of showing the Group 7 claims are indefinite by clear and convincing evidence. *Takeda Pharm.*, 743 F.3d at 1368. Uniden cannot meet this burden because it cannot show that the "claims, read in light of the specification delineating the patent, and the prosecution history, fail to inform, with reasonable certainty, those skilled in the art about the scope of the invention." *Nautilus, Inc.,* 134 S. Ct. at 2124.

Those skilled in the art have "several years of practical experience in the design and/or testing of radar detector systems." APP. 062. They undoubtedly understand the range of radar detector actions, which are further clarified and taught in the '653 Patent. These actions include, but are not limited to:

- using a radar detector that incorporates a component to identify the radar detector's position—such as a GPS receiver—to reduce false alerts;

- using information from multiple positions determined by the GPS receiver;

- storing a position,

- storing a radar signal frequency;

- storing a radar signal strength; and

- muting an alert.

*See* '653 Patent Col. 3, l. 67 – Col. 4, l. 7.

Within this context, those skilled in the art would understand with reasonable certainty the scope of "performing an act that is unrelated to muting an alert"—specifically, that it is limited to the radar detector's actions other than muting the alert. It is thus not indefinite.

Uniden has not asked for construction of the Group 7 terms in the alternative. That is undoubtedly because the term "performing an act that is unrelated to muting an alert" has a plain and ordinary meaning, and any attempt to proffer an alternative would only underscore that fact. *DisplayLink Corp. v. Magic Control Tech. Corp.*, 615 F. Supp. 2d 1051, 1064 (N.D. Cal. 2009) (refusing construction of term that "has a plain and ordinary meaning that cannot be further clarified… by some construction").

Accordingly, Escort respectfully requests the Court find the Group 7 terms not indefinite and allow the jury to apply plain language to Group 7 terms.

### 8. *Group 8 terms*

The following terms from the '679 Patent are in dispute:

| Claim(s) | Term | Escort's Proposed Construction | Uniden's Proposed Construction |
|---|---|---|---|
| 1 | "warning suppression mode" | No construction necessary | "mode in which audible and visual warnings are disabled" |
| 1 | "suppress" / "suppression" | No construction necessary | "disable" / "disabling" |

The parties dispute whether the common words "suppress" and "suppression" require construction. They do not.

### a) "Suppress" / "Suppression"

A jury has the ability to understand the plain and ordinary meaning of the words "suppress" and "suppression." Indeed, "suppress" has been used as a layperson-friendly term in other courts' constructions for less precise or more technically complex claim terms. *See, e.g., Novartis AG v. Mylan Pharms., Inc.,* Civ. Action No.: 09-cv-3604 (PGS), 2011 BL 213348, 10 (D.N.J. Aug. 17, 2011) ("'[S]uitable as an immunosuppressant medicament' means 'a drug that is suitable to suppress an immune response.'"); *Maxma v. ConocoPhillips Inc*., Civ. Action No. 2:03-CV-421, 2005 BL 65803, 9 (E.D. Tex. July 19, 2005) ("'Fuel additive' means 'a material added to fuel, usually in small amounts, to impart or enhance desirable properties or to suppress undesirable properties.'").

"In some cases, the ordinary meaning of claim language as understood by a person of skill in the art may be readily apparent even to lay judges, and claim construction in such cases involves little more than the application of the widely accepted meaning of commonly understood words." *Phillips v. AWH Corp*., 415 F.3d 1303, 1312 (Fed. Cir. 2005). This is one of those cases.

Uniden's proposed constructions swap the ordinary, easily-understood word "suppress" with "disable." But those words are not synonyms, as a juror would know. One may take medicine to suppress a cough, but that rarely has the effect of disabling the cough. Similarly, one skilled in the art would readily understand that suppressing an alert does not require absolutely disabling the alert.

This understanding is consistent with the '679 Patent. The warnings "are suppressed so that they are not disturbing to the operator of the vehicle." '679 Patent Col. 18, ll. 16-18. Accordingly, suppression requires reducing the warning to a level that does not disturb the operator, but does not require disabling the warning completely. Similarly, the '679 Patent teaches "suppress[ing] most or all visual warnings" during a "minimal visual lockout" mode. '679 Patent Col. 18, ll. 57-60. This option allows a reduced visual warning without requiring completely disabling the visual warning. These examples are consistent with the plain and ordinary meaning of "suppression," especially when considered in the context of suppressing a sensory—e.g. audible or visual—warning.

### b)  "Warning Suppression Mode"

The term "warning suppression mode" is likewise plain English with a readily-understood meaning. Consumer electronics with multiple modes are ubiquitous—e.g., personal computers can be placed into "sleep mode" to conserve battery life, and mobile devices must be placed in "airplane mode" during takeoff and landing. And Uniden's proposed construction uses the word "mode," implicitly conceding that "mode" needs no construction, meaning the alleged ambiguities pertain solely to (1) the word "suppression" discussed above, and (2) whether "warning" requires the limiting adjectives "audible and visual."

The starting point is that the '679 Patent uses the term "warning suppression mode" consistent with its ordinary meaning. For example, the '679 Patent identifies a number of operative

modes including, "a 'warning suppression' mode in which warnings, particularly audible warnings, produced by the radar detector are suppressed so that they are not disturbing to the operator of the vehicle." '679 Patent Col. 18, ll. 16-18.

