# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF TEXAS
# DALLAS DIVISION

| | | |
|---|---|---|
| **ESCORT INC.,** | § | |
| **an Illinois Corporation,** | § | |
| *Plaintiff*, | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO: 3:18-cv-00161-N** |
| | § | |
| **UNIDEN AMERICA CORPORATION,** | § | |
| **a Delaware Corporation,** | § | |
| *Defendant*. | § | |

## PLAINTIFF ESCORT INC.'S RESPONSIVE CLAIM CONSTRUCTION BRIEF

Dated: November 30, 2018

Megan M. O'Laughlin (TX24013263)
E-Mail: molaughlin@hitchcockevert.com
John T. Tower (TX24045362)
E-Mail: jtower@hitchcockevert.com
Kristen M. Zahnow (TX24102678)
E-Mail: kzahnow@hitchcockevert.com
HITCHCOCK EVERT LLP
750 North St. Paul Street, Suite 1110
Dallas, TX 75201
Telephone: (214) 953-1111
Facsimile: (214) 953-1121

COUNSEL FOR PLAINTIFF

# TABLE OF CONTENTS

I.    INTRODUCTION ............................................................................................................. 1

II.   ARGUMENT .................................................................................................................. 2

   A.    Terms in Dispute ................................................................................................... 2

      1.    Group 1 terms ................................................................................................. 2

      2.    Group 2 terms ................................................................................................. 5

         a)   Uniden's Indefiniteness Argument is Contradicted by the Intrinsic Evidence. ........... 7

         b)   Uniden's Proposed Construction in the Alternative Is Unnecessary and Impermissibly
         Limiting.................................................................................................................... 9

      3.    Group 3 terms ............................................................................................... 12

      4.    Group 4 terms ............................................................................................... 16

      5.    Group 5 terms ............................................................................................... 17

      6.    Group 6 terms ............................................................................................... 20

      7.    Group 7 terms ............................................................................................... 21

      8.    Group 8 terms ............................................................................................... 23

      9.    Group 9 terms ............................................................................................... 25

      10.   Group 10 terms ............................................................................................. 27

III.  CONCLUSION.............................................................................................................. 28

# TABLE OF AUTHORITIES

## Cases

*Advanced Comm. Design, Inc. v. Premier Retail Net., Inc.*, 46 Fed. Appx. 964 (Fed. Cir. 2002) ................................................................................................................................ 10

*Alfred E. Mann Found. for Scientific Research v. Cochlear Corp.*, 841 F.3d 1334 (Fed. Cir. 2016) .................................................................................................... 13, 14, 15, 18

*AllVoice Computing PLC v. Nuance Communications, Inc.*, 504 F.3d 1236 (Fed. Cir. 2007) .... 15

*Apple Inc. v. Motorola, Inc.*, 757 F.3d 1286 (Fed. Cir. 2014) ...................................................... 19

*Becton, Dickinson & Co. v. Tyco Healthcare Grp., LP*, 616 F.3d 1249 (Fed. Cir. 2010)............ 25

*Gaus v. Conair Corp.*, 363 F.3d 1284 (Fed. Cir. 2004)................................................................. 26

*Graphics Props. Holdings Inc. v. ASUS Computer Int'l, Inc.*, Civ. Action No. 12-cv-210-LPS, 2014 BL 270014, (D. Del. Sept. 29, 2014) ................................................................ 19

*In re Power Integrations, Inc.*, 884 F.3d 1370 (Fed. Cir. 2018)................................................. 2, 3

*Interval Licensing LLC v. AOL Inc.*, 766 F.3d 1364 (Fed. Cir. 2014)......................................... 22

*Nautilus, Inc. v. Biosig Instruments, Inc.*, 134 S. Ct. 2120, 189 L. Ed. 2d 37 (2014) ................... 9

*NobelBiz, Inc. v. Glob. Connect, LLC*, 876 F.3d 1326 (Fed. Cir. 2017)...................................... 23

*NTP, Inc. v. Research in Motion, Ltd.*, 418 F.3d 1282 (Fed. Cir. 2005) ..................................... 26

*O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351 (Fed. Cir. 2008)................ 23

*Pagemelding, Inc. v. Feeva Tech., Inc.*, No. C 08-03484 CRB, 2009 BL 362219, at *10 (N.D. Cal. Aug. 19, 2009)................................................................................................... 24

*Powell v. Home Depot U.S.A., Inc.*, 663 F.3d 1221 (Fed. Cir. 2011).......................................... 26

*Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 711 F.3d 1348 (Fed. Cir. 2013) ............................................................................................................................... 3

*Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 843 F.3d 1315 (Fed. Cir. 2016) ............................................................................................................................... 3

*Power Integrations, Inc. v. Fairchild Semiconductor Intl., Inc.*, 422 F. Supp. 2d 446, 455-56 (D. Del. 2006) ...................................................................................................................... 3

*Rambus Inc. v. Hynix Semiconductor Inc.*, 569 F. Supp. 2d 946 (N.D. Cal. 2008)....................... 5

*Retractable Techs., Inc. v. Becton, Dickinson & Co.*, 653 F.3d 1296 (Fed. Cir. 2011)............... 26

*Rexnord Corp. v. The Laitram Corp.*, 274 F.3d 1336 (Fed. Cir. 2001)........................................... 4

*Seattle Box Co. v. Indus. Crating & Packing, Inc.*, 731 F.2d 818 (Fed. Cir. 1984) .................... 22

*SecurityProfiling, LLC v. Trend Micro Am., Inc.*, Civ. Action No. 3:17-CV-1484-N, 2018 BL
    347127 (N.D. Tex. Sept. 25, 2018)................................................................................. 4, 16, 24

*SyncPoint Imaging, LLC v. Nintendo of Am. Inc.*, Civ. Action No. 2:15-cv-00247-JRG-RSP,
    2016 BL 1648 (E.D. Tex. Jan. 5, 2016)............................................................................. 18, 21

*Triton Tech of Tex., LLC v. Nintendo of Am., Inc.*, 753 F.3d 1375, 1377, 111 U.S.P.Q.2d 1396,
    1398 (Fed. Cir. 2014)......................................................................................................... 13, 18

*Williamson v. Citrix Online, LLC*, 792 F.3d 1339 (Fed. Cir. 2015) ............................................ 19

*Zeroclick, LLC v. Apple Inc.*, 891 F.3d 1003 (Fed Cir. 2018) ................................................ 14, 18

**Statutes**

35 U.S.C. § 112(2) ........................................................................................................................... 1

35 U.S.C. § 112(6) .................................................................................................................. passim

## TABLE OF EXHIBITS

| **Document** | **Appendix Page No.** |
| --- | --- |
| Application No. 09/292,089 | RAPP. 001 |

Plaintiff Escort Inc. ("Escort") files its Responsive Claim Construction Brief and would respectfully show the Court as follows:

## I.    INTRODUCTION

Uniden's proposed constructions of terms of U.S. Patent No. RE39,038, U.S. Patent No. RE40,653 and U.S. Patent No. 7,576,679 show that few terms require construction at all. That is because, for most of the claim terms for which it proposes constructions, Uniden plucks limitations out of the specification that are not present in the claims—and, tellingly, ignores other parts of the specification that conflict with Uniden's proposed constructions.

