## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | |
|---|---|
| ESCORT INC.,<br><br>Plaintiff,<br><br>v.<br><br>UNIDEN AMERICA CORPORATION,<br><br>Defendant. | CASE NO. 3:18-cv-161-N<br><br>PATENT CASE<br><br>JURY TRIAL DEMANDED |

## UNIDEN'S RESPONSIVE CLAIM CONSTRUCTION BRIEF

# TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................. 1

II.    DISPUTED TERMS ............................................................................. 2

    A.    The Term "Memory Device" Requires Construction and the Term "Coupled To" Requires a Functional Relationship between the Program Storage / Memory Device and the Microprocessor .................................. 2

        1.   Uniden's construction of "[memory] / [program storage] device" corresponds to how the applicant described his purported invention ...... 2

        2.   Escort's construction fails to account for the fact that "coupled to" in the claim terms requires a functional relationship between the storage devices and the microprocessor ................................................................. 4

    B.    The Term "[Determines] / [Determining]" is Indefinite Because the Applicant Used That Term in a Conflicting and Contradictory Manner ... 6

    C.    Claim 29 is Indefinite: The "global positioning system receiver" Requires Other Undisclosed Algorithms Not Intrinsic to the GPS Receiver In Order To Perform the Recited Function .............................................................. 9

    D.    Claim 30 is Indefinite: The "global positioning system receiver" Requires Other Undisclosed Algorithms Not Intrinsic to the GPS Receiver In Order To Perform the Recited Function ............................................................ 11

    E.    Claim 49 is Indefinite: The "microprocessor" is a General Purpose Processor and No Algorithm is disclosed to perform its Recited Function .................................................................................................................... 11

    F.    Claim 50 is Indefinite: The "microprocessor" is a General Purpose Processor and No Algorithm is disclosed to perform its Recited Function .................................................................................................................... 14

    G.    Claims 34 and 47 are Indefinite: The Patent lacks any Standard for Measuring at What Point an Act Goes from "unrelated" to "related" ...... 15

    H.    The Applicants Made Clear That "Suppress / Suppression" Means "Disable / Disabling" in Claim 1 ................................................................. 16

    I.    The "speed determining circuit" is Distinct from the "position determining circuit" ................................................................................. 19

    J.    Claim 31 Requires that "[vehicle speed information is presented on said display]" as the Alert Itself ...................................................................... 20

III.    CONCLUSION ................................................................................... 23

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Alfred E. Mann Found. for Sci. Research v. Cochlear Corp.*,
    841 F.3d 1334 (Fed. Cir. 2016) ........................................................... *passim*

*Astrazeneca AB, Aktiebolaget Hassle, KBI-E, Inc. v. Mut. Pharm. Co.*,
    384 F.3d 1333 (Fed. Cir. 2004) ...................................................................... 4

*Becton, Dickinson & Co. v. Tyco Healthcare Grp., LP*,
    616 F.3d 1249 (Fed. Cir. 2010) .................................................................... 20

*Biosonix, LLC v. Hyrdrowave, LLC*,
    230 F. Supp. 3d 598 (E.D. Tex. 2017) ..................................................... 2, 3

*Eli Lilly & Co. v. Aradigm Corp.*,
    376 F.3d 1352 (Fed. Cir. 2004) ..................................................................... 8

*Gen. Am. Transp. Corp. v. Cryo−Trans, Inc.*,
    93 F.3d 766 (Fed. Cir. 1996) ...................................................................... 22

*Graphics Props. Holdings, Inc. v. ASUS Computer Int'l*,
    No. 12-cv-210, 2014 WL 4929340 (D. Del. Sept. 29, 2014)........................13

*Markman v. Westview Instruments, Inc.*,
    517 U.S. 370 (1996) .................................................................................... 16

*Merck & Co., Inc. v. Teva Pharmaceuticals USA, Inc.*,
    395 F.3d 1364 (Fed. Cir. 2005) ................................................................... 23

*Nautilus, Inc. v. BioSig Instruments, Inc.*,
    134 S. Ct. 2120 (2014)........................................................................... 8, 16

*O2Micro Int'l Ltd. v. Beyond Innovation Tech. Co., Ltd.*,
    521 F.3d 1351 (Fed. Cir. 2008) ..................................................................... 2

*Ex parte Oetiker*,
    1991 WL 354859, 23 U.S.P.Q.2d 1641 (Bd. Pat. App. & Inter. 1991) ..........................15

*In re Power Integrations*,
    884 F.3d 1370 (Fed. Cir. 2018)............................................................. 4, 5, 6

*Rambus Inc. v. Hynix Semiconductor Inc.*,
    569 F. Supp. 2d 946 (N.D. Cal. 2008)...................................................... 3, 4

*Seattle Box Co., Inc. v. Industrial Crating & Packing, Inc.,*
  731 F.2d 818 (Fed. Cir. 1984) ....................................................................15

*Triton Tech. of Texas, LLC v. Nintendo of Am., Inc.,*
  753 F.3d 1375 (Fed. Cir. 2014)............................................................10, 13

*United Carbon Co. v. Binney & Smith Co.,*
  317 U.S. 228 (1942).................................................................................. 16

