# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | |
|---|---|
| **ESCORT INC.,** | |
| **Plaintiff,** | **CASE NO 3:18-cv-161-N** |
| **v.** | **PATENT CASE** |
| **UNIDEN AMERICA CORPORATION,** | **JURY TRIAL DEMANDED** |
| **Defendant.** | |

### APPENDIX IN SUPPORT OF UNIDEN'S REPLY IN SUPPORT OF ITS MOTION TO STAY LITIGATION PENDING INTER PARTIES REVIEW OF THE PATENT-IN-SUIT

| Document | Appendix Page No. |
|---|---|
| **Declaration of David B. Conrad** | **APP. 003-004** |
| **Exhibit A** | **APP. 005-010** |
| **Exhibit B** | **APP. 011-014** |
| **Exhibit C** | **APP. 015-045** |

- 1 -

Dated: March 29, 2019                          Respectfully submitted,

                                               By:  */s/ David B. Conrad*
                                                    Neil J. McNabnay
                                                    njm@fr.com
                                                    Texas Bar No. 24002583
                                                    David B. Conrad
                                                    conrad@fr.com
                                                    Texas Bar No. 24049042
                                                    Theresa M. Dawson
                                                    tdawson@fr.com
                                                    Texas Bar No. 24065128
                                                    Noel F. Chakkalakal
                                                    chakkalakal@fr.com
                                                    Texas Bar No. 24053676

                                                    FISH & RICHARDSON P.C.
                                                    1717 Main Street, Suite 5000
                                                    Dallas, TX 75201
                                                    (214) 747-5070 (Telephone)
                                                    (214) 747-2091 (Facsimile)

                                               **ATTORNEYS FOR DEFENDANT
                                               UNIDEN CORPORATION**

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served on March 29, 2019, to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system.

                                               */s/ David B. Conrad*
                                               David B. Conrad

APP. 002

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | |
|---|---|
| **ESCORT INC.,** | |
| **Plaintiff,** | **CASE NO 3:18-cv-161-N** |
| **v.** | **PATENT CASE** |
| **UNIDEN AMERICA CORPORATION,** | **JURY TRIAL DEMANDED** |
| **Defendant.** | |

## <u>DECLARATION OF DAVID B. CONRAD</u>

Pursuant to 28 U.S.C. § 1746, I, David B. Conrad, declare that:

1.      I am over 18 years of age and am legally competent to testify on the matters contained in this declaration.

2.      I am counsel of record for Defendant Uniden America Corporation in this matter.

3.      Attached hereto as Ex. A, is a true and correct copy of the Patent Trial and Appeal Board's Notice of Filing Date Accorded to Petition, dated March 18, 2019, regarding case IPR2019-00724 and Patent 7,576,679.

4.      Attached hereto as Ex. B, is a true and correct copy of an excerpt of Interrogatory No. 8 from Defendant Uniden America Corporation's Objections and Responses to the Plaintiff's First Set of Interrogatories (Nos. 1-12).

5.      Attached hereto as Ex. C, is a true and correct copy of Plaintiff's Response in Opposition to Defendants' Motion to Stay Litigation Pending *Inter Partes* Review filed March 10, 2014 in *Invensys Sys., Inc. v. Emerson Elec. Co., et al.*, No. 6:12-cv-799, 2014 WL 4477393 (E.D. Tex. July 25, 2014).

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.  Executed at Dallas, Texas this 29th day of March 2019.

Executed on March 29, 2019                    */s/ David B. Conrad*
                                              David B. Conrad

2

# EXHIBIT A

Trials@uspto.gov                                              Paper No. 3
571-272-7822

UNITED STATES PATENT AND TRADEMARK OFFICE
_____

BEFORE THE PATENT TRIAL AND APPEAL BOARD
_____

UNIDEN AMERICA CORPORATION,
Petitioner,

v.

ESCORT INC.,
Patent Owner.
_____

Case IPR2019-00724
Patent 7,576,679
_____

Mailed:  03/18/2019


Before JAMILAH SULTAN, *Trial Paralegal*


NOTICE OF FILING DATE ACCORDED TO PETITION
AND
TIME FOR FILING PATENT OWNER PRELIMINARY RESPONSE


The petition for *inter partes* review, filed in the above proceeding has been accorded the filing date of 02/28/2019.

Patent Owner may file a preliminary response to the petition no later than three months from the date of this notice.  The preliminary response is limited to setting forth the reasons why the requested review should not be instituted.  Patent Owner may also file an election to waive the preliminary

Case IPR2019-00724
Patent No. 7,576,679

response to expedite the proceeding.  For more information, please consult
the Office Patent Trial Practice Guide, 77 Fed. Reg. 48756 (Aug. 14, 2012),
which is available on the Board Web site at http://www.uspto.gov/PTAB.

Patent Owner is advised of the requirement to submit mandatory
notice information under 37 C.F.R. § 42.8(a)(2) within 21 days of service of
the petition.

The parties are encouraged to use the heading on the first page of this
Notice for all future filings in the proceeding.

The parties are advised that under 37 C.F.R. § 42.10(c), recognition of
counsel *pro hac vice* requires a showing of good cause.  The parties are
authorized to file motions for *pro hac vice* admission under 37 C.F.R.
§ 42.10(c).  Such motions shall be filed in accordance with the "Order --
Authorizing Motion *for Pro Hac Vice* Admission" in Case IPR2013-00639,
Paper 7, a copy of which is available on the Board Web site under
"Representative Orders, Decisions, and Notices."

The parties are reminded that unless otherwise permitted by 37 C.F.R.
§ 42.6(b)(2), all filings in this proceeding must be made electronically in
Patent Trial and Appeal Board End to End (PTAB E2E), accessible from the
Board Web site at http://www.uspto.gov/PTAB.  To file documents, users
must register with PTAB E2E.  Information regarding how to register with
and use PTAB E2E is available at the Board Web site.

If there are any questions pertaining to this notice, please contact
Jamilah Sultan at 571-270-5927 or the Patent Trial and Appeal Board at
571-272-7822.

APP. 007

Case IPR2019-00724
Patent No. 7,576,679

PETITIONER:

David Conrad
Dan Smith
Fish & Richardson P.C.
conrad@fr.com
dsmith@fr.com


PATENT OWNER:

HITCHCOCK EVERT LLP
P.O. BOX 131709
DALLAS TX 75313-1709

3

Case IPR2019-00724
Patent No. 7,576,679

## NOTICE CONCERNING ALTERNATIVE DISPUTE RESOLUTION (ADR)

The Patent Trial and Appeal Board (PTAB) strongly encourages parties who are considering settlement to consider alternative dispute resolution as a means of settling the issues that may be raised in an AIA trial proceeding. Many AIA trials are settled prior to a Final Written Decision. Those considering settlement may wish to consider alternative dispute resolution techniques early in a proceeding to produce a quicker, mutually agreeable resolution of a dispute or to at least narrow the scope of matters in dispute. Alternative dispute resolution has the potential to save parties time and money.

Many non-profit organizations, both inside and outside the intellectual property field, offer alternative dispute resolution services. Listed below are the names and addresses of several such organizations. The listings are provided for the convenience of parties involved in cases before the PTAB; the PTAB does not sponsor or endorse any particular organization's alternative dispute resolution services. In addition, consideration may be given to utilizing independent alternative dispute resolution firms. Such firms may be located through a standard keyword Internet search.

| CPR INSTITUTE FOR DISPUTE RESOLUTION | AMERICAN INTELLECTUAL PROPERTY LAW ASSOCIATION (AIPLA) | AMERICAN ARBITRATION ASSOCIATION (AAA) | WORLD INTELLECTUAL PROPERTY ORGANIZATION (WIPO) | AMERICAN BAR ASSOCIATION (ABA) |
|---|---|---|---|---|
| Telephone: (212) 949-6490 | Telephone: (703) 415-0780 | Telephone: (212) 484-3266 | Telephone: 41 22 338 9111 | Telephone : (202) 662-1000 |
| Fax: (212) 949-8859 | Fax: (703) 415-0786 | Fax: (212) 307-4387 | Fax: 41 22 733 5428 | N/A |
| 575 Lexington Ave | 241 18th Street, South, Suite 700 | 140 West 51st Street | 34, chemin des Colombettes | 1050 Connecticut Ave, NW |
| New York, NY 10022 | Arlington, VA 22202 | New York, NY 10020 | CH-1211 Geneva 20, Switzerland | Washington D.C. 20036 |
| www.cpradr.org | www.aipla.org | www.adr.org | www.wipo.int | www.americanbar.org |

If parties to an AIA trial proceeding consider using alternative dispute resolution, the PTAB would like to know whether the parties ultimately decided to engage in alternative dispute resolution and the reasons why or why not. If the parties actually engage in alternative dispute resolution, the PTAB would be interested to learn what mechanism (e.g., arbitration,

4

Case IPR2019-00724
Patent No. 7,576,679

mediation, etc.) was used and the general result.  Such a statement from the parties is not required but would be helpful to the PTAB in assessing the value of alternative dispute resolution to parties involved in AIA trial proceedings.  To report an experience with ADR, please forward a summary of the particulars to the following email address: PTAB_ADR_Comments@uspto.gov