There is no support for Uniden's attempt to inject the limitation "audible and visual" into "warning." To the contrary, the '679 Patent does not limit suppression of warnings to suppression of both audible and visual warnings. Rather, the '679 Patent teaches that audible and visual outputs may be treated differently. For example, the '679 Patent distinguishes audible warnings in describing the "'warning suppression' mode in which warnings, particularly audible warnings, produced by the radar detector are suppressed so that they are not disturbing to the operator of the vehicle." '679 Patent Col. 18, ll. 15-18. The '679 Patent also teaches "a 'minimal visual lockout' mode, in which the flag database of FIG. 5 is updated to suppress most or all visual warnings of radar signals at the current location of the vehicle." '679 Patent Col. 18, ll. 57-60. Audible and visual warnings may be treated differently, so Uniden's attempt to bucket them together and require simultaneous disabling treatment is not supported by the '679 Patent.

Accordingly, Escort respectfully requests that the Court decline construction of Group 8 terms.

### 9. Group 9 terms

The following terms from the '679 Patent are in dispute:

| Claim(s) | Term | Escort's Proposed Construction | Uniden's Proposed Construction |
|---|---|---|---|
| 28 | "speed determining circuit" | "a circuit for determining speed of a device" | "a circuit distinct from the position determining circuit for determining a speed of a device" |

The parties agree that "speed determining circuit" may be difficult for the jury. But their approaches to addressing that potential difficulty could not be more different.

Escort proposes that a "speed determining circuit" is "a circuit for determining speed of a device." This proposal is simple, straightforward, and consistent with the claim so that it is neither limited nor broadened. It also has the benefit of being consistent with the parties' agreed construction for "position determining circuit," as it merely replaces the word "position" with "speed."

In contrast, Uniden seeks to impose a limitation on "speed determining circuit" that has no support in the '679 Patent—namely, a limitation that it is "distinct from the position determining circuit." A limitation not present in the specification should not be adopted. *SecurityProfiling, LLC*, 2018 BL 347127, at *4.

Escort thus respectfully requests that the Court adopt its construction of Group 9 terms.

### 10. Group 10 terms

The following terms from the '679 Patent are in dispute:

| Claim(s) | Term | Escort's Proposed Construction | Uniden's Proposed Construction |
|----------|------|-------------------------------|-------------------------------|
| 31 | "[vehicle speed information is presented on said display] in conjunction with the provision of an alert by the alert section" | No construction is necessary. | "as a visible warning of the alert by the alert section" |

As an initial matter, the Court should decline to consider this term because Uniden failed to disclose it in its Local Patent Rule 4-1(a) disclosures. APP. 064. Uniden's identification of this term is inarguably untimely.

Assuming the Court grants forbearance, it still should find that the term needs no construction. All terms are used consistently with their ordinary meaning: all that is required is that the speed is displayed while an alert is provided by the alert section. Uniden, however,

improperly seeks to limit the scope of the claim so that speed is displayed "as a visible warning of the alert"—that is, at the time of the alert and only at the time of the alert. In other words, no speed may be displayed unless or until a warning is provided.

Uniden's proposed construction is inconsistent with the '679 Patent, which teaches an option to display speed as a visual warning <u>or</u> to display the speed continuously. *See* '679 Patent Col. 13, ll. 27-32. Indeed, the '679 Patent explicitly discloses "a 'display speed' mode, in which the vehicle's current speed is continuously displayed." '679 Patent Col. 19, ll. 3-4. The patent indisputably teaches options to display the speed without regard to whether a warning is concurrently provided, rendering Uniden's construction at odds with the patent.

Escort thus respectfully requests that the Court decline construction of Group 10 terms.

## IV.    CONCLUSION

Escort respectfully requests that the Court enter an Order adopting Escort's proposed constructions for the following terms:

| Claim(s) of the '038 Patent | Term | Construction |
|---|---|---|
| 19, 21, 31, 33, 34, 41, 42 | "program storage device that is coupled to the microprocessor" | "memory device containing machine-readable instructions that is capable of interacting with the microprocessor" |
| 35, 36, 38 | "memory device that is coupled to the microprocessor" | "memory device that is capable of interacting with the microprocessor" |
| 49 | "the microprocessor is operable to disable the alert based at least in part upon the signal strength of the incoming radar signal." | "the microprocessor is capable of not generating an alert based at least in part upon on the incoming radar signal's strength" |
| 50 | "the microprocessor is operable to enable the alert based at least in part upon the signal strength of the incoming radar signal." | "the microprocessor is capable of generating an alert based at least in part upon the incoming radar signal's strength" |

| Claim(s) of the '679 Patent | Term | Construction |
|---|---|---|
| 28 | "speed determining circuit" | "a circuit for determining speed of a device" |

Escort further requests that the Court allow all other terms to go to the jury without construction.

Dated: November 16, 2018

Respectfully submitted,

/s/ Megan M. O'Laughlin
Megan M. O'Laughlin (TX24013263)
E-Mail: molaughlin@hitchcockevert.com
John T. Tower (TX24045362)
E-Mail: jtower@hitchcockevert.com
Kristen M. Zahnow (TX24102678)
E-Mail: kzahnow@hitchcockevert.com
HITCHCOCK EVERT LLP
750 North St. Paul Street, Suite 1110
Dallas, TX 75201
Telephone: (214) 953-1111
Facsimile: (214) 953-1121

COUNSEL FOR PLAINTIFF

## CERTIFICATE OF SERVICE

On November 16, 2018, I electronically submitted the foregoing document with the clerk of court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court. I hereby certify that I have served all counsel and /or pro se parties of record electronically or by another manner authorized by Federal Rule of Civil Procedure 5(b)(2).

/s/ Megan M. O'Laughlin
Megan M. O'Laughlin