Uniden's approach to the terms it asserts are indefinite is even less tenable, as it uniformly fails to perform all steps of the required analyses. Uniden invokes pre-AIA 35 U.S.C. § 112(6) for multiple claim terms by treating "global positioning system receiver" and "microprocessor" as nonce words to replace the word "means," which the terms lack. That is, Uniden starts with the premise that § 112(6) applies without first rebutting the presumption that § 112(6) does ***not*** apply. The Federal Circuit has made clear that a court cannot skip the analysis and rely solely on conclusory language to apply § 112(6) to claim terms that lack the word "means." Rather, there must be evidentiary support for that application. Here there is none—Uniden has pointed to no record evidence that supports its ultimate conclusion that § 112(6) applies to any claim terms.

For the terms that Uniden asserts are indefinite pursuant to § 112(2), Uniden likewise relies solely on conclusions, rather than clear and convincing proof, that one of ordinary skill in the art would not understand the scope of the invention. Uniden has wholly failed to meet its burden to show any of the claims are indefinite.

In contrast to Uniden's approach to claim construction, Escort has recognized that ordinary terms should be allowed their ordinary meaning and proposed straightforward constructions for those terms with which a jury may not be conversant.

## II.     ARGUMENT

### A.     Terms in Dispute

#### 1.  Group 1 terms

The following terms from the '038 Patent are in dispute:

| Claim(s) | Term | Escort's Proposed Construction | Uniden's Proposed Construction |
|---|---|---|---|
| 19, 21, 31, 33, 34, 41, 42 | "program storage device that is coupled to the microprocessor" | "memory device containing machine-readable instructions that is capable of interacting with the microprocessor" | "a conventional memory device such as a PROM, EPROM, EEPROM, ROM, SRAM, or battery backed up DRAM that is connected to, but accessible only by, the microprocessor." |
| 35, 36, 38 | "memory device that is coupled to the microprocessor" | "memory device that is capable of interacting with the microprocessor" | "a conventional memory device such as a PROM, EPROM, EEPROM, ROM, SRAM, or battery backed up DRAM that is connected to, but accessible only by, the microprocessor." |

Uniden bases its argument that the memory device "is connected to, but accessible only by, the microprocessor" on one aspect of an embodiment shown in Figure 1 of the '038 Patent. In doing so, Uniden simply ignores other embodiments and the myriad uses of the term "coupled to" in the patent, all of which clearly contemplate "coupling" to allow for multiple structures to interact with one another without the requirement of being "accessible only by" a single other component.

As an initial matter, Uniden's approach is in conflict with *In re Power Integrations, Inc.*, 884 F.3d 1370 (Fed. Cir. 2018), even though it cites the case in alleged support of its construction. In that case, the Federal Circuit reviewed the construction of "coupled to" by the Patent Trial & Appeal Board under its then-prevailing "broadest reasonable interpretation" standard, noting different constructions adopted by the district court (and the Federal Circuit itself) in prior litigation. *Id.* at 1372-73. Although Uniden tries to boot-strap the Federal Circuit's rejection of the

PTAB's "unreasonably broad claim construction" as support for Uniden's proposed unreasonably *narrow* claim construction, this argument fundamentally misrepresents the holding in *In re Power Integrations*. The Federal Circuit's 2018 decision in *In re Power Integrations* rejected the PTAB's construction of "coupled" only insofar as it permitted elements to be coupled "no matter how far apart they are, how many intervening components are between them, or whether they are connected in series or in parallel." *Id.* at 1376.

In contrast, the Federal Circuit adopted and twice applied the District of Delaware's construction of "coupled" in the related litigation. *Id.* at 1379 n.1 (citing *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 843 F.3d 1315, 121 (Fed. Cir. 2016) and *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 711 F.3d 1348 (Fed. Cir. 2013)). There, the district court expressly rejected the defendant's urging to adopt a construction of "coupled to" that "seeks to imply a requirement that the connection be a direct connection, or a connection without any intermediate circuit elements," holding that such a limitation was inconsistent with the intrinsic evidence. *Power Integrations, Inc. v. Fairchild Semiconductor Intl., Inc.*, 422 F. Supp. 2d 446, 455-56 (D. Del. 2006). Indeed, the district court explicitly noted that its construction of "coupled" to require a connection that allows signals to pass between the structures "should not be read to imply or necessitate a direct connection, as the Court does not read the patent to require a direct connection or to preclude the use of intermediate circuit elements." *Id.* at 456. Nothing in the Federal Circuit's 2018 decision in *In re Power Integrations* disturbs its approbation of the district court's construction in its 2013 and 2016 decisions in *Power Integrations III* and *Power Integrations V*, respectively.

As with the patent at issue in *Power Integrations*, nothing in the '038 Patent requires "a direct connection, or a connection without any intermediate circuit elements." Yet Uniden

proposes a construction that requires, not just a direct connection, but a monogamous connection. Notably, Uniden fails to acknowledge, much less address the myriad other uses of "coupled to" in the patent, including these examples from Plaintiff's Opening Claim Construction Brief:

- "a circuit coupled to the microprocessor for detecting the incoming police radar signal; and a global positioning system receiver coupled to the microprocessor." '038 Patent, Col. 1, ll. 60-63;

- "The radar detector includes an antenna that is coupled to the detector circuit." '038 Patent, Col. 2, ll. 29-30;

- "The output of the detector circuit is coupled to the input of one or more analog-to-digital converters." '038 Patent, Col. 2, ll. 48-49;

- "In addition to being coupled to the detector circuit and the analog-to-digital converter, the microprocessor is also coupled to an alert circuit." '038 Patent, Col. 2, ll. 53-55.

As these examples show, the microprocessor is coupled to numerous other structures, and the detector circuit is coupled to both the antenna and the analog-to-digital converter. "Coupled to" cannot and does not mean exclusive access because it is used with respect to these other components that are coupled to one another; so that limitation cannot be given to "coupled to" when it is used with respect to the memory device and program storage device. *Cf. Rexnord Corp. v. The Laitram Corp.*, 274 F.3d 1336, 1342 (Fed. Cir. 2001) ("[A] claim term should be construed consistently with its appearance in other places in the same claim or in other claims of the same patent.").