*Williamson v. Citrix Online, LLC,*
  792 F.3d 1339 (Fed. Cir. 2015) .................................................................12

**Statutes**

35 U.S.C. § 112, ¶ 2.................................................................................*passim*

35 U.S.C. § 112, ¶ 6.................................................................................*passim*

## I.      INTRODUCTION

Escort's opening claim construction brief does not change the conclusion that the 10 terms or phrases in asserted claims 19, 21, 29, 30, 31, 33, 34, 35, 36, 38, 41, 42, 49, and 50 of U.S. Patent No. RE39,038 (the "'038 Patent"), claims 22, 34, 38, and 47 of U.S. Patent No. RE40,653 (the "'653 Patent"), and claims 1, 28, and 31 of U.S. Patent No. 7,576,679 (the "'679 Patent") (collectively, the "Patents-in-Suit") should be construed as Uniden contends below and in its opening brief.

In particular, Escort misstates case law in its analysis of certain terms (e.g., "memory device"), while ignoring relevant case law in its analysis of others (e.g., "coupled to"). It also ignores that the patents' use of certain terms (e.g., "determines") in a contradictory and conflicting manner renders those terms indefinite. In other cases, Escort fails to apply applicable case law to the means-plus-function terms, which requires disclosure of sufficient structure (i.e., a specific algorithm) when the component at issue is defined as a general purpose processor or computer (i.e., the "microprocessor"), or when other unspecified algorithms that are not intrinsic to the component (i.e., "the GPS receiver") are required to perform the recited function. Moreover, some of Escort's constructions are altogether contrary to the disclosures in the patents (e.g., "suppress"). Accepting Escort's constructions would violate basic claim construction tenets, confuse the jury, and allow for overly broad infringement accusations where none should exist.

A proper analysis of the disputed terms confirms that Uniden's constructions are correct because they are consistent with both the intrinsic and extrinsic evidence and relevant case law. Uniden thus requests that the Court adopt Uniden's claim constructions.

1

## II.     DISPUTED TERMS

### A.     The Term "Memory Device" Requires Construction and the Term "Coupled To" Requires a Functional Relationship between the Program Storage / Memory Device and the Microprocessor

| Patent | Claim(s) | Claim Term | Plaintiff's Proposed Construction | Uniden's Proposed Construction |
|--------|----------|------------|-----------------------------------|--------------------------------|
| '038 | 19, 21, 31, 33, 34, 41, 42 | "program storage device that is coupled to the microprocessor" | "memory device containing machine-readable instructions that is capable of interacting with the microprocessor" | "a conventional memory device such as a PROM, EPROM, EEPROM, ROM, SRAM, or battery backed up DRAM that is connected to, but accessible only by, the microprocessor" |
| '038 | 35, 36, 38 | "memory device that is coupled to the microprocessor" | "memory device that is capable of interacting with the microprocessor" | "a conventional memory device such as a PROM, EPROM, EEPROM, ROM, SRAM, or battery backed up DRAM that is connected to, but accessible only by, the microprocessor" |

*1.     Uniden's construction of "[memory] / [program storage] device" corresponds to how the applicant described his purported invention*

The Court should adopt Uniden's constructions of program storage / memory device because they correspond to the applicant's definition of those terms in the specification, and contrary to Escort's assertion, Uniden's constructions do not narrow the terms' meaning. Moreover, as there is a dispute over the meaning of the term "memory device," Escort's contention that the Court need not construe it lacks merit, *see O2Micro Int'l Ltd. v. Beyond Innovation Tech. Co., Ltd.*, 521 F.3d 1351, 1362 (Fed. Cir. 2008), and the cases upon which it relies are easily distinguished.

Initially, Escort cites *Biosonix, LLC v. Hyrdrowave, LLC*, 230 F. Supp. 3d 598, 605 (E.D. Tex. 2017) for the premise that "memory device" is well-understood, "and

2

courts have found no reason to construe it." Dkt. No. 37 at 6. But the term "memory device" was not disputed in *Biosonix*. Instead, the parties disputed the construction of the term "programmable control unit," which was comprised of at least three elements: a processor, a memory device, and an input device. *Biosonix*, 230 F. Supp. 3d at 605. While the terms "memory device" and "input device" were "described in some detail within the claim [] itself," the claim simply recited "a processor." *Id.* The court noted that neither party "raised any question or dispute over the meaning of 'processor,' which is a well-known term in the field of electronics." *Id.* Notably, the court did not make the same comment about the "memory device." Moreover, the dispute regarding the construction of "programmable control unit" centered on "the degree of user configuration of, and/or required input around the *input device*." *Id.* (emphasis added). In other words, Escort's statement regarding the court's "willingness" to construe the term "memory device" in *Biosonix* is incorrect.