# EXHIBIT B

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | |
|---|---|
| **ESCORT INC.,** | **CASE NO. 3:18-cv-161-N** |
| **Plaintiff,** | |
| *v.* | **PATENT CASE** |
| **UNIDEN AMERICA CORPORATION,** | **JURY TRIAL DEMANDED** |
| **Defendant.** | |

### DEFENDANT UNIDEN AMERICA CORPORATION'S OBJECTIONS AND RESPONSES TO PLAINTIFF'S FIRST SET OF INTERROGATORIES (Nos. 1-12)

Defendant Uniden America Corporation ("Uniden") hereby timely serves its objections and responses to the First Set of Interrogatories ("Interrogatories") to Uniden propounded by Plaintiff Escort, Inc. ("Plaintiff" or "Escort") as follows:

### RESERVATIONS OF RIGHTS

Investigation and discovery are ongoing in this case. Uniden responds to the Interrogatories without prejudice to Uniden's right to supplement its responses. Uniden also reserves the right to produce or use any information or documents that are discovered after service of this response in support of or in opposition to any motion, in depositions, or at trial. In responding to the Interrogatories, Uniden does not waive any objections on the grounds of privilege, competency, relevance, materiality, authenticity, or admissibility of the information contained herein. Uniden expressly reserves the right to use any of these responses or the subject matter contained in them during any subsequent proceeding, including the trial of this or any other action.

## RESPONSE TO INTERROGATORY NO. 7:

In addition to Uniden's General Objections, Uniden objects to Interrogatory No. 7 on the basis that it has multiple subparts, and as vague, ambiguous, particularly with the phrases "all," "any," and "other development," overbroad, unduly burdensome, and seeking information not reasonably calculated to lead to the discovery of admissible evidence. Uniden further objects to this interrogatory as seeking discovery disproportionate to the needs of the case. Uniden also objects to this interrogatory to the extent that it seeks confidential third-party information, documents, and/or communications that Uniden does not have permission to disclose. Uniden further objects to Interrogatory No. 7 because Plaintiff's definition of "Accused Products" is vague, overbroad, and incomplete.

To the extent that Uniden understands Interrogatory No. 7, subject to and without waiving the foregoing Objections, Uniden responds as follows:

Uniden further states that, in accordance with Rule 33(d) of the Federal Rules of Civil Procedure, Uniden identifies the following document(s) from which responsive information to this Interrogatory may be derived: UNIDEN_0001670 - UNIDEN_0001688.

Uniden's investigation is ongoing, and Uniden therefore reserves the right to supplement and amend its response based on additional information obtained through discovery or other means and as appropriate in response to the Court's legal determination of issues.

## INTERROGATORY NO. 8:

List the date(s) on which each Accused Products was designed and commercially implemented.

## RESPONSE TO INTERROGATORY NO. 8:

In addition to Uniden's General Objections, Uniden objects to Interrogatory No. 8 as overbroad, unduly burdensome, and seeking information not reasonably calculated to lead to the

discovery of admissible evidence. Uniden further objects to this interrogatory as seeking

discovery disproportionate to the needs of the case. Uniden further objects to Interrogatory No. 8

because Plaintiff's definition of "Accused Products" is vague, overbroad, and incomplete.

To the extent that Uniden understands Interrogatory No. 8, subject to and without

waiving the foregoing Objections, Uniden responds as follows:

| Accused Product | Designed | Commercially Available |
|---|---|---|
| R3 Extreme Long Range Radar/Laser Detector | 06/25/2015 | 05/26/2017 |
| DFR7 Long Range Radar/Laser Detector | 12/24/2015 | 06/02/2016 |
| LRD950 Long Range Radar/Laser Detector | 03/21/2014 | 12/24/2014 |

Uniden's investigation is ongoing, and Uniden therefore reserves the right to supplement

and amend its response based on additional information obtained through discovery or other

means and as appropriate in response to the Court's legal determination of issues.

## INTERROGATORY NO. 9:

Identify the date Defendant first learned of each of the patents-in-suit, state with
specificity how Defendant first learned of each of the patents-in-suit, and identify all actions
taken by Defendant as a result of learning of each of the patents-in-suit, including, but not
limited to, all changes made to the Accused Product as a result of learning of any of the patents-
in-suit.

## RESPONSE TO INTERROGATORY NO. 9:

In addition to Uniden's General Objections, Uniden objects to Interrogatory No. 9 on the

basis that it has multiple subparts, and as vague, ambiguous, overbroad, unduly burdensome, and

seeking information not reasonably calculated to lead to the discovery of admissible evidence

because, among other things, it is not limited to the Relevant Time Period. Uniden further objects

to this interrogatory as seeking discovery disproportionate to the needs of the case. Uniden also

objects to this interrogatory to the extent that it seeks the disclosure of legal conclusions and calls

# EXHIBIT C

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## TYLER DIVISION

| | | |
|---|---|---|
| **INVENSYS SYSTEMS, INC.,** | § | |
| | § | |
| **Plaintiff,** | § | **C.A. No. 6:12-cv-00799-LED** |
| **v.** | § | |
| | § | |
| **EMERSON ELECTRIC CO. and** | § | |
| **MICRO MOTION INC.,** | § | |
| | § | |
| **Defendants,** | § | |
| **and** | § | |
| | § | |
| **MICRO MOTION INC.,** | § | |
| | § | |
| **Counterclaim-Plaintiff,** | § | |
| **v.** | § | |
| | § | |
| **INVENSYS SYSTEMS, INC.,** | § | |
| | § | |
| **Counterclaim-Defendant.** | § | |

## PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS'
## MOTION TO STAY LITIGATION PENDING *INTER PARTES* REVIEW

## <u>TABLE OF CONTENTS</u>

**Page(s)**

I.     INTRODUCTION ................................................................................ 1

II.    BACKGROUND ................................................................................. 2

III.   LEGAL STANDARD........................................................................... 3

IV.    ARGUMENT ...................................................................................... 3

       A.    Defendants' Motion Is Both Premature And Late, And Was Brought In
             The Exact Circumstances Where A Stay Is Inappropriate.................................... 3

       B.    Application of Soverain Factors ...................................................................... 7

             1.    *A Stay Would Unduly Prejudice Invensys, And Give Defendants An
                   Unfair Tactical Advantage* ........................................................................ 7

                   a.    The Parties Are Direct Competitors And A Stay Would
                         Unduly Prejudice Invensys' Efforts To Enforce Its Patent
                         Rights ........................................................................................ 7

                   b.    Defendants' Argument Relating To A Preliminary
                         Injunction Lacks Merit.................................................................. 9

             2.    *Staying Litigation Pending The Petitions For IPR Would Not
                   Simplify The Issues Before This Court* .................................................... 11

                   a.    It Is Far Too Speculative To Assume That Micro Motion's
                         IPRs Will Have Any Effect On The Issues For Trial .................. 11

                   b.    There Are No Efficiencies To Be Gained By Staying This
                         Litigation.................................................................................. 13

             3.    *A Stay Is Inappropriate Given The Advanced Stage Of The Case*........... 14

V.     CONCLUSION................................................................................... 15

i

APP. 017

# TABLE OF AUTHORITIES

**Page(s)**

Cases

*ADA Solutions, Inc. v. Engineered Plastics, Inc.*,
    826 F. Supp. 2d 348 (D. Mass. 2011) ...................................................................8

*Am. Vehicular Scis. LLC v. Toyota Motor Corp.*,
    No. 12-cv-404, slip op. (E.D. Tex. Jan. 7, 2014) ................................................3, 4

*Automatic Mfg. Sys., Inc. v. Primera Tech., Inc.*,
    No. 12-cv-1727, slip op. (M.D. Fla. May 13, 2013) ...............................................5

*Avago Techs. Fiber IP (Singapore) Pte. Ltd. v. IPtronics Inc.*,
    No. 10-cv-2863, 2011 WL 3267768 (N.D. Cal. July 28, 2011) ..............................8

*BarTex Research, L.L.C. v. FedEx Corp.*,
    611 F. Supp. 2d 647 (E.D. Tex. 2009) ...............................................................3, 8

*Blue Calypso, Inc. v. Groupon, Inc.*,
    No. 12-cv-486, slip op. (E.D. Tex. July 19, 2013) ..................................................4

*Cooper Notification, Inc. v. Twitter, Inc.*,
    No. 09-cv-865, 2010 WL 5149351 (D. Del. Dec. 13, 2010) ....................................8

*Dane Techs., Inc. v. Gatekeeper Sys., Inc.*,
    No. 12-cv-2730, 2013 WL 4483355 (D. Minn. Aug. 20, 2013) ...............................4

*Davol, Inc. v. Atrium Med. Corp.*,
    No. 12-cv-958, 2013 WL 3013343 (D. Del. June 17, 2013) ...............................4, 8

*Derma Scis., Inc. v. Manukamed Ltd.*,
    No. 12-cv-3388, slip op. (D.N.J. July 17, 2013) ....................................................4

*eBay Inc. v. MercExchange L.L.C.*,
    547 U.S. 388 (2006) ............................................................................................10