Moreover, by relying on solely one embodiment from the specification to make its argument, Uniden "has committed the cardinal sin of importing limitations from the specification into the claims." *SecurityProfiling, LLC v. Trend Micro Am., Inc.*, Civ. Action No. 3:17-CV-1484-N, 2018 BL 347127, at *4 (N.D. Tex. Sept. 25, 2018) (Godbey, J.). Simply put, the '038 Patent teaches multiple embodiments of the claimed invention—four that are enumerated in the specification, as well as unenumerated "Other Embodiments"—including ones that use "coupled

to" in a way that is impossible to reconcile with Uniden's proposed limitation. As "coupled to" must be given a consistent meaning, the Court should reject Uniden's proposed construction as incompatible with the intrinsic evidence and fundamental canons of claim construction.

Finally, Uniden has not shown that the '038 Patent limits the "memory device" to "a conventional memory device such as a PROM, EPROM, EEPROM, ROM, SRAM, or battery backed up DRAM," so the Court should reject this additional limiting language. *See Rambus Inc. v. Hynix Semiconductor Inc.*, 569 F. Supp. 2d 946, 973 (N.D. Cal. 2008) (declining to read "memory device" narrowly simply because of references in the specification to DRAMs, SRAMs, and ROM devices as "memory devices").

Accordingly, for the reasons stated in Escort's Opening Claim Construction Brief, Escort respectfully requests the Court adopt its proposed constructions as follows:

1. "program storage device that is coupled to the microprocessor" means "memory device containing machine-readable instructions that is capable of interacting with the microprocessor"; and

2. "memory device that is coupled to the microprocessor" means "memory device that is capable of interacting with the microprocessor."

   ### 2.  *Group 2 terms*

The following terms from the '038 Patent are in dispute:

| Claim(s) | Term | Escort's Proposed Construction | Uniden's Proposed Construction |
|---|---|---|---|
| 19 | "determining the position of a radar detector" | No construction necessary | Indefinite or, in the alternative, the following construction should apply:<br><br>"establishing conclusively the position of a radar detector" |

| Claim(s) | Term | Escort's Proposed Construction | Uniden's Proposed Construction |
|---|---|---|---|
| 21 | "determining the velocity of the device" | No construction necessary | Indefinite or, in the alternative, the following construction should apply:<br><br>"establishing conclusively the speed of a radar detector"<br><br>The step of "determining the velocity of the device [utilized to detect the incoming radar signal]" occurs after the incoming radar signal is detected and before "generating an alert…" |
| 33 | "determining the distance between the position of the radar detector and another position" | No construction necessary | Indefinite or, in the alternative, the following construction should apply:<br><br>"establishing conclusively the distance between the position of the radar detector and another position" |
| 34 | "determining the bearing between the position of the radar detector and another position" | No construction necessary | Indefinite or, in the alternative, the following construction should apply:<br><br>"establishing conclusively the heading between the position of the radar detector and another position" |

Additionally, the following similar terms from the '653 Patent are in dispute:

| Claim(s) | Term | Escort's Proposed Construction | Uniden's Proposed Construction |
|---|---|---|---|
| 22, 38 | "[determining]/ [determines] a first position of the radar detector" | No construction necessary | Indefinite or, in the alternative, the following construction should apply:<br><br>"establishing conclusively the position of a radar detector" |

| Claim(s) | Term | Escort's Proposed Construction | Uniden's Proposed Construction |
|---|---|---|---|
| 22, 38 | "[determining]/ [determines] a second position of the radar detector" | No construction necessary | Indefinite or, in the alternative, the following construction should apply: "establishing conclusively the position of a radar detector" |

### a) Uniden's Indefiniteness Argument is Contradicted by the Intrinsic Evidence.

As briefed, it appears the crux of Uniden's indefiniteness argument is that both the GPS receiver and the microprocessor can determine a position and, therefore, a person having ordinary skill in the art would not know how to "determine" the position and derivative data. This argument simply does not hold together.

As an initial matter, it is not readily clear why it would be a problem that either structure could make the determination—teaching that one structure (such as the GPS receiver) can determine information does not teach the negative that no other structure (such as the microprocessor) could determine the information. To the contrary, Fleming explicitly taught in his original Application No. 09/292,089 that both structures could determine position and velocity:

- the specification describes on Page 5, lines 16-23 that the GPS receiver itself can determine position and velocity and provide that data to the microprocessor. Appendix to Escort's Responsive Claim Construction Brief ("RAPP.") at 009.

- Claims 19 and 21 teach that the program storage device coupled to the microprocessor contains instructions for "determining the position" and "determining the velocity" that can be executed by the microprocessor. RAPP. at 018-19.

These features survive in the '038 Patent. '038 Patent, Col. 3, ll. 14-26; Claims 19 & 21.

The notion that a function can be performed by alternate structures is illustrated elsewhere in the specification and claims of both the '038 Patent and the '653 Patent. The specification of the '038 Patent states that the detector circuit should be "capable of generating an output signal which indicates the strength, the presence, and/or the frequency of incoming radar signals," '038 Patent, Col. 3, ll. 35-37, and that the program storage device's machine readable instructions may include "determin[ing] the frequency and/or signal strength of any detected radar signals." '038 Patent, Col. 3, ll. 6-7. These two statements are not in tension, as the specification clearly states that "[w]hile the detector circuit may operate autonomously, operation and control of the detector circuit may be performed by the microprocessor…as is known in the art…" '038 Patent, Col. 2, ll. 37-41. Likewise, the '653 Patent teaches that a velocity may be *pre*determined by one of several methods, including the user interface circuit, '653 Patent, Col. 6, ll. 7-9, or a database stored in the radar detector's onboard memory. '653 Patent, Col. 6, ll. 20-21. Claims 49 and 50 of the '653 Patent refer only generally to a "predetermined velocity" without specifying which of the disclosed structures does the predetermining.

Uniden does not appear to find the "determining/determines" term to be indefinite in these instances, where other types of data are determined (or predetermined) by one of multiple alternate components or structures in the device. As such, Uniden's assertion—that "determining/ determines" is indefinite ***only*** when what is being determined is the location of the radar detector or other information that can be calculated from its location (i.e., velocity, bearing and distance) simply because two structures are specified in distinct claims—is not supported by the specification.

Perhaps more importantly, Uniden's arguments about whether two alternative structures can determine information does not address the threshold issue: whether a person of ordinary skill

in the art would understand the scope of the "determining/determines" terms with reasonable certainty. *Nautilus, Inc. v. Biosig Instruments, Inc.*, 134 S. Ct. 2120, 2124, 189 L. Ed. 2d 37, 43 (2014). In fact, Uniden has not even attempted to introduce the required clear and convincing evidence that one skilled in the art would not understand the scope of these claims—likely because to do so would not pass the proverbial red-face test.

"Determining" and "determines" are both plain language terms comprehensible by a skilled artisan and a lay person alike. This self-evident fact was accepted by the District of Idaho's construction in the prior *Fleming* case: in addition to rejecting the notion that "determining the position" needed construction because it was a plain English phrase, the *Fleming* court used the word "determine" in construing "predetermined" as "determined in advance." Appendix to Escort's Opening Claim Construction Brief [Doc. No. 38] ("APP.") at 055. No court construing a claim term that is actually unclear and requires construction would use the same word in a separate construction.