And while Escort contends that courts are generally unwilling to construe "memory device," it relies on *Rambus Inc. v. Hynix Semiconductor Inc.*, 569 F. Supp. 2d 946, 973 (N.D. Cal. 2008), a case which that did just that. However, Escort misstates the premise of the dispute in *Rambus*. In particular, the parties disputed whether the term "memory device" should incorporate the definition of "an integrated circuit device," which would include a single chip limitation. *Id.* The plaintiff argued that it should and pointed to various disclosures in the specification that supported the argument that a "memory device" is a single chip. *Id.* In particular, the court noted that the plaintiff's references "show that a DRAM, SRAM or ROM *may* be a memory device." *Id.* (emphasis added). The court concluded, however, that nothing in the specification "clearly limit[ed] the scope of the [memory device] to a single chip." *Id.*

3

In this case, the applicant told us that the program storage / memory device components are "any conventional memory device such as a PROM, EPROM, EEPROM, ROM, SRAM or even battery backed up DRAM" that is "coupled to" or "integrated within" the microprocessor. '038 Patent, 2:63-3:1; *id.*, 3:62-67. Uniden's construction is thus consistent with the specification and how the applicant described his purported invention. *See Astrazeneca AB, Aktiebolaget Hassle, KBI-E, Inc. v. Mut. Pharm. Co.*, 384 F.3d 1333, 1340 (Fed. Cir. 2004) ("[W]hile it is of course improper to limit the claims to the particular preferred embodiments described in the specification, the patentee's choice of preferred embodiments can shed light on the intended scope of the claims."); *In re Power Integrations, Inc.*, 884 F.3d 1370, 1377 (Fed. Cir. 2018) ("a proper claim construction analysis endeavors to assign a meaning to a disputed claim term 'that corresponds with . . . how the inventor describes his invention in the specification") (citation omitted). And, because the applicant used non-restricting terms like "such as," which are incorporated in Uniden's construction, the terms are not impermissibly narrowed as Escort contends. *Rambus* is thus inapposite.

> 2.    *Escort's construction fails to account for the fact that "coupled to" in the claim terms requires a functional relationship between the storage devices and the microprocessor*

Escort's contention that "coupled to" is equivalent to "capable of" lacks merit and should be rejected. Indeed, Escort ignores that the Federal Circuit recently provided clear guidance on the meaning of "coupled to" as it is used in Escort's claims in *Power Integrations*, which rejected the same "generalist" approach that Escort takes in its opening brief. In that case, Power Integrations appealed the remand decision of the Patent and Trial Appeal Board ("PTAB") that rejected certain claims as anticipated. *Power Integrations*, 884 F.3d at 1371. The Federal Circuit reversed because the PTAB

4

had based its rejections on an "unreasonably broad claim construction" of "coupled to."
*Id.* In particular, the PTAB's construction was based "exclusively on a definition from
Webster's Dictionary" to mean only that the two components need to be joined to a
single circuit in order to "function together," but, like Escort does here, the PTAB
impermissibly ignored that the claim language and specification required "a specific
control relationship" between the two components. *Id.* at 1375-76. The PTAB's
construction further rendered the claim language "the digital to analog converter [is]
coupled to the counter" superfluous, and it was contrary to every embodiment in the
patent which depicted the components as being directly connected. *Id.* at 1376-77. The
Federal Circuit thus affirmed the district court's earlier construction of "coupled to,"
which required the two components "to be connected in a manner 'such that voltage,
current or control signals pass from one to another.'" *Id.* at 1372, 1379.

Escort's construction requires only that the two components be joined to the
same circuit. But like the claims in *Power Integrations*, claims 19, 21, 31, 33, 34, 35, 36,
38, 41, and 42 of the '038 Patent require the program storage / memory device to be
"coupled to" or "integrated within" the microprocessor in order to "function together."
'038 Patent, 8:4-5 ("a program storage device that is coupled to the microprocessor");
*id.*, 3:62-67 (noting that data alternatively could be stored in "another memory device
(not shown [in Fig. 1]) [that is] coupled to or integrated within the microprocessor").
Escort's construction renders the claim language "coupled to" superfluous, *Power
Integrations*, 884 F.3d at 1376-77, impermissibly broadens the scope of the claim, and
ignores that the machine-readable instructions that are stored on the program storage
device are described only in the context of the microprocessor and the functions it can
perform. '038 Patent, 3:33-37 (describing that the program storage device may contain

machine readable instructions that "**command the microprocessor**" to perform certain functions) (emphasis added). Moreover, Escort's construction ignores the applicant's disclosure in Figure 1, which confirms that the microprocessor directly accesses the program storage device rather than vaguely "interacting" via any number of intervening processors.

As the applicant disclosed in the patent, there must be, as is reflected in Uniden's construction, a *specific* "functional relationship" between the program storage / memory device and the microprocessor. *See Power Integrations*, 884 F.3d at 1375-76. The Court should therefore construe both the phrase "memory device that is coupled to the microprocessor" and the phrase "program storage device that is coupled to the microprocessor" as "a conventional memory device such as a PROM, EPROM, EEPROM, ROM, SRAM, or battery backed up DRAM that is connected to, but accessible only by, the microprocessor."