*Eon Corp. IP Holdings, LLC v. Skytel Corp.*,
    No. 08-cv-385, 2009 WL 8590963 (E.D. Tex. Apr. 29, 2009) .................................3

*ESN, LLC v. Cisco Sys., Inc.*,
    No. 08-cv-20, 2008 WL 6722763 (E.D. Tex. Nov. 20, 2008) ..................................3

*Hill-Rom Servs., Inc. v. Stryker Corp.*,
    11-cv-1220, 2012 WL 5878087 (S.D. Ind. Nov. 20, 2012) .....................................9

APP. 018

*ImageVision Net, Inc. v. Internet Payment Exch., Inc.*,
   No. 12-cv-054, 2013 WL 663535 (D. Del. Feb. 25, 2013)........................................8

*Kowalski v. Anova Food, LLC*,
   No. 11-cv-795, slip op. (D. Haw. June 14, 2013) ........................................5

*Landis v. N. Am. Co.*,
   299 U.S. 248 (1936)........................................3

*Lennon Image Techs., LLC v. Lumondi Inc.*,
   No. 13-cv-238, slip op. (E.D. Tex. Jan. 6, 2014) ........................................3, 4

*LML Patent Corp. v. JPMorgan Chase & Co.*,
   No. 08-cv-448, slip op. (E.D. Tex. May 23, 2011 ) ........................................12

*Meyers v. Brooks Shoe, Inc.*,
   912 F.2d 1459 (Fed. Cir. 1990)........................................9

*Nat'l Oilwell Varco, L.P. v. Omron Oilfield & Marine, Inc.*,
   No. 12-cv-773, slip op. (W.D. Tex. June 10, 2013)........................................4

*Nat'l Prods., Inc. v. Gamber–Johnson LLC*,
   No. 12-cv-840, 2012 WL 3527938 ........................................8

*Nidec Corp. v. LG Innotek Co., Ltd.*,
   No. 07-cv-108, 2009 WL 3673433 (E.D. Tex. Apr. 3, 2009)........................................15

*One StockDuq Holdings, LLC v. Becton, Dickinson & Co.*,
   No. 12-cv-3037, slip op. (W.D. Tenn. May 6, 2013)........................................5

*PPC Broadband, Inc. v. Corning Gilbert, Inc.*,
   No. 12-cv-911, slip op. (N.D.N.Y. July 16, 2013)........................................4

*Proctor & Gamble Co. v. Team Techs., Inc.*, No. 12-cv-552,
   2013 WL 4830950 (S.D. Ohio Sept. 10, 2013) ........................................4

*ROY-G-BIV Corp. v. FANUC Ltd.*,
   No. 07-cv-418, 2009 WL 1080854 (E.D. Tex. Apr. 14, 2009)........................................3, 15

*SenoRx, Inc. v. Hologic, Inc.*,
   No. 12-cv-173, 2013 WL 144255 (D. Del. Jan. 11, 2013) ........................................8

*Soverain Software, L.L.C. v. Amazon.com, Inc.*,
   356 F. Supp. 2d 660 (E.D. Tex. 2005)........................................ passim

*Sunbeam Prods. v. Hamilton Beach Brands, Inc.*,
   No. 09-cv-791, 2010 WL 1946262 (E.D. Va. May 10, 2010)........................................7

APP. 019

*Tesco Corp. v. Weatherford Int'l, Inc.*,
   599 F. Supp. 2d 848 (S.D. Tex. 2009) ..................................................................................8

*Trustees of Boston Univ. v. Everlight Elecs. Co., Ltd.*,
   No. 12-cv-11935, slip op. (D. Mass. July 11, 2013)................................................................4

*Unifi Scientific Batteries, LLC v. Sony Mobile Commc'ns*,
   No. 12-cv-224, slip op. (E.D. Tex. Jan. 14, 2014)....................................................3, 9, 13, 14

*Universal Elecs., Inc. v. Universal Remote Control, Inc.*,
   943 F. Supp. 2d 1028 (C.D. Cal. 2013) ............................................................................9, 10

*VirtualAgility, Inc. v. Salesforce.com, Inc.*,
   No. 13-cv-011, 2014 WL 94371 (E.D. Tex. Jan. 9, 2014) .................................................7, 11

*Warsaw Orthopedic, Inc. v. Nuvasive, Inc.*,
   No. 12-cv-2738, slip op. (S.D. Cal. May 30, 2013)................................................................5

STATUTES

35 U.S.C. §§ 112 ¶¶ (1) and (2) .................................................................................................14

35 U.S.C. § 311(b)......................................................................................................................14

35 U.S.C. § 316(a)(11).................................................................................................................8

OTHER AUTHORITIES

Alston & Bird LLP, *Intellectual Property Advisory: Inter Partes Review—One Year
   Later*, at 7 (Sept. 17, 2013), *available at* http://www.alston.com............................................12

APP. 020

## I.       INTRODUCTION

Defendants want to litigate anywhere but ***here*** and anytime but ***now***.   In Defendants' second motion to stay this lawsuit, Defendants seek to stay this case based upon seven IPRs initiated by Micro Motion on the eve of the statutory deadline and only after the Court denied Defendants' motion to transfer.   In all instances, the United States Patent and Trademark Office ("PTO") has not yet reviewed the petitions for IPR to determine whether or not to accept them for review, and will likely not do so for several months.   Given that the PTO has not yet granted the IPR petitions, Defendants' motion is premature.   As discussed below, numerous courts that have addressed this issue have refused stays sought in favor of IPRs that had been filed but not granted.

Furthermore, all three of the *Soverain* factors militate strongly against granting a stay. The prejudice factor weighs against a stay because the parties are, undeniably, competitors; because *within the past few months* Defendants have released (but, to date, have refused to produce or make available for inspection) a new, potentially infringing digital flowmeter which may entitle Invensys to preliminary injunctive relief; and because a stay could well result in an adjournment of the trial date. The simplification factor weighs against a stay because (among other things) there is no argument for simplification by an IPR that has not even been instituted, because it is far more likely than not that the USPTO will deny review of at least some of the nearly 200 claims in the seven patents-in-suit, and because Defendants have asserted other grounds for invalidating Invensys' patents in this Court unrelated to the IPRs.   The procedural posture factor weighs against a stay because this litigation has now been pending for over 16 months, and the parties have expended considerable resources on the case, including (i) the production of over 1.4 million pages of documents in discovery; (ii) the noticing of more than 15 depositions scheduled to commence this month; (iii) the service of detailed infringement and

invalidity contentions, and (iv) the preparation and filing of extensive *Markman*-related materials

in preparation for the hearing scheduled on May 1, 2014.  *See* pp. 5-6 *infra.*  In this same vein,

the Court has invested a substantial amount of time and resources addressing a slew of motions

filed by Defendants, including the motion to transfer venue, the first motion to stay pending

disposition of the motion to transfer venue, the motion for summary judgment of non-

infringement filed by Emerson, and now this second motion to stay.

In short, all of the *Soverain* factors clearly weigh in favor of this case remaining on track.

Defendants' Motion to Stay should be denied in its entirety.

## II.    BACKGROUND

On October 22, 2012, Invensys filed this case against Micro Motion and Emerson for

infringing United States Patent Nos. 7,124,646 ("the '646 patent"), 7,136,761 ("the

'761 patent"), 6,311,136 ("the '136 patent"), and 7,505,854 ("the '854 patent").   Defendants

were each served on November 20, 2012, and eventually filed answers and a concurrent opposed

motion to transfer on January 10, 2013.   On January 31, 2013, Invensys filed a first amended

complaint, adding claims for infringement of United States Patent Nos. 8,000,906 ("the

'906 patent"), 6,754,594 ("the '594 patent"), and 7,571,062 ("the '062 patent").     On

May 31, 2013, Defendants filed an opposed motion to stay pending the Court's ruling on the

motion to transfer venue.   On September 30, 2013, the Court issued an order denying both

Defendants' motion to transfer and Defendants' first motion for stay.

On November 19, 2013—more than one year after this action was filed and on the last

possible day—Micro Motion filed IPR petitions on the '646, '761, '136, and '854 patents.  Again

at the eleventh hour, on January 29, January 30, and January 31, 2014, Micro Motion filed IPR

petitions on the '906, '594, and '062 patents.  On February 7, 2014, Defendants filed the instant

motion to stay pending IPR.