### b)  Uniden's Proposed Construction in the Alternative Is Unnecessary and Impermissibly Limiting.

In the event that the Court correctly finds that the claim term "determining/determines" is not-indefinite, Uniden proposes the following construction in the alternative: "establishing/ establishes conclusively." As noted above, construction of this term is entirely unnecessary, but Uniden's proposed alternative construction manages to be both unhelpful and inconsistent with the intrinsic evidence.

Uniden's proposed construction in the alternative to its indefiniteness argument is telling. Uniden does not refer to the GPS and microprocessor in the context of the "determining/ determines" claims—or, for that matter, offer a construction that would address its purported concerns. Rather, it focuses solely on the meaning of "determining/determines" with dictionary

definitions. Uniden's proposed construction thus undermines its purported concern about the capability of both the GPS and microprocessor to determine information, showing such feigned concern has nothing to do with whether the "determining/determines" language *itself* renders the claims indefinite.

In comparing the '038 and '653 Patents' use of "determine" to Uniden's proffered alternative "establish," it is readily apparent that the change adds no nuance to the claim language that is necessary for a skilled artisan (or a lay person) to understand its meaning; it is merely an unnecessary substitution of a putative (but not actual) synonym for a claim term that already has a clear and useful meaning. As such, the Court should reject the substitution. *Advanced Comm. Design, Inc. v. Premier Retail Net., Inc.*, 46 Fed. Appx. 964, 981 (Fed. Cir. 2002) ("[I]f a claim term . . . is sufficiently clear such that no other definition is needed, the district court simply has no duty to wave into existence a different definition, one that uses different words than the words actually used in the claim language itself.").

Furthermore, assuming *arguendo* that the Court were to find that "determining/determines" warrants construction, Uniden's own extrinsic evidence in the form of dictionary definitions shows that Uniden's construction does not add any clarity. There are multiple definitions for "determine," and Uniden gives no cogent explanation why "establish"—which is not even one of the options— is an improvement over "determine" or a more helpful construction than any of the eleven definitions listed:

1) To settle or resolve (a dispute, question, etc.) by an authoritative or conclusive decision;

2) To conclude or ascertain, as after reasoning or observation;

3) To fix the position of;

4) To cause, affect, or control; fix or decide causally;

5) To give direction or tendency to; impel;

6) To lead or bring (a person) to a decision

7) To decide upon;

8) *Logic.* To limit (a notion) by adding differentiating characteristics;

9) *Law.* To put an end to; to terminate.

10) To come to a decision or resolution; decide;

11) *Law.* Come to an end.

Uniden's Appendix [Doc. No. 39-1] at 007-8. ***Even if*** the Court were to find it necessary to construe "determining/determines," there is no reason to limit that construction to the definition Uniden likes best when even Uniden cannot articulate why it improves on the plain language of the patent.

Uniden also introduces "conclusively" into its construction. However, "conclusively"— which implies unquestionable exactness—is decidedly inconsistent with the intrinsic evidence. Indeed, there are numerous references throughout the specification of the '038 and '653 Patents to "determining" values with varying degrees of precision:

- "to more accurately determine the position of the source of the incoming radar signal" '038 Patent, Col. 4, ll. 24-25;

- "the position of the radar detector may be more precisely determined" '038 Patent, Col. 4, ll. 34-35;

- "Due to inaccuracies in algorithms and slight variations in frequencies due to physical phenomena such as temperature of radar transmitters, it may not be practical to determine if a frequency of an incoming radar signal is exactly equal to a previously programmed frequency. Thus it is often sufficient to determine if the frequency of an

incoming radar signal is similar to a previously programmed frequency." '038 Patent, Col. 5, ll. 23-29.

Again, "determining/determines" does not require construction; however, any construction that the Court may deem necessary would be inconsistent with the intrinsic evidence if it imported Uniden's proposed "conclusively" limitation.

Finally, despite proposing a construction that requires a specific action order in the '038 Patent's Claim 21, Uniden does not provide any support—or even argument—for its proposed limitation that, "The step of 'determining the velocity of the device [utilized to detect the incoming radar signal]' occurs after the incoming radar signal is detected and before 'generating an alert…'". As explained in Escort's Opening Claim Construction Brief, the '038 Patent explicitly rejects the application of a particular order of acts. *See* '038 Patent, Col. 6, ll. 36-42. As nothing in Claim 21 requires that the determination of velocity occur "after the incoming radar signal is detected," the Court should reject this additional limitation as contrary to the shared disclosure of the '038 Patent and the '653 Patent.

Accordingly, Escort respectfully requests that the Court allow the jury to apply plain meaning to Group 2 terms.

### 3. Group 3 terms

The following terms from the '038 Patent are in dispute:

| Claim(s) | Term | Escort's Proposed Construction | Uniden's Proposed Construction |
|----------|------|-------------------------------|-------------------------------|
| 29 | "the global positioning system receiver is operable to provide the microprocessor with data that indicates the | A "global positioning system receiver" is a sufficiently definite structure, rendering § 112(6) inapplicable.<br><br>No construction necessary | Means-plus-function element to be construed in accordance with pre-AIA 35 U.S.C. § 112, ¶6.<br><br>Function: "the global positioning system receiver is operable to provide the microprocessor with the speed of the radar detector." |

| Claim(s) | Term | Escort's Proposed Construction | Uniden's Proposed Construction |
|---|---|---|---|
| | velocity of the radar detector" | | <u>Structure</u>: The specification fails to set forth any algorithm or corresponding structure for the claimed function. Claim is indefinite. |

Uniden's indefiniteness argument is premised on (1) conflating a GPS receiver with a general purpose computer, and (2) asserting without support that providing speed is not an ordinary function of a GPS receiver. Given Uniden's burden of proof, bald assertions are wholly insufficient for this Court to entertain Uniden's pre-AIA 35 U.S.C. § 112(6) argument.

Uniden cites *Alfred E. Mann Found. for Scientific Research v. Cochlear Corp.*, 841 F.3d 1334, 1342 (Fed. Cir. 2016), for the proposition that "the structure must be more than a general purpose computer or a microprocessor." But a GPS receiver is a specific device that performs specific functions—some of which are explicitly identified in the specification—not a general purpose computer. Moreover, the '038 Patent expressly states that the GPS receiver is capable of determining the velocity of the device. '038 Patent, Col. 3, ll. 21-26.

Regardless, Uniden also ignores that *Mann Found.* involved a claim term that used the word "means." The same is true of the only other case Uniden cites, *Triton Tech of Tex., LLC v. Nintendo of Am., Inc.*, 753 F.3d 1375, 1377, 111 U.S.P.Q.2d 1396, 1398 (Fed. Cir. 2014) ("Each asserted claim recites an 'integrator means.'"). As a result, in both cases there was a presumption that § 112(6) applied. That stands in stark contrast to this case, where the presumption is that § 112(6) does ***not*** apply. *SecurityProfiling, LLC,* 2018 BL 347127, at *2 (recognizing that when a claim does not use the word "means," there is a rebuttable presumption that § 112(6) does not apply).