### B. The Term "[Determines] / [Determining]" is Indefinite Because the Applicant Used That Term in a Conflicting and Contradictory Manner

| Patent | Claim(s) | Claim Term | Plaintiff's Proposed Construction | Uniden's Proposed Construction |
|--------|----------|------------|-----------------------------------|--------------------------------|
| '038 | 19 | "determining the position of a radar detector" | No construction necessary. | Indefinite or, in the alternative:<br><br>"establishing conclusively the position of a radar detector" |
| '038 | 21 | "determining the velocity of the device" | No construction necessary. | Indefinite, or in the alternative:<br><br>"establishing conclusively the speed of a radar detector"<br><br>The step of "determining the velocity of the device [utilized to detect the incoming radar |

| | | | | signal]" occurs after the incoming radar signal is detected and before "generating an alert . . ." |
|---|---|---|---|---|
| '038 | 33 | "determining the distance between the position of the radar detector and another position" | No construction necessary. | Indefinite, or in the alternative:<br><br>"establishing conclusively the distance between the position of the radar detector and another position" |
| '038 | 34 | "determining the bearing between the position of the radar detector and another position" | No construction necessary. | Indefinite, or in the alternative:<br><br>"establishing conclusively the heading between the position of the radar detector and another position" |
| '653 | 22, 38 | "[determining] / [determines] a [first] / [second] position of the radar detector" | No construction necessary | Indefinite, or in the alternative:<br><br>"establishing conclusively the position of a radar detector" |

Escort's opening brief misses the point with respect to these terms. The issue is not whether "[p]eople understand with reasonable certainty what 'determining the location' means in the given context." Dkt. No. 37 at 11. Instead, the issue is that the applicant used the terms "determines" and "receives" in a conflicting and contradicting manner such that the claims fail to inform, with reasonable certainty, to those skilled in the art about the scope of the purported invention. In particular, the claims make clear that certain components "determine" information, but other components "receive" that information. The two terms are used differently for different purposes when establishing whether the claims are infringed. But there is no teaching in the patent that defines, with reasonable certainty, the distinction between undetermined, "determined," and "received."

7

For example, in some cases, **the GPS receiver** "determin[es]" the position of the radar detector, and the microprocessor "receiv[es]" the data from the GPS receiver. *See, e.g.*, '653 Patent, cls. 22, 38. In other cases, the claims require the program storage device to contain machine readable instructions for "*determining* the position of a radar detector," '038 Patent, cl. 19, "*determining* the velocity of the device," *id.*, cl. 21, "*determining* the distance between the position of the radar detector and another position," *id.*, cl. 33, and "*determining* the bearing between the position of the radar detector and another position," *id.*, cl. 34 (emphasis added). Because the program storage device commands the microprocessor, this claim appears to require that **the microprocessor** (and not the GPS receiver) "*determine[s]*" the position, velocity, or distance based on the data that is "provided" to the microprocessor by the GPS receiver.

The applicant did not take care to define the distinction between the terms "determining" and "receiving" and, in some cases, used the terms in a contradictory manner. In other words, the claims fail to inform, with reasonable certainty, to those skilled in the art about the scope of the purported invention. *Nautilus, Inc. v. Biosig Instruments, Inc.*, 134 S. Ct. 2120, 2124 (2014). The terms are thus indefinite under § 112, ¶ 2.

If the Court disagrees, it should nevertheless reject Escort's contention that no construction of these terms is needed. Construction is necessary because "the meaning or scope of technical terms and words of art are unclear and in dispute." *See Eli Lilly & Co. v. Aradigm Corp.*, 376 F.3d 1352, 1360 (Fed. Cir. 2004) (citation omitted). Uniden's proposed construction of "determining" to mean "establishing conclusively" is consistent with both the Random House Webster's College Dictionary definition ("settle or resolve (a dispute, question, etc.) by an authoritative or conclusive decision") and The

8

Oxford American College Dictionary definition ("ascertain or establish exactly, typically as a result of research or calculation").[1] *See* Dkt. No. 39 at 11, Exs. 1-2.

In sum, to the extent the Court does not agree that these terms are indefinite, both the intrinsic and extrinsic evidence support Uniden's proposed constructions.

### C.   Claim 29 is Indefinite: The "global positioning system receiver" Requires Other Undisclosed Algorithms Not Intrinsic to the GPS Receiver In Order To Perform the Recited Function

| Patent | Claim(s) | Claim Term | Plaintiff's Proposed Construction | Uniden's Proposed Construction |
|---|---|---|---|---|
| '038 | 29 | "the global positioning system receiver is operable to provide the microprocessor with data that indicates the velocity of the radar detector" | A "global positioning system receiver" is a sufficiently definite structure, rendering § 112(6) inapplicable.<br><br>No construction necessary | Means-plus-function element to be construed in accordance with pre-AIA 35 U.S.C. § 112, ¶ 6.<br><br>Function: "the global positioning system receiver is operable to provide the microprocessor with the speed of the radar detector"<br><br>Structure: Indefinite |

Escort is incorrect when it claims that the GPS receiver in claim 29 of the '038 Patent is a sufficiently definite structure to perform the recited function merely because a GPS receiver "has a well-understood meaning." Dkt. No. 37 at 15. The specification confirms that "operable to provide the microprocessor with the speed of the radar detector" is not an ordinary function of a GPS receiver. For example, the specification indicates that the GPS receiver provides the processor microprocessor the speed data

_____

[1] It is further consistent with Escort's construction of the term to mean "quantitatively calculating, concluding, ascertaining, or fixing" that it proposed in the *Fleming v. Escort* matter. *See, e.g., Fleming v. Escort Inc. et al.*, 1:09-cv-105 (D. Idaho) (Dkt. No. 37 at 7).

using "conventional algorithms" separate and apart from the ordinary function of the GPS receiver structure at the time of patenting. '038 Patent, 3:21-24 ("By calculating the position of the GPS receiver at two different times, the velocity and heading of the GPS receiver can be easily determined using conventional algorithms."). Thus, the GPS receiver in claim 29 is not the same as a GPS receiver that has a "well-understood meaning" to those skilled in the art.