APP. 022

## III.    LEGAL STANDARD

The decision whether to stay a patent case pending PTO review rests entirely within this Court's discretion.  *Soverain Software, L.L.C. v. Amazon.com, Inc.*, 356 F. Supp. 2d 660, 662 (E.D. Tex. 2005); *see also Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936).   When analyzing whether a stay is warranted, this Court considers:   (1) whether a stay will unduly prejudice or present a clear tactical disadvantage to the nonmoving party; (2) whether a stay will simplify the issues in question and the trial of the case; and (3) whether discovery is complete and a trial date has been set.  *Soverain*, 356 F. Supp. 2d at 662.  Motions to stay are considered on a case-by-case basis, and there exists no policy in this Court to routinely grant such motions.  *BarTex Research, L.L.C. v. FedEx Corp.*, 611 F. Supp. 2d 647, 652 (E.D. Tex. 2009) (noting that "[t]o do so would turn reexamination into an administrative process that must be completed before a suit for patent infringement may move forward" and "use of the reexamination process as a dilatory tactic must be considered").[1]

## IV.    ARGUMENT

### A.    Defendants' Motion Is Both Premature And Late, And Was Brought In The Exact Circumstances Where A Stay Is Inappropriate

Defendants' motion—which was brought more than 15 months into this case and in the midst of claim construction proceedings, but before the PTO has taken any action on the IPR petitions—seeks a stay in the precise circumstances where the law is clear that a stay is

---

[1] *See also, e.g., Unifi Scientific Batteries, LLC v. Sony Mobile Commc'ns AB*, No. 12-cv-224, slip op. at 6-7 (E.D. Tex. Jan. 14, 2014) (denying stay pending IPR where "parties have engaged in substantial discovery, produced documents, answered interrogatories, and served and supplemented infringement and invalidity contentions"); *Am. Vehicular Scis. LLC v. Toyota Motor Corp.*, No. 12-cv-404, slip op. at 2-3 (E.D. Tex. Jan. 7, 2014) (denying request for stay as premature where PTO had not yet determined whether to grant IPR); *Lennon Image Techs., LLC v. Lumondi Inc.*, No. 13-cv-238, slip op. at 4 (E.D. Tex. Jan. 6, 2014) (denying stay as "premature" where IPR had not yet been granted and stay appeared "unlikely to simplify the issues for trial"); *Eon Corp. IP Holdings, LLC v. Skytel Corp.*, No. 08-cv-385, 2009 WL 8590963, at *5 (E.D. Tex. Apr. 29, 2009) (denying stay pending reexamination due to prejudice to patent owner); *ROY-G-BIV Corp. v. FANUC Ltd.*, No. 07-cv-418, 2009 WL 1080854, at *3 (E.D. Tex. Apr. 14, 2009) (concluding "not a single factor weighs in favor of stay" pending reexamination); *ESN, LLC v. Cisco Sys., Inc.*, No. 08-cv-20, 2008 WL 6722763, at *5 (E.D. Tex. Nov. 20, 2008) (denying stay upon finding that unfair prejudice to patent owner outweighed any potential simplification of issues in IPR).

3

inappropriate.

First, a stay is inappropriate because Defendants' motion is premature. Defendants filed the instant motion shortly after Micro Motion filed its last three IPR petitions and, under the statutory period, the PTO may not determine until August 2014 whether or not to accept these petitions. While Defendants would have the Court disregard the fact that the PTO has taken no action with regard to the IPR petitions, it would betray common sense—and the great weight of the authority—to think that the prematurity of Defendants' motion does not weigh against a stay. *Am. Vehicular Scis. LLC*, No. 12-cv-404, slip op. at 2-3 (E.D. Tex. Jan. 7, 2014) (denying request for stay as premature where PTO had not yet determined whether to grant IPR); *Lennon Image Techs., LLC v. Lumondi Inc.*, No. 13-cv-238, slip op. at 4 (E.D. Tex. Jan. 6, 2014) (denying stay as "premature" where IPR had not yet been granted and stay appeared "unlikely to simplify the issues for trial"); *Blue Calypso, Inc. v. Groupon, Inc.*, No. 12-cv-486, slip op. at 4 (E.D. Tex. July 19, 2013) (denying request for stay as premature where PTO had not yet determined whether review was appropriate); *Nat'l Oilwell Varco, L.P. v. Omron Oilfield & Marine, Inc.*, No. 12-cv-773, slip op. at 3 (W.D. Tex. June 10, 2013) (denying without prejudice defendant's motion to stay pending IPR and noting "there is a real risk" PTO could decline review).[2]

---

[2] *Accord Proctor & Gamble Co. v. Team Techs., Inc.*, No. 12-cv-552, 2013 WL 4830950, at *3-4 (S.D. Ohio Sept. 10, 2013) (denying motion to stay as premature where IPR petition was not yet granted)*; Dane Techs., Inc. v. Gatekeeper Sys., Inc.*, No. 12-cv-2730, 2013 WL 4483355, at *2 (D. Minn. Aug. 20, 2013) (denying stay before PTO makes a decision on petition because "Court can only speculate as to whether the PTO will review a patent and to what extent"); *Derma Scis., Inc. v. Manukamed Ltd.*, No. 12-cv-3388, slip op. at 2 (D.N.J. July 17, 2013) (denying request for stay pending IPR without prejudice and noting that Court could "more fully evaluate" merits of stay following PTO's determination whether to grant IPR application)*; PPC Broadband, Inc. v. Corning Gilbert, Inc.*, No. 12-cv-911, slip op. at 2-3 (N.D.N.Y. July 16, 2013) (denying request for stay pending IPR without prejudice to renewal after PTO acted upon recently filed IPR application)*; Trustees of Boston Univ. v. Everlight Elecs. Co., Ltd.*, No. 12-cv-11935, slip op. at 3 (D. Mass. July 11, 2013) (concluding, "Here, however, it is not yet even established that a re-examination of the '738 patent will be undertaken by the PTO. Therefore, it would be premature for the Court to analyze this potential reexamination as cause for a stay under the factors set forth above.") (emphasis in original); *Davol, Inc. v. Atrium Med. Corp.*, No. 12-cv-958, 2013 WL 3013343, at *2 (D. Del. June 17, 2013) (finding fact that *inter partes* review had not yet been granted weighed against granting stay);

Second, while Defendants' motion is premature, it is at the same time late.   In their

motion, Defendants assert that this case "is still in its preliminary stages."  Mot. at 11.  This case

is **not** in its "preliminary stages."  This case has been pending since October 2012, discovery and

claim construction are well underway, and numerous core milestones have been completed:

- The parties have produced over 1.4 million pages of documents in discovery (including Invensys' production of thousands of documents housed at the Invensys University Technology Centre ("UTC") in Oxford, England),[3] and identified likely e-mail custodians;

- The parties served detailed infringement contentions on all the patents-in-suit (seven for Invensys, two for Micro Motion) in July 2013, more than <u>seven months ago</u>;

- The parties served detailed invalidity contentions on all the patents-in-suit in September 2013, <u>six months ago</u>;

- The parties have finalized and filed their joint claim construction statement, filed detailed technology tutorials, recommended technical advisors to the Court, filed letter briefs requesting leave to file motions for summary judgment of indefiniteness, and filed their opening *Markman* claim construction brief (and the responsive *Markman* claim construction brief will likely have been filed by the time the Court considers the instant motion);

- The *Markman* hearing is around the corner, on May 1, 2014;

- Micro Motion has noticed a Rule 30(b)(6) deposition of Invensys comprised of thirty-five topics, which is scheduled to commence in a week, and has demanded the individual depositions of Robert Arias (Product Sales Executive/Business Development Manager), Mark Avery (Sales Director, North America, M&I),

---

*Kowalski v. Anova Food, LLC*, No. 11-cv-795, slip op. at 10-11 (D. Haw. June 14, 2013) (concluding that "[b]ecause the USPTO has not yet made its initial determination, Anova LLC's Motion to Stay is premature" and noting that "[i]f litigation were stayed every time a claim in suit undergoes reexamination, federal infringement actions would be dogged by fits and starts.  Federal court calendars should not be hijacked in this manner"); *Warsaw Orthopedic, Inc. v. Nuvasive, Inc.*, No. 12-cv-2738, slip op. at 1 (S.D. Cal. May 30, 2013) (denying motion to stay where decision whether to grant IPR was still pending); *Automatic Mfg. Sys., Inc. v. Primera Tech., Inc.*, No. 12-cv-1727, slip op. at 4-5 (M.D. Fla. May 13, 2013) (concluding, "[I]t seems clear that a stay of a patent infringement action is not warranted when based on nothing more than the fact that a petition for *inter partes* review was filed in the USPTO…because a stay could delay these proceedings for at least six months with little to show, the Court finds that a stay would unduly prejudice or present a clear tactical disadvantage to Plaintiff"); *One StockDuq Holdings, LLC v. Becton, Dickinson & Co.*, No. 12-cv-3037, slip op. at 3 (W.D. Tenn. May 6, 2013) (concluding, "The Court agrees with Plaintiff that a stay in this case is premature… [because] the PTO has not yet granted Defendant's Petition for [IPR] and it is possible that the PTO will never grant Defendant's Petition").
[3] Contrary to Defendants' claim (*see* Mot. at 3 n.4), Invensys has produced the relevant documents housed at the UTC.

> Craig Barth (Vice President, Finance), Alastaire Davidson (Senior Director, Financial Controls), Tim Dorr (Senior Hardware Engineer), Mark Ferencik (Consulting Systems Analyst), Manus Henry (an inventor on the '646, '761, '136, '854, '906, '594, and '062 patents), Bob Jones (Vice President and General Manager, M&I), Tara Kirby (Senior Director of Finance), Wade Mattar (Flow Marketing Manager), Michael Plaziak (Principal Software Development Engineer), and Mike Reese (M&I Business Development Manager);

- Invensys has noticed five separate Rule 30(b)(6) depositions of Emerson and Micro Motion to commence in March 2014;

- The parties have propounded and responded to interrogatories (and supplemented their responses); and

- Micro Motion has served document subpoenas to DLA Piper LLP (US) and Shore Chan DePumpo LLP.