Uniden basically skips over this presumption, paying only lip service to it in its stated Legal Standards. But the Federal Circuit has mandated that the presumption be addressed *first*. For example, in *Zeroclick, LLC v. Apple Inc.,* the Federal Circuit remanded a finding of indefiniteness "[b]ecause the district court failed to undertake the relevant inquiry and make related factual findings to support its conclusion that the asserted claims recited means-plus-function terms." 891 F.3d 1003, 1006 (Fed. Cir. 2018). Specifically, the Federal Circuit reinforced that there must be evidentiary support before a claim term that does not use the word "means" can be construed under § 112(6):

> Neither of the limitations at issue uses the word "means." Presumptively, therefore, § 112, ¶ 6 does not apply to the limitations. Apple argued that the limitations must be construed under § 112, ¶ 6, but provided no evidentiary support for that position. Accordingly, Apple failed to carry its burden, and the presumption against the application of § 112, ¶ 6 to the disputed limitations remained unrebutted. The district court's discussion is revealing: its determination that the terms must be construed as means-plus-function limitations is couched in conclusory language. The court relied on Apple's arguments, contrasting them against Zeroclick's contentions, but pointed to no record evidence that supports its ultimate conclusion regarding whether § 112, ¶ 6 applies to the asserted claims.

*Id.* at 1007-1008. The Federal Circuit went on to criticize the district court for "effectively treat[ing] 'program' and 'user interface code' as nonce words, which can operate as substitutes for 'means' and presumptively bring the disputed claims limitations within the ambit of § 112 ¶ 6," which the Federal Circuit concluded was erroneous. *Id.* at 1008.

Uniden makes the same error here. It offers no evidence whatsoever for treating a GPS receiver as a "general purpose computer," or substituting it for "means." Uniden errs in going straight to a § 112(6) indefiniteness analysis, citing *Mann Found.*—which, again, involved disputed patent claims that actually used "means"—rather than proposing factual findings to support its conclusion that the Group 3 claims are means-plus-function terms without the words

that would give rise to a presumption in Uniden's favor. The reason for this omission could not be clearer: no facts support Uniden's argument.

But even if *Mann Found.* was applicable to this case, the '038 Patent is much more similar to the claim for which the Federal Circuit **reversed** a finding of indefiniteness than the claim for which the Federal Circuit **affirmed** a finding of indefiniteness. Specifically, the means-plus-function limitation found not-indefinite by the Federal Circuit used a microprocessor as the structure. *Alfred E. Mann Found. for Scientific Research v. Cochlear Corp.*, 841 F.3d at 1345 ("The limitation 'external processor means . . . for . . . processing the status-indicating signals to derive information therefrom' is a means-plus-function limitation. It is undisputed that the structure is the microprocessor."). The claim did not **explicitly** identify the algorithm, leading to the district court's finding of invalidity. In reversing, the Federal Circuit found that a person of ordinary skill in the art would know the algorithm to be implemented even without explicit disclosure, and thus held "there is 'adequate defining structure to render the bounds of the claim understandable to one of ordinary skill in the art.'" *Id.* (quoting *AllVoice Computing PLC v. Nuance Communications, Inc.,* 504 F.3d 1236, 1245 (Fed. Cir. 2007)). This is equally true for the Group 3 terms.

First, the claim language does not require providing speed, as Uniden purports. Instead, it requires "data that indicates the velocity." The specification explicitly states that the speed can be "easily determined using conventional algorithms" by comparing two different positions of the device over time. '038 Patent, Col. 3, ll. 21-24. So the claim language requires only that the GPS receiver provide the microprocessor with at least two different positions of the radar detector and the time each was recorded.

Second, the patent teaches that the GPS receiver is the device that provides the position and time data that can be used to determine velocity. It defies common sense to claim that one skilled in the art would not understand a GPS receiver's capability in this regard. Those skilled in the art—and even many lay persons who use GPS—know that GPS position determinations use a synced atomic clock. That is, GPS requires use of satellites that are monitored at stations outfitted with atomic clocks spread around the world. Even a beginning algebra student, to say nothing of a skilled artisan, understands how to use this information to calculate speed.

Finally, Uniden tacitly concedes that a global positioning system receiver is a structure by choosing not to seek construction of the term in its many other appearances in the claims, so the dispute is solely whether it is sufficiently definite. Uniden fails "to demonstrate that the words of the claim are *not* understood by persons of ordinary skill in the art to have a sufficiently definite meaning as the name for structure." *SecurityProfiling, LLC*, 2018 BL 347127, at *3 (emphasis in original). That is because a global positioning system receiver is unquestionably a specific structure taught in the specification to provide data that indicates the velocity of the radar detector and is the same structure to which the claim refers. There is no credible argument that the claim language does not provide a specific structure.

Accordingly, Uniden has not met its burden to rebut the presumption that § 112(6) does not apply. The Court must therefore find the Group 3 claims not-indefinite, and Escort respectfully requests that the Court allow the jury to apply plain language to Group 3 terms.

### 4.   *Group 4 terms*

The following terms from the '038 Patent are in dispute:

| Claim(s) | Term | Escort's Proposed Construction | Uniden's Proposed Construction |
|---|---|---|---|
| 30 | "the global positioning system receiver is operable to provide the microprocessor with data that indicates the heading of the radar detector" | A "global positioning system receiver" is a sufficiently definite structure, rendering § 112(6) inapplicable.<br><br>No construction necessary | Means-plus-function element to be construed in accordance with pre-AIA 35 U.S.C. § 112, ¶6.<br><br>Function: "the global positioning system receiver is operable to provide the microprocessor with the heading of the radar detector."<br><br>Structure: The specification fails to set forth any algorithm or corresponding structure for the claimed function. Claim is indefinite. |

Uniden's § 112(6) argument concerning Group 4 terms fails for the same reasons as its parallel argument concerning Group 3 terms. While Group 3 terms relate to velocity (speed), Group 4 terms relate to heading—that is, the direction of the device. Otherwise, the analysis is the same.

Accordingly, Escort respectfully requests the Court find the Group 4 claims not-indefinite and allow the jury to apply plain language to Group 4 terms.

### 5. *Group 5 terms*

The following terms from the '038 Patent are in dispute:

| Claim(s) | Term | Escort's Proposed Construction | Uniden's Proposed Construction |
|---|---|---|---|
| 49 | "the microprocessor is operable to disable the alert based at least in part upon the signal strength of the incoming radar signal." | A "microprocessor" is a sufficiently definite structure, rendering § 112(6) inapplicable.<br><br>"the microprocessor is capable of not generating an alert based at least in part upon on the incoming radar signal's strength" | Means-plus-function element to be construed in accordance with pre-AIA 35 U.S.C. § 112, ¶6.<br><br>Function: "the microprocessor is operable to disable the alert based at least in part upon the signal strength of the incoming radar signal."<br><br>Structure: The specification fails to set forth any algorithm or corresponding structure for the |

| Claim(s) | Term | Escort's Proposed Construction | Uniden's Proposed Construction |
|---|---|---|---|
| | | | claimed function. Claim is indefinite. |

Uniden asserts that a microprocessor is not a sufficient structure and can be conflated with a general purpose computer. Neither assertion holds water.