Because the specification suggests that other unspecified algorithms not intrinsic to a GPS receiver are needed to perform the recited function, claim 29 is subject to § 112, ¶ 6 and thus requires disclosure of a specific algorithm. *See Alfred E. Mann Found. for Sci. Research v. Cochlear Corp.*, 841 F.3d 1334, 1342 (Fed. Cir. 2016). By merely stating that "conventional algorithms" are used, a person of ordinary skill in the art would not recognize the patent as disclosing any particular algorithm for how the GPS receiver provides the microprocessor with speed data, let alone data that indicates the velocity of the radar detector. Because no specific algorithm is disclosed to support the recited function, the claim is indefinite. *See Triton Tech. of Texas, LLC v. Nintendo of Am., Inc.*, 753 F.3d 1375, 1379 (Fed. Cir. 2014) ("Although a person of skill in the art might be able to choose an appropriate numerical integration algorithm and program it onto a microprocessor, the [p]atent discloses no algorithm at all.") (alteration in original); *see also Mann Found.*, 841 F.3d at 1344 (affirming district court's indefiniteness finding where no algorithm was disclosed).

The Court should hold claim 29 as indefinite under § 112, ¶ 2 because the patent specification is void of any structure to provide the microprocessor with the speed of the radar detector as required by § 112, ¶ 6.

10

**D.    Claim 30 is Indefinite: The "global positioning system receiver" Requires Other Undisclosed Algorithms Not Intrinsic to the GPS Receiver In Order To Perform the Recited Function**

| Patent | Claim(s) | Claim Term | Plaintiff's Proposed Construction | Uniden's Proposed Construction |
|--------|----------|------------|-----------------------------------|--------------------------------|
| '038 | 30 | "the global positioning system receiver is operable to provide the microprocessor with data that indicates the heading of the radar detector" | A "global positioning system receiver" is a sufficiently definite structure, rendering § 112(6) inapplicable.<br><br>No construction necessary | Means-plus-function element to be construed in accordance with pre-AIA 35 U.S.C. § 112, ¶ 6.<br><br><u>Function</u>: "the global positioning system receiver is operable to provide the microprocessor with the heading of the radar detector"<br><br><u>Structure</u>: Indefinite |

As explained above, the specification suggests that other unspecified algorithms not intrinsic to a GPS receiver are needed to perform the function "operable to provide the microprocessor with data that indicates the heading of the radar detector." Because the recited function is not an ordinary function of a GPS receiver, the claim is subject to § 112, ¶ 6. The Court should hold claim 30 as indefinite under § 112, ¶ 2 because the patent specification is void of any specific algorithm to provide the microprocessor with the heading of the radar detector as required by § 112, ¶ 6.

**E.    Claim 49 is Indefinite: The "microprocessor" is a General Purpose Processor and No Algorithm is disclosed to perform its Recited Function**

| Patent | Claim(s) | Claim Term | Plaintiff's Proposed Construction | Uniden's Proposed Construction |
|--------|----------|------------|-----------------------------------|--------------------------------|
| '038 | 49 | "the microprocessor is operable to disable the alert | A "microprocessor" is a sufficiently definite structure, | Means-plus-function element to be construed in accordance with pre-AIA 35 U.S.C. § 112, ¶ 6. |

| | | based at least in part upon the signal strength of the incoming radar signal" | rendering § 112(6) inapplicable. <br><br> "the microprocessor is capable of not generating an alert based at least in part on the incoming radar signal's strength" | <u>Function</u>: "the microprocessor is operable to disable the alert based at least in part upon the signal strength of the incoming radar signal" <br><br> <u>Structure</u>: Indefinite |
|---|---|---|---|---|

Contrary to Escort's contention, a "microprocessor" is not sufficient structure to support the recited function to "disable the alert based at least in part upon the signal strength of the incoming radar signal." This is true regardless of whether a "microprocessor" has "a well-understood meaning used by those skilled in the art." Dkt. No. 37 at 21; *see also Williamson v. Citrix Online, LLC*, 792 F.3d 1339, 1351 (Fed. Cir. 2015) ("But the fact that one of skill in the art could program a computer to perform the recited functions cannot create structure where none otherwise is disclosed.").

The microprocessor is described in the specification as a general purpose microprocessor. '038 patent, 2:63-65 ("any conventional single or multiple chip microprocessor or digital signal processor"). And it is settled law that in cases involving a computer-implemented invention, "the structure must be more than a general purpose computer or a microprocessor" and thus requires disclosure of an algorithm. *See Mann Found.*, 841 F.3d at 1342. But nothing in the '038 Patent's specification discloses any algorithm—let alone any explanation—as to how the microprocessor should disable the alert based at least in part upon the signal strength of the incoming radar signal.