Notably, Emerson and Micro Motion have been aware of the Invensys patents-in-suit for years now (as major competitors of Invensys), as evidenced by the fact that Micro Motion and/or Emerson is an assignee on no fewer than six issued patents that specifically identify the Invensys parent '136 patent (issued in 2001) as prior art in their prosecution.[4]   Notwithstanding Defendants' long-standing awareness of the Invensys patents-in-suit, the filing of this lawsuit in the fall of 2012, <u>and</u> Defendants' service of invalidity contentions containing the same prior art that Micro Motion now relies upon in its IPR petitions in September 2013, Defendants chose to wait until this case was in the midst of discovery and claim construction proceedings before filing the instant motion.  Their foot-dragging should not be countenanced.

In a nutshell, after delaying for months—and after the parties have done substantial work and completed numerous core milestones—Defendants now demand a stay before the Patent Office has even looked at Micro Motion's IPR petitions on the '646, '761, '136, '854, '906, '594, and '062 patents.  These circumstances mutually weigh against a stay and, in fact, reflect the exact <u>opposite</u> of those circumstances that normally justify a stay.  This is reason enough to

---

[4] The Invensys '062 and '906 patents were similarly cited as prior art during prosecution of the applications that evolved into Emerson and/or Micro Motion patents.

deny Defendants' motion.  *See, e.g.*, *Sunbeam Prods. v. Hamilton Beach Brands, Inc.*, No. 09-cv-791, 2010 WL 1946262, at *5 (E.D. Va. May 10, 2010) (denying stay and finding that any simplifying benefits from reexamination were outweighed because "[d]iscovery is well underway.  The *Markman* process has kicked off, with opening and response briefs already filed.  Moreover, the *inter partes* reexamination procedure has not yet begun, and shows no likelihood of getting underway—assuming Homeland's reexamination request is even granted—before claim construction is likely to occur").

**B.      Application of *Soverain* Factors**

**1.      *A Stay Would Unduly Prejudice Invensys, And Give Defendants An Unfair Tactical Advantage***

The first factor—whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party—strongly disfavors a stay, especially where, as here, the parties are direct competitors.

**a.      The Parties Are Direct Competitors And A Stay Would Unduly Prejudice Invensys' Efforts To Enforce Its Patent Rights**

As many courts have recognized, a stay will affect the competitive balance when it is sought in a case between direct competitors.  In particular, the parties compete with each other not only in the same market, but also for the same customers.  A stay would cause undue prejudice to Invensys and allow Defendants to continue infringing Invensys' patents for as long as the stay is in place.  This factor <u>alone</u> justifies denying the stay.  *VirtualAgility, Inc. v. Salesforce.com, Inc.*, No. 13-cv-011, 2014 WL 94371, at *7 (E.D. Tex. Jan. 9, 2014) (refusing to stay litigation pending PTO review of Covered Business Method ("CBM") petition, since "courts are generally reluctant to stay proceedings where the parties are direct competitors, because in such cases, there is a reasonable chance that delay in adjudicating the alleged infringement will

have outsized consequences to the party asserting infringement, including the potential for a loss

in market share and an erosion of goodwill") (citing *Market-Alerts Pty. Ltd. v. Bloomberg Fin.*

*L.P.,* 922 F. Supp. 2d 486, 494 (D. Del. 2013)*; accord SenoRx, Inc. v. Hologic, Inc.*, No. 12-cv-

173, 2013 WL 144255, at *9 (D. Del. Jan. 11, 2013) (finding issue-simplification factor

"favor[ed] a stay, though not strongly so" and litigation-status factor "favor[ed] a stay" but

denying motion to stay in view of prejudice factor "decidedly weigh[ing] against a stay" due to,

*inter alia*, parties being "hard-fought competitors"); *ADA Solutions, Inc. v. Engineered Plastics,*

*Inc.*, 826 F. Supp. 2d 348, 351 (D. Mass. 2011) (noting that "prejudice [to patentee] is

heightened when parties to litigation are direct competitors; in such cases, courts **presume** that a

stay will prejudice the non-movant.") (emphasis added); *Tesco Corp. v. Weatherford Int'l, Inc.*,

599 F. Supp. 2d 848, 851 (S.D. Tex. 2009) (observing, "Where the parties are direct competitors,

a stay would likely prejudice the nonmovant.")[5]

The potential prejudice to Invensys is exacerbated by Micro Motion's delay in filing its

IPR petitions (*see infra* at 5-7) and seeking the instant stay.  The *Markman* hearing in this case is

set for May 1, 2014, and trial is set for October 13, 2015.  By statute, the PTO will likely have

until approximately August 2014 to determine whether or not to accept the last of Micro

Motion's IPR petitions.  Pursuant to 35 U.S.C. § 316(a)(11), the PTO will then have one year to

---

[5] *Accord BarTex Research*, 611 F. Supp. 2d at 652 (finding stay would be prejudicial to patentee because "should [the defendant] be found to infringe . . . damages alone may not fully compensate . . . for a lengthy delay resulting from reexamination"); *Davol*, 2013 WL 3013343, at *2-3 (finding undue prejudice factor weighed in plaintiff's favor because of risk of surrendering market share, coupled with early stage of IPR); *ImageVision Net, Inc. v. Internet Payment Exch., Inc.*, No. 12-cv-054, 2013 WL 663535, at *6 (D. Del. Feb. 25, 2013) (denying motion to stay and noting "courts are generally reluctant to stay proceedings where the parties are direct competitors"); *Nat'l Prods., Inc. v. Gamber–Johnson LLC*, No. 12-cv-840, 2012 WL 3527938, at **2-3 (W.D. Wash. Aug. 14, 2012) (recognizing that, when parties are direct competitors, there is reasonable chance delay in adjudicating alleged infringement will have outsized consequences to party asserting infringement, including potential for loss of market share and erosion of goodwill); *Avago Techs. Fiber IP (Singapore) Pte. Ltd. v. IPtronics Inc.*, No. 10-cv-2863, 2011 WL 3267768, at *5 (N.D. Cal. July 28, 2011) (noting that "infringement among competitors can cause harm in the marketplace that is not compensable by readily calculable money damages."); *Cooper Notification, Inc. v. Twitter, Inc.*, No. 09-cv-865, 2010 WL 5149351, at *5 (D. Del. Dec. 13, 2010) (observing, "Courts are reluctant to stay proceedings where the parties are direct competitors.").

APP. 028

issue final decisions (until August 2015), but the PTO can extend that deadline by 6 months

(until February 2016) — thereby delaying the case beyond its current trial date.  This militates

against a stay.  *Unifi Scientific Batteries, LLC v. Sony Mobile Commc'ns*, No. 12-cv-224, slip op.

at 6-7 (E.D. Tex. Jan. 14, 2014); *accord Universal Elecs., Inc. v. Universal Remote Control, Inc.*,

943 F. Supp. 2d 1028, 1033 (C.D. Cal. 2013) (noting, "[T]he *inter partes* review, normally

required to be completed in a year, can be extended for good cause for six months.  There could

be a two-year delay, even before any appellate proceedings that will likely arise out of the *inter*

*partes* review").

Emerson and Micro Motion make much of Invensys' alleged six-year delay in

"complain[ing] about Micro Motion's (and Emerson's) allegedly infringing conduct," claiming

that this means that Invensys will not be prejudiced.  *See* Mot. at 8.  But Emerson and Micro

Motion completely ignore the relevance of the fact that several of Invensys' patents were issued

in 2009 and 2011, and that Invensys was entitled to wait until these continuation patents issued

before commencing litigation, to conserve the resources of the parties and the Court.  *See Meyers*

*v. Brooks Shoe, Inc.*, 912 F.2d 1459, 1462 (Fed. Cir. 1990).  Moreover the authority cited by

Defendants to support this proposition, *Hill-Rom Servs., Inc. v. Stryker Corp.*, 11-cv-1220, 2012

WL 5878087 (S.D. Ind. Nov. 20, 2012), is inapposite given that (unlike the case at bar) the

motion to stay followed the PTO's grant of defendant's reexamination requests.

> **b.     Defendants' Argument Relating To A Preliminary Injunction
> Lacks Merit**

Defendants also make much out of the fact that Invensys did not move this Court for a

preliminary injunction at the outset of the case, asserting that this "dilutes" Invensys' claim "that

it would be irreparably harmed by Micro Motion's and Emerson's continued alleged infringing

conduct during [a] stay."  Mot. at 9.  Defendants are certainly well aware that in the wake of

*eBay Inc. v. MercExchange L.L.C.*, 547 U.S. 388, 391-92 (2006), patent holders forgo moving for preliminary injunctive relief in many circumstances.  Regardless, Defendants' argument lacks merit.