Uniden repeats its cherry-picked language from *Mann Found.* that "the structure must be more than a general purpose computer or a microprocessor." *Alfred E. Mann Found. for Scientific Research*, 841 F.3d at 1342. But it does not offer any evidentiary support to support its conclusion that the Group 5 claims recite means-plus-function terms. *Zeroclick,* 891 F.3d at 1007 (Fed. Cir. 2018). In other words, by citing only cases that use the word "means"—*Mann Found.* and *Triton Tech.*—Uniden asks the Court to skirt the analysis and evidence required by the Federal Circuit.

Of course, the use of the term "microprocessor" does not automatically trigger a finding that § 112(6) applies, despite Uniden's implication. For example, in *SyncPoint Imaging, LLC v. Nintendo of Am. Inc.*, Civ. Action No. 2:15-cv-00247-JRG-RSP, 2016 BL 1648, at *20 (E.D. Tex. Jan. 5, 2016), the parties disputed whether "a processor…for processing" was governed by 35 U.S.C. § 112(6). The Court noted that the standard that applied once § 112(6) had been determined to apply could not be used when determining ***whether*** § 112(6) applied in the first place. *Id.* at *22. Or stated more simply, whether § 112(6) applies is its own inquiry. In support, the Court quoted the Federal Circuit:

> *Aristocrat* and related cases hold that, if a patentee has invoked computer-implemented means-plus-function claiming, the corresponding structure in the specification for the computer implemented function must be an algorithm unless a general purpose computer is sufficient for performing the function. . . .
>
> In all these cases, the claims recited the term 'means,' thereby expressly invoking means-plus-function claiming. In addition, the parties in these cases did not dispute on appeal that these claims were drafted in means-plus-function format. Hence, where a claim is not drafted in means-plus-function format, the reasoning in the

*Aristocrat* line of cases does not automatically apply, and an algorithm is therefore not necessarily required. ***The correct inquiry, <u>when 'means' is absent from a limitation,</u> is whether the limitation, read in light of the remaining claim language, specification, prosecution history, and relevant extrinsic evidence, has sufficiently definite structure to a person of ordinary skill in the art***.

*Id.* at \*22-23 (quoting *Apple Inc. v. Motorola, Inc*., 757 F.3d 1286 (Fed. Cir. 2014)), *overruled on other grounds by Williamson v. Citrix Online, LLC*, 792 F.3d 1339 (Fed. Cir. 2015) (en banc) (emphasis added). Applying the correct standard, the Court held that § 112(6) did not apply to "processor." *Id.* at \*24. The court listed three reasons:

1) "'processor' connotes structure" (*Id.*);

2) The claim "recites the objectives and operations of the processor" (*Id.*); and

3) "One of ordinary skill in the art would understand the structural arrangements of the processor from the recited objectives and operations of the processor." (*Id.* at \*24-25).

These three reasons are equally present in this case.

"Microprocessor," as used in the '038 Patent, undoubtedly connotes structure. The claim recites the objectives and operations of the microprocessor—that it is "operable to disable the alert based at least in part upon the signal strength of the incoming radar signal." And one skilled in the art would undoubtedly understand the structural arrangements of the processor from the recited objectives and operations of the processor. Accordingly, as in *SyncPoint Imaging*, § 112(6) does not apply to the Group 5 terms.

Uniden attacks Escort's proposed construction as attempting to broaden the claim (even as Uniden fails to offer its own proposed construction). That was not Escort's intent, nor is it the result. Uniden cites *Graphics Props. Holdings Inc. v. ASUS Computer Int'l, Inc*., Civ. Action No. 12-cv-210-LPS, 2014 BL 270014, (D. Del. Sept. 29, 2014), as though the court therein was construing "operable." It was not, but rather chose to use "operable" instead of "capable" in its construction of the term "adjustment circuit." *Id.* Nowhere did that court imply that "capable" was

broader than "operable;" rather, it merely found that "capable" was ambiguous in the context of "adjustment circuit."

Further, Uniden's reasoning for claiming that "capable" broadens the scope of the claim is that "[operable to] limits the claimed invention to a device that operates by performing the claimed function," while "[capable of] would allow for infringement by a device that could theoretically perform the function even if it never did." Uniden's Opening Claim Construction Brief [Doc. No. 39] at 16. This is without merit. The claim term is "oper**able** to," not "oper**ates** to." Nothing in the plain language of Claim 49 requires the operation to actually occur and, indeed, such a requirement would lead to an absurd result: if the signal strength of the incoming radar signal never met the predetermined criteria for disabling the alert, the claim language would be devoid of meaning.

Escort respectfully submits that "capable of" is easier for the jury to grasp than "operable to," and captures the plain-language meaning of the term without improperly limiting or broadening the scope of the claim. In the alternative, Escort requests that the Court allow the jury to apply plain language to Group 5 terms.

### 6. Group 6 terms

The following terms from the '038 Patent are in dispute:

| Claim(s) | Term | Escort's Proposed Construction | Uniden's Proposed Construction |
|---|---|---|---|
| 50 | "the microprocessor is operable to enable the alert based at least in part upon the signal strength of the incoming radar signal." | A "microprocessor" is a sufficiently definite structure, rendering § 112(6) inapplicable.<br><br>"the microprocessor is capable of generating an alert based at least in part upon the incoming radar signal's strength" | Means-plus-function element to be construed in accordance with pre-AIA 35 U.S.C. § 112, ¶6.<br><br>Function: "the microprocessor is operable to enable the alert based at least in part upon the signal strength of the incoming radar signal."<br><br>Structure: The specification fails to set forth any algorithm or |

| Claim(s) | Term | Escort's Proposed Construction | Uniden's Proposed Construction |
|---|---|---|---|
| | | | corresponding structure for the claimed function. Claim is indefinite. |

Here again, Uniden fails to engage in the required analysis to meet its burden that § 112(6) applies, choosing instead to jump to the conclusion that the use of the word "microprocessor" can operate as a substitute for "means" and presumptively bring the disputed claim terms within the ambit of § 112(6).

As with the Group 5 terms, "microprocessor" undoubtedly connotes structure. The claim recites the objectives and operations of the microprocessor, and one skilled in the art would undoubtedly understand the structural arrangements of the processor from the recited objectives and operations of the processor. Accordingly, as in *SyncPoint Imaging*, § 112(6) does not apply to the Group 6 terms, which are the inverse of Group 5 terms.