Escort relies on a passage from the specification that indicates that the program storage device "may be conventionally programmed to sweep a predetermined number of radar frequency bands and, if the signal strength of the detected radar signals exceed

a predetermined value, then **generate** a signal that activates the alert circuit." '038

Patent, 3:4-10 (emphasis added). But the "conventional programming" is applicable to

the program storage device, not the microprocessor. Moreover, Escort's passage is

altogether void of any *algorithm* to show how the alert is **disabled**. *See Mann Found.*,

841 F.3d at 1342 ("An 'algorithm' is a step-by-step procedure for accomplishing a given

result, and may be expressed in any understandable terms including as a mathematical

formula, in prose, or as a flow chart, or in any other manner that provides sufficient

structure.") (quotation omitted).

In either case, a person of ordinary skill in the art would not recognize the patent

as disclosing any algorithm for the recited function. *Aristocrat Techs. Australia Pty Ltd.*

*v. Int'l Game Tech.*, 521 F.3d 1328, 1338 (Fed. Cir. 2008) (affirming judgment of

indefiniteness and noting that "the patent does not disclose the required algorithm or

algorithms, and a person of ordinary skill in the art would not recognize the patent as

disclosing any algorithm at all"). Because no algorithm is disclosed to support the

recited function, the claim is indefinite. *See Triton Tech.,* 753 F.3d at 1379 ("Although a

person of skill in the art might be able to choose an appropriate numerical integration

algorithm and program it onto a microprocessor, the [p]atent discloses no algorithm at

all.") (alteration in original); *see also Mann Found.*, 841 F.3d at 1344 (affirming district

court's indefiniteness finding where no algorithm was disclosed).

Moreover, Plaintiff's "straightforward" proposed construction of "operable to" to

mean "capable of" would allow for infringement by a device that could theoretically

perform the function even if it never did. In contrast, "operable to" properly ensures that

the claimed invention is limited to a device that operates by performing the claimed

function. Escort's construction should thus be rejected because it impermissibly

13

attempts to broaden the language of the claim. *See, e.g., Graphics Props. Holdings, Inc. v. ASUS Computer Int'l*, No. 12-cv-210, 2014 WL 4929340, at \*20 (D. Del. Sept. 29, 2014) (rejecting argument that "operable to" produce reference voltages is equivalent to "capable of" doing so because, among other things, the proposed construction "introduces some ambiguity").

The Court should hold claim 49 of the '038 Patent as indefinite under § 112, ¶ 2 because the patent specification is void of any algorithm or structure to disable the alert based at least in part upon the signal strength of the incoming radar signal as required by § 112, ¶ 6.

**F.   Claim 50 is Indefinite: The "microprocessor" is a General Purpose Processor and No Algorithm is disclosed to perform its Recited Function**

| Patent | Claim(s) | Claim Term | Plaintiff's Proposed Construction | Uniden's Proposed Construction |
|---|---|---|---|---|
| '038 | 50 | "the microprocessor is operable to enable the alert based at least in part upon the signal strength of the incoming radar signal" | A "microprocessor" is a sufficiently definite structure, rendering § 112(6) inapplicable.<br><br>"the microprocessor is capable of generating an alert based at least in part on the incoming radar signal's strength" | Means-plus-function element to be construed in accordance with pre-AIA 35 U.S.C. § 112, ¶ 6.<br><br>Function: "the microprocessor is operable to enable the alert based at least in part upon the signal strength of the incoming radar signal"<br><br>Structure: Indefinite |

For the same reasons as above, the microprocessor is not sufficient structure for performing the claimed function, and thus the limitation is subject to § 112, 6. No algorithm for performing the recited function is disclosed. The Court should hold claim 50 of the '038 Patent as indefinite under § 112, ¶ 2 because the patent specification is

14

void of any algorithm or structure to enable the alert based at least in part upon the

signal strength of the incoming radar signal as required by § 112, ¶ 6. Moreover,

Plaintiff's proposed construction tries to expand the plain language of the claim to

capture devices even if they were to never operate by performing the claimed function.

### G. Claims 34 and 47 are Indefinite: The Patent lacks any Standard for Measuring at What Point an Act Goes from "unrelated" to "related"

| Patent | Claim(s) | Claim Term | Plaintiff's Proposed Construction | Uniden's Proposed Construction |
|--------|----------|------------|-----------------------------------|--------------------------------|
| '653 | 34, 47 | "performing an act that is unrelated to muting an alert" | No construction necessary | Indefinite |

According to Escort, no construction of the term "performing an act that is

unrelated to muting an alert" in claims 34 and 47 of the '653 Patent is needed because a

person skilled in the art would understand with reasonable certainty "that it is limited to

the radar detector's actions other than muting the alert." Dkt. No. 37 at 23. Not so.