First, Micro Motion released a new Elite CMFS series "fully drainable mass" meter in October 2013, which Invensys has reason to believe infringes the patents-in-suit.  Since learning of this product release, Invensys has repeatedly requested that Defendants produce this flowmeter as part of discovery or make it available for inspection, to substantiate its belief and assess whether it should move for preliminary injunctive relief.  ***See* Ex. A** (12/10/13, 2/14/14 and 2/28/14 correspondence).  Just today, Defendants agreed to make this flowmeter available for inspection.

Second, Defendants' unsupported assertion that Invensys did not move for a preliminary injunction because it did not feel it would be unduly prejudiced by Defendants' continued sale of infringing products during the litigation, even if correct, is not the same as the litigation being advanced for sixteen months, and then put on indefinite hold during the IPR process while Defendants' infringement of Invensys' patents continues.  *See Universal Elecs., Inc.*, 943 F. Supp. 2d at 1033 (observing, "[d]uring a stay, Plaintiff may lose customers that it would not have lost had the case proceeded . . . The fact that Plaintiff did not seek a preliminary injunction does not mean that it would not suffer prejudicial harm from its competitor's market activity during a lengthy delay in the case.")  Indeed, the relevant case law on this issue holds that on a "motion to stay, the Court will not hold against [the patentee] its decision to spare the parties more litigation [in the form of a motion for preliminary injunction]."  *Id.* at 1034 (rejecting defendant's argument that plaintiff's failure to seek preliminary injunction should weigh against finding plaintiff would be prejudiced by stay).  As recognized by the Eastern District of Texas, "[a]

10

party's decision to seek or not to seek a preliminary injunction often rests upon a variety of
factors, including that party's resources, the uncertainty of the outcome, or as part of an overall
strategy to streamline the process and focus on other procedural steps of the litigation."
*VirtualAgility, Inc. v. Salesforce.com, Inc.*, No. 13-cv-011, 2014 WL 94371, at *7 (E.D. Tex.
Jan. 9, 2014) (rejecting argument that plaintiff "will not be unduly prejudiced by a stay given that
it has not sought any form of preliminary injunctive relief.")  Accordingly, it would be "unfair to
hold [Invensys] to a position based upon what is no more than a dubious implication." *Id.*

> **2.    *Staying Litigation Pending The Petitions For IPR Would Not Simplify
> The Issues Before This Court***

The second factor—whether a stay will simplify the issues in question and trial of the
case—also strongly weighs against a stay.

> **a.    It Is Far Too Speculative To Assume That Micro Motion's
> IPRs Will Have Any Effect On The Issues For Trial**

In their motion, Defendants allege:  "No matter the outcome of the IPR proceedings, the
issues in this case will be simplified."  Mot. at 9.  But this is pure speculation, and Defendants'
motion actually says very little about the substance of Micro Motion's IPR petitions—a key
consideration that would shed light on whether there is any prospect the IPRs will simplify
matters for this Court.  Of course, there has been no indication from the Patent Office that there
is any merit to Micro Motion's IPR petitions.  The Patent Office may ultimately deny Micro
Motion's IPR petitions outright, a result that would lead to no simplifying benefits for the Court
and cause nothing but delay.  Given the prospect for such delay without even a preliminary
indication from the Patent Office that there will be any simplifying benefits, the Court should
deny Defendants' stay request.

While Defendants assert that "over 80% of all IPR petitions are granted" (Mot. at 6), this
figure standing alone is highly misleading for a number of reasons.  First, Micro Motion filed a

11

total of seven separate IPR petitions.  Using Defendants' statistics regarding an 80% grant rate, the probability that all of the seven petitions will be granted is less than 21%.[6]  Put another way, there is over a 79% chance that the petitions will be denied review at least in part, leaving many claims to be construed by and litigated in this Court.

Second, the problem is further compounded by the availability of partial grants, which could result in review of some but not all of the constituent claims within each granted petition.  The PTO evaluates IPR petitions on a claim-by-claim basis, rather than a patent-by-patent basis.  The overall 80% rate cited by Defendants does not distinguish between full grants (for review of all petitioned claims) as opposed to partial grants (for review of only some petitioned claims).  And in the vast majority of instances, IPR petitions are denied for at least some claims and/or on at least some grounds.[7]  It follows that many of the patent claims asserted against Defendants will likely avoid IPR review and will remain to be litigated in this Court.

Defendants can only guess that "an IPR will be instituted on at least one claim in each of the seven petitions" (Mot. at 6), falling far short of the "simplify the issues" standard for granting a stay.  *See Soverain*, 356 F. Supp. 2d at 662.  "In nearly every case, reexamination has the *potential* of simplifying the issues for trial due to the possible elimination, narrowing, or amendment of claims."  *LML Patent Corp. v. JPMorgan Chase & Co.*, No. 08-cv-448, slip op. at *4 (E.D. Tex. May 23, 2011 ) (emphasis in original) (denying motion to stay and noting that simplification of issues arguments are speculative in nature and therefore must be analyzed on a case-by-case basis).  To grant a stay based on this argument "would invite parties to unilaterally

---

[6] The combined probability of all seven petitions being granted is calculated as 80% (0.80) raised to the 7th power, or 20.9%.

[7] Alston & Bird LLP, *Intellectual Property Advisory: Inter Partes Review—One Year Later*, at 7 n.24 (Sept. 17, 2013), *available at* http://www.alston.com (noting "Current data shows that approximately 76 percent of the decisions on whether to institute and IPD proceeding deny at least one claim or one ground from the petition.").

APP. 032

derail timely patent case resolution by seeking reexamination and not promote the efficient and timely resolution of patent cases." *Soverain*, 356 F. Supp. 2d at 662.  Although some of the claims may change in this case, "the interests of justice will be better served by dealing with that contingency when and if it occurs, rather than putting this case indefinitely on hold." *Soverain*, 356 F. Supp. 2d at 663.

> ### b.   There Are No Efficiencies To Be Gained By Staying This Litigation

There is no reason the IPRs and this litigation need to be dealt with serially when they can proceed efficiently in parallel (assuming the IPRs go forward at all).  The scope of discovery in the two proceedings will overlap to a certain extent, but there is much additional discovery that is relevant in this litigation that would not be obtained as part of the IPR proceedings (e.g., infringement- and damages-related discovery).  To the extent the issues overlap, discovery could be shared between the two proceedings.  To the extent they do not, it would be far more efficient to gather that discovery now in parallel rather than put it on hold for several years until the IPRs finally conclude.

Emerson and Micro Motion gloss over the efficiencies factor, claiming in a highly conclusory manner that "the PTO record will provide valuable analysis to the Court" and stating that determinations made by the PTO under the "broadest reasonable construction" claim construction standard could be of assistance.  *See* Mot. at 10.  As this Court has recently noted, however, the different claim construction standards in the PTO and the District Court militate against a finding that the issues will be simplified through a stay, because the District Court claim construction process in this Court will not be eliminated.  *See Unifi Scientific Batteries, LLC v. Sony Mobile Commc'ns*, No. 12-cv-224, slip op. at 6-7 (E.D. Tex. Jan. 14, 2014) (concluding that "the Court is not persuaded by TI's argument that it should wait for the PTO's

final decision" in part because "the PTAB and district courts construe claims under different standards.")  Moreover, by statute, IPRs are limited to validity under §§ 102 and 103, and only on the basis of prior art consisting of "patents or printed publications."  35 U.S.C. § 311(b).  That leaves many issues to be resolved by this Court, including a determination of invalidity under 35 U.S.C. § 112.  Indeed, in their invalidity contentions, Emerson and Micro Motion challenged the Invensys patents on numerous grounds under 35 U.S.C. § 112, including that the specification "does not provide a written description of the alleged inventions; that the specification does not enable one of ordinary skill in the art to make and use the claimed inventions; and that the claims are indefinite because certain claim terms are fatally ambiguous."  ***See* Ex. B**.  Therefore, if Micro Motion is unsuccessful before the PTO, a stay would simply provide Emerson and Micro Motion the opportunity to retool their invalidity case with different arguments for another bite at the invalidity apple.  This fact also weighs against a stay.  *See Unifi Scientific Batteries*, No. 12-cv-224, slip. op. at 7 (noting Defendants may maintain that asserted claims are invalid under 35 U.S.C. §§ 112 ¶¶ (1) and (2), and noting simplification factor weighs against stay in light of that fact).

The efficiencies that Defendants tout are illusory.

### 3.      *A Stay Is Inappropriate Given The Advanced Stage Of The Case*

This litigation has now been pending for over 16 months.  As noted above, the parties have produced infringement and invalidity contentions, are in the midst of the claim construction process, have filed technology tutorials, and have produced 1.4 million documents, including source code.  Responsive claim construction briefs are due April 7, 2014, and the *Markman* hearing is set for May 1, 2014–less than two months away.  This Court has consistently denied requests for a stay when, as in this case, the litigation has progressed significantly toward trial.  In *Unifi Scientific Batteries*, for example, Judge Love denied a motion to stay pending IPR that

14

was filed more than 18 months after commencement of the litigation despite the fact that, unlike the instant case, the PTO had actually granted two petitions for IPR on six separate prior art references.  No. 12-cv-224, slip op. at 6-7.  In his denial, Judge Love noted that (as is the case here) "the parties have engaged in substantial discovery, produced documents, answered interrogatories, and served and supplemented infringement and invalidity contentions" and "claim construction was already underway by the time [defendant] filed for the instant stay."  *Id. Accord ROY-G-BIV Corp.*, 2009 WL 1080854, at *3 (observing, "Defendants argue that discovery is far from complete …however, claim-construction briefing is complete and trial is six months away.  Accordingly, this factor weighs against a stay in this case."); *Nidec Corp. v. LG Innotek Co., Ltd.*, No. 07-cv-108, 2009 WL 3673433, at *8 (E.D. Tex. Apr. 3, 2009) (noting, "Currently, the parties are fully engaged in discovery with a *Markman* and trial date set.  The circumstances in this case lead the Court to conclude that, given the advanced stage of the proceedings in this case, the third and final factor weighs against granting a stay.").