Escort again respectfully submits that "capable" is easier for the jury to grasp than "operable," and captures the plain-language meaning of the term without improperly limiting or broadening the scope of the claim. In the alternative, Escort requests that the Court allow the jury to apply plain language to Group 6 terms.

### 7. *Group 7 terms*

The following terms from the '653 Patent are in dispute:

| Claim(s) | Term | Escort's Proposed Construction | Uniden's Proposed Construction |
|---|---|---|---|
| 34, 47 | "performing an act that is unrelated to muting an alert" | No construction necessary | Indefinite |

Uniden's indefiniteness argument is premised on the belief that "unrelated to" is a term "of degree." It implies that the Federal Circuit has held as much, citing *Seattle Box Co. v. Indus. Crating & Packing, Inc.*, 731 F.2d 818, 826 (Fed. Cir. 1984).

As an initial matter, the term at issue in *Seattle Box Co.* was "substantially equal to," not "unrelated to." *Id.* And the Federal Circuit ***rejected*** the argument that the claim was indefinite under the correct standard:

> Definiteness problems often arise when words of degree are used in a claim. That some claim language may not be precise, however, does not automatically render a claim invalid. When a word of degree is used the district court must determine whether the patent's specification provides some standard for measuring that degree. ***The trial court must decide, that is, whether one of ordinary skill in the art would understand what is claimed when the claim is read in light of the specification***.

*Id.* (emphasis added).

More importantly, terms of degree are not ***inherently*** indefinite, despite Uniden's implication. *Interval Licensing LLC v. AOL Inc.*, 766 F.3d 1364, 1370 (Fed. Cir. 2014). "Claim language employing terms of degree has long been found definite where it provided enough certainty to one of skill in the art when read in the context of the invention." *Id.* Indeed, as discussed above with respect to the incorrectness of requiring determinations of location to be "established conclusively," the specification shared by the '038 Patent and the '653 Patent speaks of degrees of precision without creating any uncertainty for a skilled artisan.

Uniden has not met its burden to prove by clear and convincing evidence that the term "unrelated to muting an alert" is indefinite. This is not a claim term that "depends on the unpredictable vagaries of any one person's opinion." *Id.* at 1371 (quotation omitted). Rather, those skilled in the art understand exactly what "muting an alert entails," and they undoubtedly understand the range of radar detector actions that are ***not*** muting an alert. *See* '653 Patent, Col. 3,

l. 67 – Col. 4, l. 7. One skilled in that art would thus understand that "performing an act that is unrelated to muting an alert" is limited to the radar detector's actions other than muting the alert.

Accordingly, Escort respectfully requests the Court find the Group 7 terms not-indefinite and allow the jury to apply plain language to Group 7 terms.

### 8. *Group 8 terms*

The following terms from the '679 Patent are in dispute:

| Claim(s) | Term | Escort's Proposed Construction | Uniden's Proposed Construction |
|---|---|---|---|
| 1 | "warning suppression mode" | No construction necessary | "mode in which audible and visual warnings are disabled" |
| 1 | "suppress" / "suppression" | No construction necessary | "disable" / "disabling" |

In equating "suppress" with "disable" and "suppression" with "disabling" and reading in a limitation that ***both*** audible and visual warnings must be disabled, Uniden repeats its blunder of cherry-picking language from the specification while ignoring the parts that contradict its proposed construction.

As an initial matter, Uniden has not adequately explained why "suppress" and "suppression" need construction. In lieu of a cogent explanation, Uniden merely cites *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351 (Fed. Cir. 2008), for the proposition that the Court must construe any claim for which a party purports to dispute its scope. That, of course, is a misreading of *O2 Micro Int'l*. The Court certainly can and should "distinguish *bona fide* infringement arguments from those masquerading as claim construction disputes." *NobelBiz, Inc. v. Glob. Connect, LLC*, 876 F.3d 1326, 1328 (Fed. Cir. 2017) (O'Malley, J., dissenting).

In this case, Uniden's construction is just such a masquerade. "Suppress" and "suppression" are indisputably common terms that are used consistently with their common

meanings in the '679 Patent. There is simply no reason to replace one common term with another common term. *Pagemelding, Inc. v. Feeva Tech., Inc.*, No. C 08-03484 CRB, 2009 BL 362219, at *10 (N.D. Cal. Aug. 19, 2009) ("'for' is non-technical, is in plain English, and derives no special meaning from the Patent. The ordinary meaning of the term speaks for itself, and the Court will avoid paraphrasing the language."). This is especially true when Uniden's goal is to limit the scope of the claim in a manner inconsistent with the intrinsic evidence.

For example, Uniden cites the teaching that suppression is "so that [the warnings] are not disturbing to the operator of the vehicle." '679 Patent, Col. 18, ll. 16-18. But it then twists this teaching as requiring complete disabling when, in fact, this very language teaches reducing the warning to a level that does not disturb the operator—something that can be accomplished without disabling.

Uniden also improperly focuses on the negative limitations in an included flowchart (Fig. 6F) to require the same treatment for audio and visual warnings collectively. These references only teach what happens when the radar detector is not in warning suppression mode, and do not teach any specific actions that occur during warning suppression mode. Again, Uniden "has committed the cardinal sin of importing limitations from the specification into the claims." *SecurityProfiling, LLC,* 2018 BL 347127, at *4. That is, while Uniden can find some examples of suppressing both audio and visual warnings, there are other examples that Uniden ignores in which audible and visual outputs may be treated differently, such as:

- the '679 Patent distinguishes audible warnings in describing the "'warning suppression' mode in which warnings, ***particularly audible warnings***, produced by the radar detector are suppressed so that they are not disturbing to the operator of the vehicle." '679 Patent, Col. 18, ll. 15-18; and

- the '679 Patent teaches "a 'minimal visual lockout' mode, in which the flag database of FIG. 5 is updated to suppress ***most or all visual warnings*** of radar signals at the current location of the vehicle." '679 Patent, Col. 18, ll. 57-60.

Uniden cannot cling to certain examples in the specification to make its argument that the claim should be limited when other examples indisputably prove that audible and visual warnings may be treated differently.

Escort's Opening Claim Construction Brief fully briefed why "suppress" and "suppression" need no construction. Accordingly, Escort respectfully requests that the Court decline construction of Group 8 terms.

### 9. Group 9 terms

The following terms from the '679 Patent are in dispute:

| Claim(s) | Term | Escort's Proposed Construction | Uniden's Proposed Construction |
|---|---|---|---|
| 28 | "speed determining circuit" | "a circuit for determining speed of a device" | "a circuit distinct from the position determining circuit for determining a speed of a device" |

The crux of the parties' dispute over Group 9 terms is whether two circuits must be explained to the jury as being "distinct," or whether the plain language of the '679 Patent requires them to be.