The limitation "unrelated to" is a subjective term with no objective basis for

determining when an act is "related to" muting as opposed to "unrelated to." Indeed,

Escort fails to acknowledge that when a claim uses words of degree, like "unrelated to,"

"the district court must determine whether the patent's specification provides some

standard for measuring that degree." *Seattle Box Co., Inc. v. Industrial Crating &*

*Packing, Inc.*, 731 F.2d 818, 826 (Fed. Cir. 1984); *see also Ex parte Oetiker*, 1991 WL

354859, 23 U.S.P.Q.2d 1641, 1644 (Bd. Pat. App. & Inter. 1991) (holding phrases

"relatively shallow," "of the order of," "the order of about 5mm," and "substantial

portion" indefinite because the specification lacked some standard for measuring the

degrees intended). Here, it does not. Indeed, other than in the claims, the '653 Patent's

specification fails to mention the word "unrelated" and thus, leaves a "zone of uncertainty" regarding its meaning. *Nautilus*, 572 U.S. at 899 (quoting *United Carbon Co. v. Binney & Smith Co.*, 317 U.S. 228, 236 (1942).

Because it does not "apprise the public of what is still open to them" and, instead, lacks any standard for measuring at what point an act goes from "unrelated" to "related," the term "performing an act that is unrelated to muting an alert" is thus indefinite under § 112, ¶ 2. *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 373 (1996).

### H.   The Applicants Made Clear That "Suppress / Suppression" Means "Disable / Disabling" in Claim 1

| Patent | Claim(s) | Claim Term | Plaintiff's Proposed Construction | Uniden's Proposed Construction |
|--------|----------|------------|-----------------------------------|--------------------------------|
| '679 | 1 | "warning suppression mode" | No construction necessary | "mode in which audible and visual warnings are disabled" |
| '679 | 1 | "suppress" / "suppression" | No construction necessary | "disable" / "disabling" |

In its opening brief, Escort contends that "suppress" still allows within its scope warning (e.g., generating an alert) but less than 100% (e.g., a slightly softer warning). To find support for its construction, Escort points to the "minimal visual lockout" mode described in the patent as "suppress[ing] most or all visual warnings." '679 Patent, 18:57-60. But, as shown in Figure 6F below, the "minimal visual lockout" mode is irrelevant to this claim construction analysis because it is separate and apart from the "warning suppression" mode recited in claim 1:

FIG. 6F



As shown above, a "minimal visual response" is generated in step 294 if it is determined in step 292 that the "minimal visual" flag is set, but an audible and visual response is only generated in step 288 "if not in 'warning suppression' mode." *Id.*, Fig. 6F. Claim 1 makes no mention of the "minimal visual lockout" mode and thus Escort's reliance on that functionality is misplaced.

17

Escort also ignores that the specification itself makes clear that, in the "warning suppression" mode, warnings are not just "reduc[ed] to a level that does not disturb the operator," but are actually disabled. For example, when the vehicle operator enters the "warning suppression mode," the "***detector does not continue to issue warning signals*** for the same radar signals received." *Id*., 22:34-38 (emphasis added). On the other hand, the specification states that, if it is determined that the receiver is not in warning suppression mode, "then an audible and visual response is ***generated*** for the band of signals including the selected frequency block." *Id*., 25:9-12 (emphasis added). Further, "[i]f the 'always warn' flag is set for the current cell, then in step 288 an audible and visual response is generated for all frequencies identified by the received, unless suppressed by 'warning suppression mode.'" *Id*., 25:27-30. And the specification confirms that when the detector enters the warning suppression mode, "***no warning signals will be generated*** so long as the vehicle is not traveling faster than the threshold speed identified by the operator during 'everyday route velocity' training of the detector." *Id*., 26:41-49 (emphasis added); *see also id*., Fig. 6F (confirming in steps 284 and 288 that audible and visual warning are not generated in warning suppression mode).

And Escort is incorrect that the "plain meaning" of suppress allows for a slightly softer alert. Rather, the Dictionary of Computing definition of "suppress" means to "prevent the output or sensing of selected data or signals," Dictionary of Computing, 4th Ed., Dkt. No. 39 (Ex. 3), which is also consistent with the way the applicants defined their purported invention.  Moreover, the disclosures in the specification confirm that the applicants intended the term "warning suppression mode" to mean "mode in which

18

[both] audible and visual warnings are disabled." The Court should thus adopt Uniden's constructions.

### I.   The "speed determining circuit" is Distinct from the "position determining circuit"

| Patent | Claim(s) | Claim Term | Plaintiff's Proposed Construction | Uniden's Proposed Construction |
|---|---|---|---|---|
| '679 | 28 | "speed determining circuit" | "a circuit for determining speed of a device" | "a circuit distinct from the position determining circuit for determining a speed of a device" |

In its opening brief, Escort asks the Court to adopt its construction of "speed determining circuit" because it is "simple" and "straightforward." Regardless of its "simplicity," Escort's construction must be rejected because it is contrary to the intrinsic evidence and established Federal Circuit law.