## V.      CONCLUSION

At virtually every opportunity, Defendants have sought to delay resolution of this case while they continue to market and sell their existing infringing products and release new products.  Given that the PTO has not yet granted Micro Motion's IPR petitions and all three *Soverain* factors strongly weigh against granting a stay, the Court should deny Defendants' motion.

APP. 035

Dated:  March 10, 2014

Respectfully submitted,

_/s/ Courtney Stewart_
Courtney Stewart
Texas Bar No. 24042039
courtney.stewart@dlapiper.com
Todd Scott Patterson
Texas Bar No. 24060396
todd.patterson@dlapiper.com
**DLA PIPER LLP (US)**
401 Congress Avenue, Suite 2500
Austin, TX 78701-3799
Telephone:  512-457-7000
Facsimile:  512-457-7001

Claudia Wilson Frost
Texas Bar No. 21671300
claudia.frost@dlapiper.com
Jeffrey L. Johnson
Texas Bar No. 24029638
jeffrey.johnson@dlapiper.com
Dawn M. Jenkins
Texas Bar No. 24074484
dawn.jenkins@dlapiper.com
**DLA PIPER LLP (US)**
1000 Louisiana, Suite 2800
Houston, TX 77002-5005
Telephone: 713-425-8450
Facsimile: 713-425-8401

Nicholas G. Papastavros
nick.papastavros@dlapiper.com
Daniel E. Rosenfeld
daniel.rosenfeld@dlapiper.com
**DLA PIPER LLP (US)**
33 Arch Street, 26th Floor
Boston, MA  02110-1447
Telephone:  617-406-6000
Facsimile:  617-406-6100

**ATTORNEYS FOR
INVENSYS SYSTEMS, INC.**

16

APP. 036

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served on March 10, 2014, to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system per Local Rule CV-5(a)(3).  Any other counsel of record will be served by a facsimile and/or first class mail.

/s/ Courtney Stewart
Courtney Stewart

EAST\72867893.1

APP. 037

# EXHIBIT A



**DLA Piper** LLP (US)
33 Arch Street, 26th Floor
Boston, Massachusetts  02110-1447
www.dlapiper.com

Nicholas G. Papastavros
nick.papastavros@dlapiper.com
**T**  617.406.6019
**F**  617.406.6119

December 10, 2013

*Via E-Mail*
KJELENCHICK@FOLEY.COM

Kadie M. Jelenchick
Foley & Lardner LLP
777 East Wisconsin Avenue
Milwaukee, WI 53202-5306

Re:     *Invensys Systems, Inc. v. Emerson Electric Co., et al.*
        **Case No. 12-cv-799-LED (E.D.Tex.)**

Dear Kadie:

        We write to request that Defendants produce one (1) functional sample of each Micro Motion and/or Emerson Coriolis flowmeter, including the original packaging, software, and accompanying documentation.  Such "Coriolis Products" shall include all Coriolis flowmeters containing a transmitter with an enhanced core processor and/or any reasonably similar component that (1) Micro Motion and/or Emerson Electric Co., or, alternatively, (2) Micro Motion and/or Emerson Process Management has ever used, made, sold, or offered for sale within the United States or imported into the United States, either directly or indirectly through distributors or other means.  This encompasses all products previously identified in Invensys' First Amended Complaint [Dkt. No. 25], Invensys' P.R. 3-1 Disclosures, served July 15, 2013, and Emerson Electric Co.'s and Micro Motion, Inc.'s Responses to Interrogatory No. 1 of Invensys' First Set of Interrogatories (Nos. 1-5), served September 12, 2013.  The following comprises a non-exhaustive list of Coriolis Products:

- Micro Motion® Elite® Coriolis Meters containing a Micro Motion transmitter with a Micro Motion enhanced core processor (*e.g.*, the (i) the Micro Motion 1500 transmitter; (ii) the Micro Motion 1700 transmitter; (ii) the Micro Motion 2400S transmitter; (iii) the Micro Motion 2500 transmitter; (iv) the Micro Motion 2700 transmitter; (v) the Micro Motion Series 3000 transmitter; (vi) the Micro Motion 3500 transmitter/controller; (vii) the Micro Motion 3700 transmitter/controller; and (viii) the Micro Motion 9739 transmitter); and

- Any additional Coriolis Products not previously identified in response to Interrogatory No. 1 in Invensys' First Set of Interrogatories (Nos. 1 – 5), including the Micro Motion Elite CMFS Series Coriolis Mass Flow Meter, as identified in Exhibit 1 to this letter.

        Please send all samples c/o Jeffrey L. Johnson, 1000 Louisiana Street, Suite 2800, Houston, Texas,  77002-5005 no later than **Friday, December 20, 2013**.



December 10, 2013
Page Two


Very truly yours,

**DLA Piper LLP (US)**

*/s/Nicholas G. Papastavros*

Nicholas G. Papastavros

Micro Motion flowmeters set new bar in mass flow, density measurement - Emerson Exc...    Page 1 of 2
Case 6:12-cv-00799-JRG    Document 126-1    Filed 03/10/14    Page 4 of 8 PageID #: 3949
Case 3:18-cv-00161-N    Document 59    Filed 03/29/19    Page 41 of 45    PageID 1304

Emerson Exchange 365    The Peer-to-Person Online Emerson Global Users Exchange Community

Home  »  Process  »  Emerson Exchange 365  »  Emerson Exchange News  »  Micro Motion flowmeters set new bar in mass flow, density measurement

## Emerson Exchange 365
The Peer-to-Peer Online Emerson Global Users Exchange Community

Get this RSS feed

Home      Tracks      General Discussions      News & Tips      Library / Resources      Guidelines

**News from Exchange**
Miss the conference?
You can still catch the excitement here.
Click for highlights

GOOGLE TRANSLATE

Select Language
Powered by Google Translate

OPTIONS

RSS for post comments

Share this

TAGS

**#EmrEx** 2011 Emerson Exchange chemical Community DeltaV **Emerson Exchange Emerson Exchange 2012 Exchange 2012** Features Final Control & Regulate Measure & Analyze Multimedia **News** oil & gas Operate & **Manage** presentation Products project management Refining Rosemount **Solve & Support** Steve Sonnenberg **Today's News** video Wireless

EMERSON EXCHANGE NEWS

S    S    S    S    M          0

# Micro Motion flowmeters set new bar in mass flow, density measurement

Emerson Exchange News  1 Oct 2013 11:09 PM    0

*by Walt Boyes*

**CONTROL**

**Emerson unveils new mass flow line-up**

Emerson bid farewell to the iconic triangle of its Micro Motion Elite Coriolis mass flowmeters at a Tuesday press conference this week at the Emerson Global Users Exchange. In its stead, explained Andy Dudiak, Micro Motion vice president and general manager, is the next generation Elite CMFS (for Coriolis Mass Flow Sensor): a fully drainable mass meter that sets a new standard in high performance mass flow measurement.

"We were able, because of our unmatched design capabilities, to produce a new meter family with real advances," Dudiak said. "The accuracy of the new instrument is +/- 0.05% of mass flow, +/- 0.05% of volume flow, and +/- 0.0002 g/cc density, with 30:1 turndown. That's high meter rangeability, and we've made it more stable at low flows. The zero stability of the instruments reflects a 50% improvement over the previous generation of Elite meters."

"We have improved our gas mass flow accuracy to better than +/- 0.25%, and we have proven this on our primary gravimetric calibration stand," Dudiak added. "We can handle bubble flow, slug flow of gases and liquids, and full/empty/full flow conditions. We have improved our Smart Meter Verification, and made it possible to use WirelessHART to remotely verify the calibration of the product."

"It is more than technology," added Neal Ingram, president of Emerson Process Management's Precision Flow group. In the past 36 years, he noted, engineers for the Micro Motion product line have received over 50 U.S. patents and 1,500 patents worldwide. Plus, Emerson has introduced 50 new products just in the past five years, Ingram said. The Micro Motion operation also has adapted to the demands of supplying flow and density instruments globally, including support for a multilingual call center, smartphone apps, training videos, and an assortment of web- and social-media portals.

*Andy Dudiak*

Dudiak then turned to the new vibration density and viscosity devices. Combining the latest Coriolis design into a product optimized for density, he described the new Compact Density Meter and proclaimed that this meter raises the standard for online density metering and enhances custody transfer, processing and blending operations.