As an initial matter, the parties agree that for the '679 Patent, "*position* determining circuit" means "a circuit for determining a *position* of a device." Joint Claim Construction and Prehearing Statement [Doc. No. 36] at 1. Escort respectfully proposes that parallel language is least likely to confuse the jury. That is, if a "*position* determining circuit" means "a circuit for determining a *position* of a device," then a "*speed* determining circuit" means "a circuit for determining a *speed* of a device." It is easy to explain to a jury that these two circuits are different elements without defining them inconsistently.

Uniden cites *Becton, Dickinson & Co. v. Tyco Healthcare Grp., LP*, 616 F.3d 1249, 1254 (Fed. Cir. 2010), for the proposition that "[w]here a claim lists elements separately, 'the clear implication of the claim language' is that those elements are 'distinct component[s]' of the

patented invention." (quoting *Gaus v. Conair Corp.*, 363 F.3d 1284, 1288 (Fed. Cir. 2004)). But that is only true when the intrinsic record supports such a finding. When the specification "does not suggest that the claim terms require separate structures," it is improper to read in such a limitation. *Powell v. Home Depot U.S.A., Inc.*, 663 F.3d 1221, 1232 (Fed. Cir. 2011).

The problem with Uniden's proposed construction is that it could imply that the two circuits must be ***physically*** distinct, such as on separate chips or even separate devices. Nothing in the '679 Patent supports this interpretation. *NTP, Inc. v. Research in Motion, Ltd.*, 418 F.3d 1282 (Fed. Cir. 2005), is instructive. In that case, the issue was whether the claims "required that the RF receiver be distinct and separable from the destination processor." *Id.* at 1309. The Federal Circuit rejected this limitation as unsupported by the claim language. *See also Retractable Techs., Inc. v. Becton, Dickinson & Co.*, 653 F.3d 1296, 1303 (Fed. Cir. 2011) ("The claims and the specifications indicate that the 'needle holder' and 'retainer member' need not be separately molded pieces."); *Powell,* 663 F.3d at 1231 ("the disclosure in the specification cuts against Home Depot's argument that the 'cutting box' and 'dust collection structure' must be separate components for purposes of the infringement analysis.").

While the "***position*** determining circuit" and the "***speed*** determining circuit" are distinct claim elements, anyone of ordinary skill in the art would know that they can be on the same component or chip. For example, the '679 Patent teaches multiple circuits are in a GPS receiver, '679 Patent, Col. 5, ll. 47-48, and position determination and speed determination circuits may be located on the same device—e.g. the GPS receiver in the radar detector or a vehicle's onboard electronics. '679 Patent, Col. 16, ll. 1-22. Uniden's proposed construction would cause confusion and improperly limit the claims.

Escort thus respectfully requests that the Court adopt its construction of Group 9 terms.

### *10. Group 10 terms*

The following terms from the '679 Patent are in dispute:

| Claim(s) | Term | Escort's Proposed Construction | Uniden's Proposed Construction |
|---|---|---|---|
| 31 | "[vehicle speed information is presented on said display] in conjunction with the provision of an alert by the alert section" | No construction is necessary. | "as a visible warning of the alert by the alert section" |

Uniden essentially argues that this language means that speed is displayed only when an alert is provided. Its argument is unsupported by the '679 Patent, as explained in Escort's Opening Claim Construction Brief.

Once again, Uniden improperly focuses on one example in the specification, ignoring language that conflicts with its position. In fact, Uniden omits from its opening brief wording in the '679 Patent that teaches an option to display speed as a visual warning *or* to display the speed continuously:

> It should be noted that a visual warning could be in the form of the current vehicle speed, which may more accurately display the vehicle speed than the vehicles on board speedometer. **Alternatively, a "display speed" mode could be entered to continuously display the vehicle's speed, as elaborated below.**

'679 Patent, Col. 13, ll. 27-32. Note that the alternative for a continuous "display speed" mode that Uniden omitted *immediately follows* the sentence it uses to argue that the speed display *is* the warning. This is little wonder: it directly contradicts Uniden's proposed construction.

Perhaps to deflect attention away from its own willful blindness with regard to the patent's language, Uniden accuses Escort of asserting that the claim is met when speed is displayed without an alert. That is not, and has never been, Escort's position. Rather, Escort takes what should be the

uncontroversial position that the claim means what it says: the speed is displayed during the provision of an alert. Whereas Uniden's definition limits what is displayed prior to or after the alert—i.e. speed cannot be displayed—Escort's position is that the claim language is directed to what is displayed at the time of the alert and silent with regard to what is displayed prior to or after the alert. As such, it is improper to impose the limitations that Uniden contrives.

Finally, Uniden is incorrect that Escort's position "reads out" any phrases. To the contrary, Escort's position is that no construction is necessary—it literally cannot read in or read out phrases because the words would not change. In contrast, Uniden's construction would do just that.

Escort thus respectfully requests that the Court decline construction of Group 10 terms.

## III.    CONCLUSION

Escort respectfully requests that the Court enter an Order adopting Escort's proposed constructions for the following claim terms:

| Claim(s)of the '038 Patent | Term | Construction |
|---|---|---|
| 19, 21, 31, 33, 34, 41, 42 | "program storage device that is coupled to the microprocessor" | "memory device containing machine-readable instructions that is capable of interacting with the microprocessor" |
| 35, 36, 38 | "memory device that is coupled to the microprocessor" | "memory device that is capable of interacting with the microprocessor" |
| 49 | "the microprocessor is operable to disable the alert based at least in part upon the signal strength of the incoming radar signal." | "the microprocessor is capable of not generating an alert based at least in part upon on the incoming radar signal's strength" |
| 50 | "the microprocessor is operable to enable the alert based at least in part upon the signal strength of the incoming radar signal." | "the microprocessor is capable of generating an alert based at least in part upon the incoming radar signal's strength" |

| Claim(s)of the '679 Patent | Term | Construction |
|---|---|---|
| 28 | "speed determining circuit" | "a circuit for determining speed of a device" |

Escort further requests that the Court allow all other claim terms to go to the jury without construction.

Dated: November 30, 2018

Respectfully submitted,

/s/ Megan M. O'Laughlin
Megan M. O'Laughlin (TX24013263)
E-Mail: molaughlin@hitchcockevert.com
John T. Tower (TX24045362)
E-Mail: jtower@hitchcockevert.com
Kristen M. Zahnow (TX24102678)
E-Mail: kzahnow@hitchcockevert.com
HITCHCOCK EVERT LLP
750 North St. Paul Street, Suite 1110
Dallas, TX 75201
Telephone: (214) 953-1111
Facsimile: (214) 953-1121

COUNSEL FOR PLAINTIFF

## CERTIFICATE OF SERVICE

On November 30, 2018, I electronically submitted the foregoing document with the clerk of court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court. I hereby certify that I have served all counsel and /or pro se parties of record electronically or by another manner authorized by Federal Rule of Civil Procedure 5(b)(2).

/s/ Megan M. O'Laughlin
Megan M. O'Laughlin