First, Escort is wrong when it states that there is "no support" in the '679 Patent that the speed determining circuit is distinct from the position determining circuit. Dkt. No. 37 at 27. The applicants expressly distinguished between separate embodiments in which (1) the GPS determines both speed and location and (2) the GPS determines location, but the speed is obtained through a separate interface, such as an ODB II interface. *See, e.g.*, '679 Patent, Fig. 2 (showing the OBD II interface 44 and the GPS receiver 32 as separate components); *see also id.*, Fig. 6B (showing that the speed is calculated in step 131 ***after*** the GPS signal is processed in step 108); *id.*, 16:19-13 ("vehicle speed may also be obtained from the vehicle itself via an OBD II interface 44 if the vehicle in which the GPS enabled radar detector is installed has a suitable OBD connector for delivering vehicle speed information"). Indeed, Escort ignores that the claim language itself recites two separate and distinct components: a "speed

19

determining" circuit, and a "position determining" circuit. By doing so, the applicants made clear that claim 28 is directed to the embodiment in which the position is received from the GPS receiver and the speed is received from a separate interface, like the OBD II interface 44 depicted in Figure 2.

Second, in addition to being inconsistent with the claim language and disclosures in the specification, Escort's construction, which permits the possibility that the speed determining circuit and the position determining circuit are one and the same, is inconsistent with Federal Circuit law, which requires that both claimed elements must be given effect. *Becton, Dickinson & Co. v. Tyco Healthcare Grp., LP*, 616 F.3d 1249, 1254 (Fed. Cir. 2010) ("Where a claim lists elements separately, 'the clear implication of the claim language' is that those elements are 'distinct component[s]' of the patented invention.").

Because Uniden's proposed construction is consistent with both Federal Circuit law and the intrinsic record, the Court should thus construe "speed determining circuit" as "a circuit distinct from the position determining circuit for determining a speed of a device."

### J.   Claim 31 Requires that "[vehicle speed information is presented on said display]" as the Alert Itself

| Patent | Claim(s) | Claim Term | Plaintiff's Proposed Construction | Uniden's Proposed Construction |
|---|---|---|---|---|
| '679 | 31 | "[vehicle speed information is presented on said display] in conjunction with the provision of an alert by the alert section" | No construction necessary | "as a visible warning of the alert by the alert section" |

Escort's contention that this limitation is met by a device that always displays vehicle speed whether or not there is an alert, rather than one that displays the speed *as the alert itself*, lacks merit because, *inter alia*, it is inconsistent with settled claim construction principles and with the express disclosures in the specification.

First, Escort's proposed construction is inconsistent with the intrinsic evidence, which distinguishes between "an appropriate audible or visible response" and the "display speed" mode, which continuously displays the current speed. In particular, the '679 Patent's specification discloses that a "visual warning could be in the form of the current vehicle speed." '679 Patent, 13:27-30. But the "'display speed' mode . . . [continuously displays] . . . the vehicles current speed," *id.*, 19:3-4, regardless of whether there is "an alert by the alert section," *id.*, cl. 31; *see also id.*, 13:30-32 ("Alternatively, a 'display speed' mode could be entered to continuously display the vehicle's speed . . . ."). And Figure 6B shows that, if the "display speed" mode is enabled in 129, speed is displayed in 131 regardless of whether a radar signal is detected in 140:



FIG. 6B

Second, Escort's construction impermissibly renders superfluous the phrase "in conjunction with the provision of an alert by the alert section." *Gen. Am. Transp. Corp. v. Cryo–Trans, Inc.*, 93 F.3d 766, 770 (Fed. Cir. 1996) (rejecting the district court's claim construction because it rendered superfluous the claim requirement for openings adjacent to the end walls). In other words, if, as Escort contends, the language was

intended to cover the "display speed" mode, in which the vehicle's current speed is continuously displayed regardless of the provision of an alert, '679 Patent, 19:3-4, there would be no reason for the remainder of the language in the phrase (i.e., "in conjunction with the provision of an alert by the alert section"). Escort's construction is thus incorrect as a matter of law. *Merck & Co. v. Teva Pharm. USA, Inc.*,395 F.3d 1364, 1372 (Fed.Cir.2005) ("A claim construction that gives meaning to all the terms of the claim is preferred over one that does not do so.").

As both the claim language and the intrinsic evidence confirm, claim 31's "vehicle speed information" is presented on said display "as a visible warning of the alert by the alert section." The Court should thus adopt Uniden's construction of this term.

## III.   CONCLUSION

For the reasons articulated above, the Court should adopt Uniden's proposed constructions for the 10 terms at issue.

Dated:  November 30, 2018                    Respectfully submitted,

                                             **FISH & RICHARDSON P.C.**


                                             By:   */s/ David B. Conrad*
                                                   Neil J. McNabnay
                                                   mcnabnay@fr.com
                                                   Texas Bar No. 24002583
                                                   David B. Conrad
                                                   conrad@fr.com
                                                   Texas Bar No. 24049042
                                                   Theresa M. Dawson
                                                   tdawson@fr.com
                                                   Texas Bar No. 24065128

                                                   1717 Main Street, Suite 5000
                                                   Dallas, Texas  75201
                                                   (214) 747-5070 - Telephone
                                                   (214) 747-2091 - Facsimile

                                             **COUNSEL FOR DEFENDANT
                                             UNIDEN AMERICA CORPORATION**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served on November 30, 2018, to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system per Local Rule CV 5-1(d).

*/s/ David B. Conrad*
David B. Conrad

25