"We know our customers want application-specific solutions," he said. "They want human centered design solutions for easy startup and maintenance, and they want simplified system integration with the plant networks so they can remotely diagnose meter health."

Then he described the new Gas Density Meter, a vibrating fork type meter that measures gas density and provides gas purity and blending measurements. Additionally, he showed the new Specific Gravity Meter, a vibrating tube meter that provides measurements of specific gravity, molecular weight, gas purity, BTU/calorific value and Wobbe Index.

APP. 041

Micro Motion flowmeters set new bar in mass flow, density measurement - Emerson Exc...    Page 2 of 2

Case 6:12-cv-00799-JRG    Document 126-1    Filed 03/10/14    Page 5 of 8 PageID #: 3950
Case 3:18-cv-00161-N    Document 59    Filed 03/29/19    Page 42 of 45    PageID 1305

"Customers want legacy flow computer support," Dudiak said, "so we've provided them frequency and 4-20 mA analog outputs, as well as HART to WirelessHART and Modbus to FOUNDATION fieldbus support. We have provided a new diagnostic capability called Known Density Verification that checks the meter for measurement alarm conditions, sensor integrity and the presence of coating, erosion or corrosion, and we have included integrated links to ProLink, AMS and other asset portal tools."

Dudiak went on to describe specific applications for these instruments, including fuel gas monitoring, heavy fuel oil combustion control, and--last but not least--alcohol distillation monitoring. "Absolut vodka has to have very tight concentration control, for tax purposes, from 40.0 to 40.1% alcohol concentration, and they are using the flow value from the Compact Density Meter to give them percentage alcohol by volume (ABV). This keeps them within spec without giving extra alcohol away. It also prevents them from running the still too fast, which burns the grain and imparts a 'strange' taste to the vodka, and we don't want our vodka to taste funny."

The new family of meters shares a common user interface, and has the same look and feel as the other members of the Micro Motion production program.

**Emerson Exchange, News, Flow, Measure & Analyze, Micro Motion**



This is the official online community site of the **Emerson Global Users Exchange**, a forum for the free exchange of non-proprietary information among the global user community of all Emerson Process Management's products and services. Our goal is to improve the efficiency and use of process automation systems and solutions employed at members' facilities by sharing our knowledge, experiences, and application information.

© 2011 Emerson Global Users Exchange. All rights reserved.
**Legal Information** | Contact **Community Manager**

APP. 042



**DLA Piper LLP (US)**
33 Arch Street, 26th Floor
Boston, Massachusetts  02110-1447
www.dlapiper.com

Nicholas G. Papastavros
nick.papastavros@dlapiper.com
**T**  617.406.6019
**F**  617.406.6119

February 14, 2014

*Via Email*

Kadie M. Jelenchick
Foley & Lardner LLP
777 East Wisconsin Avenue
Milwaukee, WI 53202-5306

**Re:     Invensys Systems, Inc. v. Emerson Electric Co., et al.**
              __Case No. 12-cv-799-LED (E.D. Tex.)__

Dear Kadie:

I write in response to your January 24, 2014 letter to Claudia Frost, and to follow-up on certain issues originally raised in my December 10, 2013 letter and discussed in subsequent meet and confers between the parties.

Document Production:  Invensys and Henry's production is substantially complete for all non-financial documents.  As you are aware, Invensys has also made a substantial production of sales and financial documents, including financial documents evidencing CFT-50 and CFT-51 sales.  We are in the final stages of determining whether there is a small subset of additional sales/financial documents to produce, and will let you know as soon as possible.  Such documents will be produced in advance of the 30(b)(6) deposition for which we will be furnishing dates by next Wednesday, February 19.

I note that we have received several supplemental productions from Micro Motion in recent weeks.  *See, e.g.*, December 20 and January 31 communications.  Please confirm whether Emerson and Micro Motion's production is complete.

Privilege Log:  As to your concerns regarding the revised Invensys and Manus Henry logs that were provided on January 21, 2014, we have inserted the author and/or recipient information to the extent we have that information.  Invensys intends to provide its redaction log and a log specific to the non-email documents produced in the Shore Chan litigation on or before Friday, February 21.

Separately, please let us know when Emerson and Micro Motion intend to provide their own redaction logs as well, as we have located well over 700 documents at present with redactions within Emerson and Micro Motion's own production for which no redaction logs were provided.  *See, e.g.*, MM0001173; MM0659666; MM0665975; MM0669038; MM0669669; MM0670813; MM0939417; MM0940475; and MM0996245.

On the common interest privilege issue, the Fifth Circuit's application of the common interest privilege is not as narrow as you suggest and is consistent with the decision in *In re Regents*, 101 F.3d 1386 (Fed. Cir. 1996).  *See Hodges, Grant & Kaufmann v. United States*, 768 F.2d 719 (5th Cir. 1985).  Even if the



Kadie M. Jelenchick
February 14, 2014
Page Two


common interest privilege does not apply, any disclosure to Oxford (especially to Henry) would not waive Invensys's other privilege rights.

<u>E-Mail Discovery</u>:  You indicated in your letter that "until we have the entirety of Invensys' document production, we will not be in a position to provide our listing of the fifteen most significant e-mail custodians."  We think this is a misreading of the e-Discovery Order.  Under the e-Discovery Order, e-discovery follows "an exchange of initial disclosures and a specific listing of likely e-mail custodians that contains a specific identification of no more than the fifteen most significant listed e-mail custodians." Thus, it is the party's own e-discovery custodians that need to be disclosed.  The parties can then propound interrogatories and take a deposition to determine which eight of the opposing party's custodians they want e-mails for.  We are prepared to move forward on this next week – —we would suggest Thursday, February 20.  Please advise.

<u>Interrogatories</u>:  We are currently working on our supplemental interrogatory responses and will furnish them by next Friday, February 21.  We look forward to receiving Micro Motion and Emerson's supplemental responses next week as well.

<u>Flowmeters</u>:  As you know from my December 10, 2013 letter and follow-up meet and confers, Invensys has an ongoing request for Micro Motion to produce all accused Coriolis Products, as that term is defined in the December 10, 2013 letter.  You responded in the meet and confer by identifying how purportedly costly it would be to produce all such flowmeters, and referred us to a price list.  As a threshold matter, I understand that you have previously identified to Todd Patterson that Micro Motion has made available for inspection by Invensys' outside counsel and consultants the source code for all such Coriolis Products, including the latest released version.  Can you confirm that this still includes the latest released version?  And can you please confirm early next week that this includes all source code for the newly released Elite CMFS Series Coriolis Mass Flow Meter?  Can you also indicate when over the course of the next couple weeks you will make that particular meter available for review and inspection? The foregoing is without waiver of Invensys's  rights to obtain the other Coriolis Products.


Very truly yours,

/s/ Nicholas G. Papastavros

Nicholas G. Papastavros

NGP:mas

EAST\70015051.1



**DLA Piper LLP (US)**
33 Arch Street, 26th Floor
Boston, Massachusetts  02110-1447
www.dlapiper.com

Nicholas G. Papastavros
nick.papastavros@dlapiper.com
**T**  617.406.6019
**F**  617.406.6119

February 28, 2014

*VIA EMAIL*

Kadie M. Jelenchick
Foley & Lardner LLP
777 East Wisconsin Avenue
Milwaukee, WI 53202-5306

Re:    **Invensys Systems, Inc. v. Emerson Electric Co., et al.**
       **Case No. 12-cv-799-LED (E.D. Tex.)**

Dear Kadie:

I write to follow-up on certain discovery issues from my February 14, 2014 letter.  Please address or respond to these issues by close of business next Tuesday, March 4, 2014, or provide a time next week when you are available to meet and confer.

Interrogatory Responses:  In your February 12, 2014 e-mail to Claudia Frost, you indicated that "we anticipate providing a supplement to Micro Motion's and Emerson's interrogatory responses by early next week."  The responses still have not been received.  Please advise when you plan to furnish the supplemental responses.

Document Production:  Please confirm that Emerson and Micro Motion's document productions are substantially complete.

Privilege Log:  We have located well over 700 redacted documents within Emerson and Micro Motion's production for which no redaction logs were provided.  *See, e.g.*, MM0001173; MM0659666; MM0665975; MM0669038; MM0669669; MM0670813; MM0939417; MM0940475; and MM0996245. Please advise when you plan to provide Emerson and Micro Motion's redaction logs.

Flowmeters:  You have not responded fully to the questions set forth in my February 14, 2014 letter. Please provide a complete response to those questions no later than next Tuesday, March 4.  More specifically:

- You previously informed Todd Patterson that Micro Motion has made available for inspection by Invensys' outside counsel and consultants the source code for all Coriolis Products, including the latest released version.  Please confirm that Micro Motion's production is still current and that no new versions of this source code have been released.
- Please confirm that you have made available for inspection all source code for the newly released Elite CMFS Series Coriolis Mass Flow Meters.
- Please identify when you will make the Elite CMFS Series Coriolis Mass Flow Meters available for review and inspection.

Very truly yours,

*/s/ Nicholas G. Papastavros*
Nicholas G. Papastavros